UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CA NO. 05-11354JLT

**BRETT S. GODETTE,**
    Plaintiff,

v.

**RICHARD STANLEY, DIANE HEFFERNAN,
DANIEL CRONIN, PAUL CALLAGHER,
WILLIAM WALLACE, DONALD PATTULLO,
CHARLES HESELTINE, and PATRICK KEEFE,**
Individually and as Police Officers of Their
Respective Municipalities, **LT. RIORDON,
TOWN OF NORTH ANDOVER, TOWN OF
ANDOVER, and MERRIMACK COLLEGE,**
    Defendants

**DEFENDANTS, RICHARD STANLEY, DIANE HEFFERNAN,
DANIEL CRONIN, PAUL GALLAGHER,
WILLIAM WALLACE, DONALD PATTULLO,
CHARLES HESELTINE, TOWN OF ANDOVER AND NORTH ANDOVER'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS**

**I.   INTRODUCTION**

The defendants,  Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine**,** the Town of Andover and the Town of North Andover move to dismiss the plaintiff's Complaint on the grounds that the plaintiff has failed to state a claim against them.

## II.   STATEMENT OF THE FACTS

The plaintiff, Brett Godette was a student a Merrimack College and a member of the men's basketball team. (See, plaintiff's complaint.) On March 26, 2003, Mr. Godette wore a "do-rag" and a grey Merrimack basketball fleece jacket. (Id.)

At approximately 11:30 a.m. on March 26, 2003, an individual robbed a bank in North Andover, Massachusetts. At approximately 2:00 p.m. on that date, Lt. Riordon of the Merrimack College Police Services reported to the North Andover Police via telephone that, among other things, Mr. Godette was wearing the same clothes as the suspected robber of the North Andover bank. Shortly thereafter, Lt. Riordon met with various police officers including, without limitations, Heffernan, Stanley, Cronin and Gallagher, all of the North Andover Police. (Id.)

At the meeting, Lt. Riordon displayed to the officers a photograph of Mr. Godette, whom, Lt. Riordon believed to be the suspect of the armed robbery in North Andover. Lt. Riordon displayed Mr. Godette's identification photograph to the North Andover Police and assisted in locating Mr. Godette on campus.

At approximately 3:10 p.m. on that date, Mr. Godette walked out of the Monican dormitory and was immediately surrounded by several police officers from the Andover, North Andover and Merrimack Police Departments. (Id. ¶ 32.)

A male officer pushed Mr. Godette against a wall while other officers yelled orders at Mr. Godette. (Id. ¶ 32). Plaintiff further alleges that Officer Heffernan put her hand on her gun and told Mr. Godette that he was under arrest while a second officer asked Mr. Godette a series of questions. (Id.)

Plaintiff alleges that Officer Heffernan handcuffed Mr. Godette and began to search his book bag without consent. (Id. ¶ 34.) For approximately fifteen minutes the plaintiff alleges that these officers detained Mr. Godette in and around the lobby area of the Monican dormitory. (Id.)

An officer reached inside Mr. Godette's pants, without consent and pulled his left pocket inside out, pulling Mr. Godette's pants down to his knees. (Id. ¶ 37.) While Mr. Godette was searched another officer pointed his finger in Mr. Godette's face and told him he was in trouble. (Id.)

Mr. Godette permitted the officers to visit and search his dormitory. (Id., ¶ 41.) No contraband or evidence of the robbery was located. (Id. ¶ 43-45.) Mr. Godette provided detailed information to the offices of his whereabouts that day. (Id. ¶ 46.) After five to ten minutes, Officer Heffernan left the room to confirm Mr. Godette's whereabouts. (Id. ¶ 46.) Approximately one half hour later, Officer Heffernan returned and confirmed Mr. Godette's whereabouts and advised that he was no longer under arrest. (Id. ¶ 48.)

Officer Heffernan showed Mr. Godette four photographs of the suspected bank robber wearing a white do rag and a white hat. (Id. ¶ 49.)

### III.  STATEMENT OF THE CASE

The plaintiff brings this action against the defendants Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine pursuant to 42 USC Section 1983 and 1985, MGL ch. 12, §11 for intentional infliction of emotional distress, false imprisonment and assault and battery. In addition, the plaintiff brings this action against the Town of Andover and the Town of North Andover pursuant to 42 USC Section 1983 MGL

ch. 12, §11 H and I for false imprisonment, intentional infliction of emotional distress and assault and battery.

IV. **ARGUMENT**

    A. **Standard of Review**

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir.1998)(quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. Nollet, 83 F.Supp.2d at 208.

    B. **The Plaintiff's Claim Pursuant to 42 USC Section 1983 Against Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine Must Fail**

The plaintiff alleges that his civil rights were violated because the police officers detained and handcuffed plaintiff in view of a crowd of onlookers, used excessive force, lead the

4

plaintiff through the dormitory in a humiliating and embarrassing fashion, searched his dormitory, discriminated on the basis of race, falsely accused Mr. Godette of a crime, failed to properly investigate and violated Mr. Godette's privacy.

The fundamental question is whether or not the officers had probable cause to arrest/ detain the plaintiff. If in fact the officers had probable cause to detain the plaintiff all of the civil rights claims must fail. The plaintiff's detention by the North Andover and Andover was made with probable cause.

Courts apply a totality of the circumstances standard to determine if probable cause exists. U.S. v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000). Under this standard, "probable cause exists if, at the moment of arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing" that the suspect has committed a crime. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996). Probable cause does not require "either the same quantum of proof or the same degree of certitude as a conviction." U.S. v. Lee, --- F.3d ---, 2003 WL 133007, at 5 (1st Cir. 2003). The "facts and circumstances" known to the police defendants at the time of the plaintiff's detention, viewed in the their totality, easily satisfy this standard.

Specifically, the facts as alleged establish that Lt. Riordon of the Merrimack College Police advised all of the officers that responded to the scene that he believed that Mr. Godette was a suspect in the armed robbery that occurred in North Andover on that day. Lt. Riordan based his belief that the plaintiff was a suspect on amongst other things that, Mr. Godette was wearing the same clothing as the individual described and he looked similar as he compared the

5

photograph of the suspect to Mr. Godette's Merrimack College identification photograph. (See plaintiff's complaint paragraph 29.) The responding officers of North Andover and Andover reasonably relied on Lt. Riordon's identification of the plaintiff as a suspect in the armed robbery and sought to question Mr. Godette.

This Court can determine if probable cause existed at the time of the plaintiff's detention.. It is for the trier of fact to ascertain the underlying facts. But it is the duty of the court to determine whether those facts so found constitute probable cause within the meaning of Fourth Amendment jurisprudence. Martin v. Applied Cellular Technology, Inc. 284 F.3d 1, 7 (1st Cir.2002). In this respect, whether those facts brought to the attention of the Court amounted to probable cause to believe that the plaintiff was involved in the armed robbery of the bank is a pure question of law for the court, and not the jury.

The officers were justified in detaining Mr. Godette. Based upon the whole picture the detaining officers had a particularized and objective basis for suspecting that Mr. Godette engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 417- 18 (1981). This translates to an inquiry whether the police "had reasonable suspicion, based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." Commonwealth v. Willis, 415 Mass. 814, 817, 616 N.E.2d 62, 64 (1993).

The practical focus is on whether the person stopped is, in some specific and articulable way, suspected of being involved in the criminal activity. Id. It is clear that the defendant police officers reasonably relied on Lt. Riordon's representation and reasonably believed that Mr. Godette was a suspect and this justified the stop at the Monican Hall.

Next, the police officers were justified in conducting a pat frisk of Mr. Godette based on the fact that he was suspected of armed robbery and he did have an object in his pocket, a keychain. (See paragraph 37.)

Under Terry v. Ohio, 392 U.S. 1, 26-27 (1968), an officer can make a pat frisk when he has an apprehension of danger, even if probable cause to arrest does not exist. Terry concluded that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Terry v. Ohio, 392 U.S. at 27. Clearly, the officers involved were warranted in believing that their safety or the safety of others was in danger. The officers were questioning an individual who they believed just involved in an armed robbery and the questioning occurred in the foyer of a college dormitory. For the safety of all, the officers were compelled to search the plaintiff.

Next, the plaintiff alleges that he agreed to take the officers to his dorm room and authorized the search. (See paragraph 41.) He then alleges that he allowed the search under duress. Once the officers were allowed to search, the search became lawful. If now the plaintiff alleges he was not of the proper state of mind, the officers must be qualifiedly immune from liability.

Next, to the extent that the plaintiff is alleging excessive force, there is no evidence to the support the claim in the complaint. The only possible allegation against the defendants raised by

the plaintiff was that he was pushed up against a wall when the police initially apprehended him. A police officer may use force as is reasonably necessary to effect an arrest. United States v. McQueeney, 674 F.2d 109, 113 (1st Cir. 1982). The reasonableness of such use of force "must be viewed from the prospective of the officers at the scene, under the circumstances of the particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of other officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Dean v. Worcester, 924 F.2d 364, 368 (1st Cir. 1991). There could not be a more clear case where force may be needed to make an arrest. The officers believed they were confronting an armed robber on a college campus. For the safety of themselves and the members of the Merrimack College community, if Mr. Godette was in fact pushed when initially contacted by the police, such conduct was clearly justified. The plaintiff did not assert that any medical attention was required which establishes that if there were any injuries they were very minor and the minimum use of force was used.

     Next, the plaintiff is asserting that his detention was race based. To establish a violation of equal protection principles under the 14th Amendment, the plaintiff must prove intentional discrimination, that the officers treated him differently than they would white citizens because of his race. Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (finding evidence of discriminatory impact insufficient to make out a violation of the Equal Protection Clause). The plaintiff has provided no evidence of discriminatory animus against the officers involved. There are no allegations of any racial remarks made by any of the officers to the plaintiff. In fact there is no evidence that the officers discriminated against him in any way.

In <u>Cason Enters., Inc. v. Metropolitan Dade Cty.</u>, 20 F.Supp.2d 1331, 1340 (S.D.Fla.1998) the Court held that "evidence of discrimination by others cannot be used to impute liability" to a defendant in a §1983 Equal Protection claim; citing <u>Boykin v. Blooomsburg Univ. of Penn.</u>, 893 F.Supp. 378, 394 (M.D.Pa.1993); "Liability ... under §§ 1983 cannot be imposed vicariously".  The plaintiff has not made that showing. He has not suggested that white citizens who behaved as he, vis-a-vis, the defendant officers, would have been treated differently.  Accordingly, the plaintiff's claim of racial discrimination must fail.

Finally, the plaintiff alleges a claim under §1983 for an alleged improper investigation conducted by the defendant officers.   The plaintiff, here is expected to argue that had the defendants conducted a more thorough investigation, by interviewing more persons at the scene, probable cause would had been somehow negated.[1]   In many recent cases, the First Circuit has reaffirmed the traditional view of the Supreme Court in <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), that the "constitution does not guarantee that only the guilty will be arrested." <u>Baker</u> at 145.  In fact, this is a clear cut case of where a proper investigation did in fact occur.  The officers went and interviewed Mr. Godette's teacher and once it was confirmed he was in class at the time of the armed robbery he was immediately released.

**C      The Plaintiff's Claim Pursuant to 42 USC Section 1985 Against Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine Must Fail**

---

[1] The plaintiff's contention raises serious practical difficulties.  As recognized in <u>Tomczak v. Barnstable</u>, 901 F.Supp. 397 (D.Mass. 1995), "police work is difficult enough without imposing unreasonable demands of perfection on every judgment officers are expected to make in ambiguous circumstances."

9

Under 42 U.S.C. § 1985(3), the plaintiffs must show that the defendants (1) conspired (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws (3) causing to be done an act in furtherance of the object of the conspiracy (4) resulting either in injury to another person or his or her property or in depriving him or her of having or exercising any right or privilege of a United States citizen. <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir.1996), <u>LaManque v. Massachusetts Dept. of Employment & Training</u>, 3 F.Supp.2d 83, 90-91 (D.Mass.1998).

First, there is no evidence of a conspiracy, a meeting of the minds of the defendants to deprive the plaintiff of his rights. To satisfy the second element, plaintiffs must establish, both that invidiously discriminatory *animus* lay behind the conspirators action, and that the conspiracy aimed at interfering with rights that are protected against private encroachment. <u>Bray v. Alexandria Women's Health Clinic</u> 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). In <u>Bray</u>, the Supreme Court made clear that plaintiffs face a heavy burden in that "it does not suffice for application of § 1985(3) that a protected right be incidentally affected. A conspiracy is not for the purpose of denying equal protection simply because it has an effect upon a protected right. The right must be 'aimed at'. Its impairment must be a conscious objective of the enterprise. Just as the 'invidiously discriminatory animus' requirement requires that the defendant has taken his action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. Also the intent to deprive of a right requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of

producing it. Id.

First the defendants have not engaged in any discriminatory acts as argued above and the plaintiff has failed to plead any facts to suggest that the defendant police officers shared a purpose to further a discriminatory policy. Accordingly, the plaintiff's claim of 42 USC Section 1985 must be dismissed.

> **D       The Plaintiff's Claim Pursuant to G.L. c. 12 Section 11H and I Against Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine Must Fail**

The Plaintiff alleges that the Defendant police officers deprived him of rights under the Constitution and laws of the United States and the Commonwealth of Massachusetts.

However, under M.G.L. C. 12, Section 11I, a Plaintiff is required to establish that his exercise or enjoyment of rights secured by the United States and the Commonwealth have been interfered with by "threats, coercion or intimidation".[2]  Courts have recognized that the "Legislature did not intend to create a vast constitutional tort and thus explicitly limited the state Civil Rights Act's remedy to a situation where derogation of secured rights occurs by threats, coercion or intimidation".  Bally v. North Eastern University, 403 Mass. 713, 717 (1989); Bell v. Mazza, 394 Ma. 176, 182-183 (1985).  These terms have been applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass or humiliate. Smith v. Longmeadow, 29 Ma. App. Ct. 599, 603 (1990) citing Bell, Supra, at 183-184; Pheasant Ridge Assoc. Ltd. Partnership v. Burlington, 399 Mass. 771, 781-782 (1987);  Deas v. Dempsey,

---

[2] In Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398 (1989) the phrase, "threats, intimidation and coercion" is defined as follows: "threats" are acts or language by which another is placed in fear of injury or damage; "intimidation" is the creation of fear to compel conduct; and "coercion" is the active domination of another's will. Id. at 409.

403 Mass. 468, 470-471 (1988); Bally, Supra, at 718-720.

In the present case, the Plaintiff has failed to allege sufficient facts that he was threatened, coerced or intimidated by the defendant.

Accordingly, the plaintiff's claim under the Massachusetts Civil Rights Act must fail.

### E     The Plaintiff's Claim for Intentional Infliction of Emotional Distress Against Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine Must Fail

The plaintiff has failed to set forth a prima facie case of intentional infliction of emotional distress with regard to the defendant police officers.  In order to successfully state a claim for intentional infliction of emotional distress, when as here, no physical injuries are involved, the plaintiff must establish the following four elements:

1. that the actor intended to inflict emotional distress or he knew or should have known that emotional distress was the likely result of his conduct;

2. that the conduct was "extreme and outrageous" was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community";

3. that the actions of the defendant as the cause of the plaintiff's distress; and

4. that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it".
Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315, 318-319 (1976).

In any action alleging intentional infliction of emotional distress the Court has discretion to dismiss the claim upon a review of the allegations at the motion to dismiss stage.  Redgrave v. Boston Symphony Orchestra, 557 F.Supp. 230, 236 (1983).  The Court must determine whether

conduct can reasonably be viewed as extreme and outrageous before submitting the issue to the jury for deliberation.  Id.  In the case at bar, the plaintiff has failed to plead any facts against the defendants to support the assertion that the defendants knew that the likely result of their conduct would be the infliction of emotional distress.

      **F**      **The Plaintiff's Claim for False Imprisonment Against Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine Must Fail**

The tort of false imprisonment is established by the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.  Santiago v. Fenton, 891 F.2d at 383, citing Max v. McGrath, 255 Mass. 340, 342, 151 N.E. 137, 138 (1926).  The claim of false imprisonment, in this case, therefore hinges on the determination of whether the detention was unlawful.  (Please see above Section B addressing the constitutionality of the detention of the plaintiff.)  See Max v. McGrath, 255 Mass. 340, 342, 151 N.E. 137, 138 (1926).

Based on the fact that the detention was lawful, as stated above, the tort of false imprisonment must fail.

      **G**      **The Plaintiff's Claim for Assault and Battery Against Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, William Wallace, Donald Pattullo, Charles Heseltine Must Fail**

Plaintiff asserts a claim for assault and battery against the defendant police officers. Assault and battery is defined as the "intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing

13

personal injury to another." Commonwealth v. McCan, 277 Mass. 199, 203, 178 N.E. 633, 634 (1931). An "officer authorized to make an arrest may use 'such force as is reasonably necessary to effect the (lawful) arrest.'" Julian v. Randazzo, 380 Mass. 391, 396 n.1, 403 N.E.2d 931, 934 n.1 (1980). The defendants in their capacity as police officers were entitled to use force to protect themselves and to effectuate the detention of the plaintiff. Commonwealth v. Klein, 372 Mass. 823 (1977). This standard has been deemed "essentially the same" as the Fourth Amendment standard by the First Circuit. Dean v. Worcester, 924 F.2d 364, 369 (1st Cir. 1991).

There is no evidence that there was any touching beyond that which was required to effectuate the detention of the plaintiff. The plaintiff can only articulate one instance of physical contact with any of the officers. The defendant officers used the minimal amount of force reasonably necessary to protect themselves and effectuate the custody of the plaintiff.

For these reasons, the defendants respectfully submit that this Court dismiss the plaintiff's claim of assault and battery against the defendants.

### H    The Plaintiff's Claim Pursuant to 42 USC Section 1983 and G.L. c 12 Section 11H and I Against the Towns of Andover and North Andover Must Fail

Municipal liability under section 1983 and G.L. c 12, Section 11H and I cannot be based on *respondeat superior*. Monell v. New York City Dep't of Soc. Svces., 436 U.S. 658, 98 S.Ct. 2018 (1978). In order to hold a municipality liable under Section 1983 or the MCRA, a plaintiff must "identify a municipal 'policy' or 'custom' that caused his or her injury." Board of the County Comm'rs of Bryant County v. Brown, 117 S.Ct. 1382, 1388 (1997) Municipal liability lies only when a municipal policy or custom causes the alleged constitutional deprivation.

Manarite v. City of Springfield, 957 F.2d 953 (1st Cir. 1992).   A single incident of misconduct alleged in a complaint does not suffice to show a municipal policy.  City of Canton v. Harris, 489 U.S. 378, 387 (1989); Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985)(plurality opinion); See Also, Gallego v. Wilson, 882 F.Supp. 1169 (D.Mass. 1995)(dismissed plaintiff's municipal misconduct claim because a single alleged incident of individual misconduct cannot establish a municipal policy or custom).

The plaintiff, here, must prove a direct link between the policy statement or custom and the constitutional violations.  Bowen v. City of Manchester, 966 F.2d 12, 18 (1st Cir. 1992). "[I]solated instances of unconstitutional activity [by subordinates] ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise show deliberate indifference." Maldanado-Denis v. Castillo-Rodriquez, 23 F.3d 576 (1st Cir. 1994).

The plaintiff in this case has absolutely no evidence that the Towns of North Andover or Andover, embraced a policy or custom under which any official acted to deprive him of any constitutional rights.  Accordingly, all claims against the Town under §1983 and the MCRA must be dismissed.

**I      The Plaintiff's Claim for Intentional Infliction of Emotional Distress Against the Towns of North Andover and Andover Must Fail**

With regard to the Towns of Andover and North Andover, a municipality can not be held liable for intentional infliction of emotional distress because a municipality cannot be held liable for intentional acts of its employees. G.L. 258.

**J      The Plaintiff's Claim for False Imprisonment Against the Towns of North Andover and Andover Must Fail**

With regard to the Towns of Andover and North Andover, a municipality can not be held liable for false imprisonment because a municipality cannot be held liable for intentional acts of its employees. G.L. 258.

**K      The Plaintiff's Claim for Assault and Battery Against the Towns of North Andover and Andover Must Fail**

With regard to the Towns of Andover and North Andover, a municipality can not be held liable for assault and battery because a municipality cannot be held liable for intentional acts of its employees. G.L. 258.

**L      The Individual Officers Must be Qualifiedly Immune from Liability**

A three-part test must be applied to determine whether an official is entitled to qualified immunity. Hatch v. Dep't of Children, Youth & Their Families, 274 F.3d 12, 20 (1st Cir.2001), following the guidance provided by the Supreme Court, Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The threshold inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, --- U.S. ----, 122 S.Ct. 2508, 2513, --- L.Ed.2d ---- (2002); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Siegert, 500 U.S. at 232, 111 S.Ct. 1789. The second question is whether the right was

clearly established at the time of the alleged violation. That inquiry is necessary because officers should be on notice that their conduct is unlawful before they are subject to suit. Hope, 122 S.Ct. at 2516-18; Anderson v. Creighton, 483 U.S. 635, 638-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The third is whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right. Swain v. Spinney, 117 F.3d 1, 9 (1st Cir. 1997). The question of whether a right is clearly established is an issue of law for the court to decide. Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). The reasonableness inquiry is also a legal determination. Swain, 117 F.3d at 10.

With regard to the first prong, the plaintiff alleges that he was falsely arrested. As presented above, the defendants acted reasonably in believing they had probable cause to arrest the plaintiff based on the above articulated facts and therefore, the plaintiff's allegations do not amount to a civil rights violation.

In responding to the second step in the qualified immunity inquiry, it is clear that whatever constitutional right may have been implicated had certainly not been "clearly established" so that an objective officer in the position of the defendants would have known that their actions with respect to the plaintiff were unlawful. (Id at 115-16.); see also Wilson, 119 S. Ct. at 1699-1701.

The question of the officers immunity for false arrest turns on whether, without regard to their state of mind, there was probable cause or arguably probable cause to make the detain the plaintiff.

The evidence is clear that an objectively reasonable police officer could have believed that Mr. Godette participated in the crime at the bank and consequently, that there was probable

cause to arrest/detain Mr. Godette for questioning. The reasonableness standards that underlie the probable cause and qualified immunity inquiries are not identical; qualified immunity requires a "somewhat lesser showing." Cox v. Hainey, 391 F.3d 25, 31 (1st Cir.2004). Thus, "if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." Id. Accordingly, even if the officers had no probable cause to arrest/detain Mr. Godette the officers are entitled to qualified immunity. See Anderson, 483 U.S. at 641, 107 S.Ct. at 3039 (law enforcement officials should not be held liable where they reasonably but mistakenly conclude that probable cause is present); Limone, 372 F.3d at 44 ("the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was 'apparent' when undertaken.").

Accordingly, Mr. Godette's detention was not obviously unlawful at the time it was made. Therefore, qualified immunity shields the officers from liability for false arrest. See Cox, 391 F.3d at 31.

A reasonable police officer acting in good faith would have determined after speaking with Lt. Riordon that Mr. Godette was involved in the armed robbery. Accordingly, with all of the evidence presented to the police officers, it would warrant a finding for a reasonable police officer to believe he had probable cause to arrest. Accordingly the defendants must be qualifiedly immune.

**V       CONCLUSION**

For the above stated reasons all counts and claims against the defendants in this matter must be dismissed as the plaintiff has failed to state a claim upon which relief may be granted.

Defendants, Stanley, Heffernan, Cronin, Gallagher, Wallace, Pattullo, Heseltine, Keefe, Town of North Andover and Town of Andover, by their attorneys,

/s/ Regina M. Ryan
Douglas I. Louison BBO# 545191
Regina M. Ryan BBO# 565246
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305


**CERTIFICATE OF SERVICE**

I, Regina M. Ryan, hereby certify that on the 14th day of October, 2005, I served the foregoing electronically and by causing a copy to be mailed, postage prepaid, directed **to Paul Klehm, Esquire**, Law Offices of James B. Krasnoo, 23 Main Street, Terrace Level, Andover, MA 01810; **Robert B. Smith, Esquire**, Nelson, Kinder, Mosseau & Saturley, P.C., 45 Milk Street, 7th Floor, Boston, MA 02109.

/s/ Regina M. Ryan
Regina M. Ryan