UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

———————————————————————— )
BRETT S. GODETTE,                                        )
     Plaintiff                                            )
v.                                                       )
                                                         )    CIVIL ACTION NO. 05-11354JLT
RICHARD STANLEY, *et al*,                                )
     Defendants.                                          )
———————————————————————— )

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS RICHARD STANLEY, DIANE
HEFFERNAN, DANIEL CRONIN, PAUL GALLAGHER, WILLIAM
WALLACE, DONALD PATULLO, CHARLES HESELTINE, TOWN OF
ANDOVER AND TOWN OF NORTH ANDOVER'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff Brett S. Godette (hereinafter "Godette") hereby submits the within memorandum

of law in support of his opposition to Defendants Richard Stanley, Diane Heffernan, Daniel

Cronin, Paul Gallagher, William Wallace, Donald Patullo, Charles Heseltine, Town of Andover

and Town of North Andover's Motion to Dismiss.   After review of the within matter, Godette

consents to the dismissal of Counts VIII, IX and X (only as to the intentional infliction of

emotional distress claim) against Defendants Town of Andover and Town of North Andover

*only*.  Godette respectfully requests that this Court deny the remainder of the motion to dismiss

filed by the Defendants[1].

---

[1] Defendants Merrimack College, Lt. Riordon and Patrick Keefe are not movants in this motion
to dismiss.  The term "Defendants," as used herein, shall refer to Defendants Town of Andover,
Town of North Andover, Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher,
William Wallace, Donald Pattulo, and Charles Heseltine.

## FACTS

At all times relevant, Plaintiff Brett Godette (hereinafter, "Godette") was a student at Merrimack College and a member of the men's basketball team.  Verified Complaint (hereinafter "VC") ¶19.  During the early morning of March 26, 2003, Godette wore a blue "doo-rag" and a gray Merrimack Basketball fleece jacket.  VC ¶20.  At some point before 11:00 a.m. that morning, Godette removed his blue "doo-rag."  VC ¶20.  At approximately 8:15 a.m. on that date, Godette was present in the cafeteria on the campus of Merrimack College in order to study for a Business Calculus examination (hereinafter, the "examination") with a fellow student.  VC ¶21.  From approximately 8:30 a.m. to 10:00 a.m. on that date, Godette and others studied together in preparation for the examination.  VC ¶22.  From approximately 10:00 a.m. to 10:50 a.m. on that date, Godette remained in the cafeteria.  VC ¶23.  At approximately 10:50 a.m. on that date, Godette left the cafeteria and traveled directly to a class.  VC ¶24.  From approximately 11:00 a.m. to 11:50 a.m. on that date, Godette was present at his class taking a written examination.  VC ¶24.

Meanwhile, at approximately 11:30 a.m. on that date, upon information and belief, an individual robbed a bank in North Andover, Massachusetts.  VC ¶25.  At approximately 11:55 a.m. on that date, Godette completed his examination and proceeded directly to his Strategic Marketing class, which he attended from noon to approximately 12:50 p.m.  VC ¶ 26.  After class, Godette went directly to the cafeteria, where he remained until approximately 1:30 p.m..  VC ¶27. At that time,Godette left the cafeteria and proceeded to an office on campus.  VC ¶28.

At approximately 2:00 p.m. on that date, upon information and belief, Riordon of the Merrimack College Police Services, after receiving information about a suspect in the robbery, falsely reported to North Andover Police via telephone that, among other things, Godette was

wearing the same clothes as the suspected robber. VC ¶29. Shortly thereafter, on that day,
Riordon met with various police officers, including, without limitation, Heffernan, Stanley,
Cronin and Gallagher. VC ¶29. At the meeting, Riordon displayed to the officers a photograph
of Godette. VC ¶29. Upon information and belief, Riordon displayed Godette's identification
photograph to North Andover police and/or assisted in locating Godette on campus. VC ¶29.
Upon information and belief, at no time between 11:30 a.m. and 3:10 p.m. on March 26, 2003
did any of the defendants take any steps to investigate Godette's whereabouts at the time of the
alleged robbery. VC ¶29.

At approximately 2:00 p.m., Godette, who was not aware of the robbery or that Riordon
had identified him as a suspected robber, returned to his room in the Monican dormitory and then
proceeded directly to a friend's room in the same dormitory. VC ¶30. At approximately 2:55
p.m. on that date, Godette left his friend's room and returned directly to his own room in order to
gather his belongings in order to attend a workout with the basketball team. VC ¶31.

At approximately 3:10 p.m. on that date, Godette walked out of the Monican dormitory
and was immediately surrounded by several police officers from the Andover, North Andover
and Merrimack Police Departments, including, without limitation, Heffernan, Chief Stanley,
Gallagher, Cronin, Wallace, Pattullo, Heseltine and Keefe. VC ¶32. A male officer violently
pushed Godette against a wall. VC ¶32. Several officers yelled orders at Godette, some of
which contradicted one another. VC ¶32. During the confrontation, Heffernan put her hand on
her gun and told the terrified Godette he was under arrest, while, at the same time, a male officer
peppered Godette with a rapid series of questions. VC ¶33. At no time did Godette hear the
officers provide him with any Miranda warnings. VC ¶33. Heffernan held Godette's wrists and
arms tightly and roughly placed Godette in handcuffs. VC ¶34. Without consent, Heffernan

began to search Godette's book bag.  VC ¶34.  When the book bag became entangled in the handcuffs, Godette was pulled away from the wall, and then another officer violently pushed Godette back against the wall.  VC ¶34.  For approximately fifteen minutes, in full view of onlookers, these police officers detained Godette in and around the lobby area of the Monican dormitory.  VC ¶35.

Without first seeking consent from Godette, a male officer searched Godette's person and asked Godette whether he had any weapons.  VC ¶36. At no time did any of the other officers physically present take any steps to prevent the wrongful, unconsented to physical touching of Godette.  VC ¶36.  Shortly thereafter, Godette heard Heffernan say, in words or substance, "It's in his pocket."  VC ¶37.  An officer reached inside Godette's pants, without consent, and pulled his left pocket inside out, pulling Godette's pants down to his knees in the process in full view of several onlookers who had gathered around the Monican lobby.  VC ¶37. An officer removed a keychain and then quickly placed it back in Godette's pocket.  VC ¶37.  While the officers searched Godette's person, a third officer pointed his finger in a menacing manner in Godette's face and told Godette, in words or substance, that Godette was in trouble.  VC ¶38.  The officer told Godette, in essence, that he (Godette) was better off telling the police everything.  VC ¶38.

To Godette's great surprise, the other male officer then accused Godette of having robbed a bank.  VC ¶39.  In an intimidating manner, the officer asked Godette a number of questions in rapid succession, without waiting for Godette's answers thereto.  VC ¶39.  The officers told Godette, erroneously and falsely, that they possessed a surveillance videotape which depicted his face.  VC ¶39.  Godette attempted to describe his whereabouts to the officers, whereupon one officer flatly and wrongfully accused Godette of lying.  VC ¶40.  After an officer questioned and intimidated Godette for approximately fifteen minutes in or around the lobby of the Monican

dormitory, a male officer told Godette that the officers wanted to visit his dormitory room.  VC ¶41.  Initially, Godette refused, but, while under duress, succumbed to officers' pressure to permit them to invade his room.  VC ¶41.

Upon arriving at Godette's dormitory room, which he shared with another student, the officers began an illegal, unconsented to, search of the entire room while Cronin conducted an intense and intimidating interrogation of Godette.  VC ¶43.  The officer did not inform Godette of the time of the alleged robbery during the course of the interrogation.  VC ¶43. The search and interrogation in the room lasted for approximately forty-five minutes.  VC ¶44.  During that time, more than ten officers stood outside the room.  VC ¶44.

The officers found no contraband or evidence of the robbery during their search of Godette's room.  VC ¶45. For the first time since Godette was placed under arrest, Cronin asked Godette, in the presence of Heffernan, specific questions about his whereabouts on that day, repeating many of the questions which Godette had already answered.  VC ¶45. While still handcuffed, Godette provided detailed information about his whereabouts that day to the officer. VC ¶46.  After five to ten minutes, Heffernan left the room.  VC ¶46.

Godette remained handcuffed and seated for approximately thirty minutes in his dormitory room.  VC ¶47.  At that point, Heffernan returned to Godette's room and told Godette that the police had confirmed Godette's whereabouts and that he was no longer under arrest.  VC ¶48.  Heffernan released Godette from handcuffs, which he had been wearing for almost three hours.  VC ¶48.  Without even an apology, the officers then left the room.  VC ¶48.

In or around March, 2003, Godette spoke with a counselor at the school about the trauma and humiliation he had endured.  VC ¶53.  As a direct and proximate result of the wrongful

action of the Defendants, Godette has suffered from, and will continue to suffer from, various

damages. VC ¶54.

## ARGUMENT

### A.     Standard of Review

When examining a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), this Court must

accept all of the allegations of the Verified Complaint as true and must draw all reasonable

inferences in favor of the plaintiff -- here, Godette.  *Albright v. Morton*, 2004 WL 1240900, at *2

(D.Mass. 2004) citing *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 255 (1st Cir.1994).  The Court

may only dismiss a Complaint if "it is clear that no relief could be granted under any set of facts

that could be proved consistent with the allegations."  *Albright*, 2004 WL 1240900 at *2, quoting

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984).

The Federal Rules of Civil Procedure, which set forth liberal notice pleading

requirements, require that the Verified Complaint contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  *Andrews-Clarke v. Lucent Techs., Inc.,* 157

F.Supp.2d 93, 96 (D.Mass. 2001);  Fed.R.Civ.P. 8(a).  Godette's thirty-five page complaint sets

forth approximately thirty-six paragraphs of detailed facts surrounding his wrongful arrest.

These facts are more than sufficient to withstand the onslaught of a motion to dismiss.

### B.     This Court Should Deny the Defendants' Motion to Dismiss the Plaintiff's 42 U.S.C. § 1983 Claim Against the Defendant Police Officers, Where (1) Plaintiff Has Satisfied the Notice Pleading Requirements, (2) the Determination of Whether Probable Cause Exists is Not Appropriate at the Motion to Dismiss Stage, and (3) Plaintiff has Stated A Claim Based Upon Unconsented Search, Excessive Force, and Race-Based Discrimination.

In Count I, Godette asserts a claim under 42 U.S.C. § 1983 for violation of his civil

rights. Godette alleges that the Defendant Police Officers, among other things, (a) detained and

handcuffed Godette in full view of a crowd of onlookers and personnel, (b) used excessive force,

(c) led Godette through the dormitory in a humiliating fashion, (d) searched his dormitory room

without consent, (e) discriminated against Godette on the basis of his race, (f) falsely accused

Godette, one of only a few African Americans on the Merrimack Campus, of criminal acts, (g)

wrongfully threatened, intimidated and coerced Godette, (h) failed to conduct a proper

investigation, and (i) violated Godette's privacy rights maliciously, intentionally and/or

recklessly under color of law and without probable cause.  VC ¶57.

> 1. **The Determination as to Whether Probable Cause Exists is Not Appropriate for a Motion to Dismiss, and, Even so, the Defendant Police Officers Lacked Probable Cause to Arrest Plaintiff Godette.**

Through their motion to dismiss, the Defendants seek to have this Court make a

premature determination, based upon the contents of the Verified Complaint, as to whether the

officers had probable cause to arrest Godette.  An arrest must be supported by probable cause,

according to the Fourth Amendment right to be free from unreasonable seizures.  See *Santiago v*.

*Fenton*, 891 F.2d 373, 383 (1989)(jury question as to whether officer violated Fourth

Amendment rights and common-law right to be free from false arrest and imprisonment). In the

absence of probable cause to arrest, an individual may seek redress under 42 U.S.C.§1983 and

M.G.L. c. 12 §11I.  *Id.*

A showing of probable cause requires a showing of the *probability*, not merely the

possibility, of criminal activity.  *See Illinois v. Gates*, 462 U.S. 213, 235 (1983). In order for the

police to detain a suspect, the totality of the circumstances must give rise to *particularized*

*suspicion* that the *particular person* arrested is or was engaged in wrongdoing.  *See id.*, 462 U.S.

at 231; *United States v. Cortez*, 449 U.S. 411, 418 (1981).  In short, the term "probable cause"

means "reasonable likelihood."  *Valente v. Wallace*,  332 F.3d 30, 32 (1st Cir. 2003).

7

The question as to the existence of probable cause is "left more appropriately to the trier of fact." *Woodley v. Town of Nantucket*, 645 F.Supp. 1365, 1370 (D.Mass. 1986)(summary judgment denied where disputed questions of fact as to whether officer had probable cause to arrest).  The factual determination of whether there was probable cause is better determined at the  summary judgment stage, and not at the motion to dismiss stage, where the existence of probable cause depends upon factual issues.  *See Moreta-Ramirez v. Lemert*, 156 F. Supp. 2d 138, 144 (D. P.R. 2001).

Even if this Court were to find that the question of whether probable cause to arrest Godette existed is appropriate for review at the motion to dismiss stage, the facts alleged in the Verified Complaint, taken in the light most favorable to Godette, demonstrate a lack of probable cause for the police to have arrested Godette.  Lt. Riordon of Merrimack College, after receiving information at approximately 2:00 p.m. about a bank robbery that had taken place at approximately 11:30 a.m. that day, falsely informed the North Andover police that Godette, who is African American, was wearing the same clothes as the suspected robber.  VC ¶29.   He then, among other things, displayed a photograph of Godette to various officers.  VC ¶29.  At no time did any defendants between 11:30 a.m. and 3:10 p.m. take any steps to investigate Godette's whereabouts at the time of the alleged robbery.  VC ¶29.

These facts demonstrate an utter lack of any reasonable likelihood that Godette had engaged in any wrongdoing.  In their memorandum, Defendants claim that the Defendants "reasonably relied on Lt. Riordon's identification of the plaintiff…."  (Def. Memo., at p. 6). Nothing in the facts alleged in the Verified Complaint suggest that the Defendants were reasonable in that reliance.  Moreover, at the time of his arrest, he was simply walking out of a dormitory, which is entirely consistent with innocent conduct.   Instead of simply confirming

Godette's whereabouts at the time of the robbery, the Defendants proceeded to arrest Godette. The Defendants had no particularized and objective basis for suspecting that Godette had engaged in any criminal activity. See *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). The mere fact that Lt. Riordon of Merrimack College received some information and, from that information, apparently and incorrectly determined that Godette was the bank robber, does not afford the Defendants probable cause to arrest Godette.

The Defendants argue that the Defendants made an appropriate stop of Godette under *Terry v. Ohio*, 392 U.S. 1, 26-27 (1968). (Def. Memo., at p. 7). An officer may pat frisk an individual when the officer has reasonable suspicion of danger, even in the absence of probable cause. *Id.* The facts alleged demonstrate that the Defendants arrested, not detained, Godette. An arrest or seizure for Fourth Amendment purposes occurs only when, "by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Godette, as a reasonable person, could not reasonably believe that he was free to walk away. *Florida v. Royer*, 460 U.S. 491 (1983). Defendant Heffernan told Godette that he was under arrest, and she placed handcuffs on him. VC ¶¶33-34. The Defendants held Godette, while handcuffed, for approximately three hours. VC ¶¶44,45, 47,48. The facts alleged in the Verified Complaint demonstrate that the Defendants arrested Godette without probable cause.

Even if this Court were to find that the Defendants merely made a *Terry* stop of Godette, the stop was not supported by reasonable suspicion. See *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The Verified Complaint does not allege any conduct on the part of Godette which would give rise to any fair inference that any Defendant presented any danger to the officers. As a result, the Defendants cannot escape liability by claiming that they made a *Terry* stop of Godette.

At this early stage of the proceedings, though, the question of probable cause is premature. In *United States v. Reyes*, 225 F.3d 71, 75-76 (1st Cir. 2000), the court relied heavily upon particularized and individualized facts in its determination that there was probable cause to arrest defendant. An officer in that case observed the defendant "in a private vehicle and entering and exiting a private residence with known and suspected drug dealers." *Id.*, 225 F.3d at 76. The court stressed that the defendant's activities took place "in the small and private confines" of a private vehicle or private residence and that the defendant had participated in suspicious activities, such as "the orchestrated entrances into and exits from the house." *Id*. Under the totality of the circumstances, the *Reyes* Court found that the defendant's behavior gave the officers probable cause to arrest him for conspiracy to distribute cocaine, where he also sat and watched the driver of the truck as he "stood in front of the vehicle and reached under it, in a way consistent with prior suspected drug activity observed … at [that] address." *Id*. Unlike in *Reyes*, the Verified Complaint makes no mention of the Defendants observing Godette engaged in any suspicious activities or orchestrated movements. *See* VC ¶29, ¶¶1-136; *see also*, *Terry*, 392 U.S. at 6 (repeated ritualistic observations of store by co-defendants in succession, which was consistent with "casing a job" gave rise to reasonable suspicion, *not* necessarily probable cause). In fact, at the time of his arrest, Godette had simply walked out of his own dormitory, headed for basketball practice. VC ¶¶31-32.

Like in *Dean v. Worcester*, 924 F.2d 364, 368 (1st Cir. 1991), upon which Defendants rely, Godette may have borne a superficial physical resemblance to the bank robber, in that he was African-American and wore a "doo-rag." VC ¶¶6, 20. Nonetheless, the similarities between *Dean* and the case at bar end there. In *Dean*, the plaintiff, whose facial features resembled an armed, escaped convict, was found within blocks of the house where the convict was known to

be hiding and was actually arrested at later that day.  In contrast, Godette, a college student who happened to be a member of the same race and wearing similar but common headgear as the suspected robber, was found on a college campus, not near the scene of the alleged bank robbery. *Id*.  In *Dean*, the reasonableness of the police action against the plaintiff was confirmed by the armed escapee's expressed intention to "shoot any officer who attempted to return him to prison," but, in the case at bar, no such intention was ever expressed by the unidentified bank robber.  *Id.*, 924 F.2d at 366.

In other cases cited in the Defendants' Memorandum finding probable cause or reasonable suspicion, there were particular facts pointing to the defendant as an individual  -- facts which simply do not exist in the case at bar.  For instance, in *Commonwealth v. Willis*, 415 Mass. 814, 816 (1993), the court found that there was reasonable suspicion to stop Willis, where the officer who knew Willis received a teletype from the Michigan State Police describing Willis' height, weight, clothes worn, and a striped pillowcase he carried, which contained a loaded firearm.  The teletype predicted Willis' time of arrival in Boston on a bus departed from Michigan, and the officers confronted Willis in the bus station.  *Id*.  A heavy factor in determining reasonable suspicion in Willis was the presence of an identifying police officer who had previous encounters with the defendant and knew him to be involved with guns.  The case at bar includes no similar facts establishing probable cause.

Similarly, in *Roche v. John Hancock Mutual Life Ins. Co.*, 81 F.3d 249, 255 (1st Cir. 1999), the court found that probable cause existed to believe that an employee had left threatening messages after John Hancock had performed extensive investigation, including having electronic voice analysis performed and receiving testimony from individuals familiar with Roche's voice.  Ultimately, four employees, all of whom were familiar with Roche's voice,

recognized his voice on the tapes.  *Id*.  Unlike *Roche*, in the case at bar, the only investigation

performed by the Defendant Police Officers was to review certain limited information about the

suspect.  VC ¶29.  Ultimately, the facts and circumstances known by the Defendant Police

Officers after the meeting with Riordan seem to have been that an African-American male

wearing a "doo-rag" was on the campus of Merrimack College hours after a bank located off

campus had been robbed somewhere in North Andover.  VC ¶29.  *See United States v. Lee*, 317

F.3d 26, 31-32 (1st Cir. 2003) (reasonable suspicion to stop two Asian men attempting flight in

the very parking lot of the robbed store and only minutes after the robbery).  Those facts, even if

true, do not give rise to probable cause.   In sum, Godette has stated a claim for relief pursuant to

42 U.S.C. §1983 against the Defendants where the Defendants lacked probable cause in arresting

him.

     **2.**     **Plaintiff Has Stated a Proper §1983 Claim Based Upon the Unconsented Search of His Dorm Room, the Use of Excessive Force by Defendants, and Race-Based Discrimination.**

Godette's §1983 claim is based upon more than just a lack of probable cause;  the claim

is also based upon, among other things, the Defendants' unconsented to search of his room, the

use of excessive force, race-based discrimination and an improper investigation.

     a.     <u>**Claim Based Upon Unconsented Search**</u>

A consented-to warrantless search is constitutionally permissible.  *Crooker v. Van*

*Higgins*, 682 F.Supp. 1274, 1282 (D.Mass. 1988)(Material issue of fact in §1983 claim regarding

whether Plaintiff consented to search of strongbox by officers).  The consent must be voluntary

–something which is a question of fact to be assessed based upon the totality of the

circumstances.  *Id, Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973). A civil rights claim

may be based upon an improper, unconsented to, warrantless search.  See *Tyree v.  Keane*, 400

Mass. 1, 507 N.E.2d 572 (1987). The facts alleged in the Verified Complaint demonstrate that Godette "consented" to the warrantless search only under duress. VC ¶41. He has properly asserted a §1983 claim based upon the wrongful search of his dorm room.

### b.    Claim Based Upon Excessive Force

"[A] police officer may use only such force as is reasonably necessary to effect an arrest," *United States v. McQueeney*, 674 F.2d 109, 113 (1st Cir. 1982) (emphasis added). The Verified Complaint alleges that, among other things, Defendant Heffernan treated Godette roughly placing handcuffs upon him, and that another officer violently pushed Godette against the wall. VC ¶¶34.

In an effort to claim that Godette's excessive force claim should be dismissed, the Defendants claim that "….if Mr. Godette was in fact pushed when initially contacted by the police, such conduct was clearly justified." (Def. Memo., at p. 8). The Defendants have no basis for making this assertion, especially at this early stage of the proceedings. Taking the evidence in the light most favorable to Godette, Godette has stated a proper §1983 claim based upon the Defendants' use of excessive force at the time of his arrest and/or detention, as this Court may not at this stage of the proceedings consider the Defendants' unverified, conflicting claims.

### c.    Race-Based Discrimination

Godette's Verified Complaint alleges that Godette is an African-American and that the Defendants, while acting under color of law, discriminated against him on the basis of his race in violation of §1983. VC ¶¶6, 57. Those allegations are sufficient to state a claim for a race-based §1983 action, especially given the liberal notice pleading requirements under Fed.R.Civ.P. 8.

### C.    Plaintiff Has Properly Stated a Claim Under 42 U.S.C. § 1985.

To state a claim under 42 U.S.C. § 1985(3), Plaintiff Godette must allege four elements: (1) a conspiracy; (2) to purposefully deprive a person or class of persons, directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) either that Godette suffered an injury to his person or property, or a deprivation of a constitutionally protected right or privilege. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *LaManque v. Massachusetts Dept. of Employment and Training*, 83 F. Supp. 2d 83, 91 (D. Mass. 1998).

In the Verified Complaint, Godette specifically alleged that, on or about March 26, 2003, the Defendant Police Officers, acting under the color of law, did conspire with each other and Riordon, for the purposes of obstructing justice and depriving the plaintiff of several constitutional rights, including, but not limited to freedom from racial discrimination, due process and equal protection under the Fifth and Fourteenth Amendments, privileges and immunities under Article IV and the Fourteenth Amendment.  VC ¶¶62, 64.   The Verified Complaint sets forth specific allegations regarding what happened to Godette, one of the few African-Americans on campus at Merrimack at the time, on the date of his arrest.  Godette, one of only a few African Americans on the Merrimack Campus, has alleged that he was discriminated against on the basis of his race, the class that §1985 was intended to protect. *See id.*; *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971).

Godette has alleged numerous overt acts, many of which also serve to demonstrate the Defendants' discriminatory animus and purpose.  The actions of the Defendant Police Officers, including, but not limited to, (a) leading Mr. Godette through the dormitory in a humiliating and embarrassing fashion in full view of said crowd, (b) discriminating against Mr. Godette on the basis of his race, (f) falsely and unjustly accusing Mr. Godette, one of only a few African

14

Americans on the Merrimack Campus, of criminal acts, were done maliciously, intentionally and/or recklessly under color of law and without justification, or probable cause. VC ¶57.

Finally, Godette alleged not only physical injuries, among others, to his person, VC ¶59, but also deprivation of his constitutional rights, including, but not limited to freedom from racial discrimination, due process and equal protection under the Fifth and Fourteenth Amendments, and privileges and immunities under Article IV and the Fourteenth Amendment. VC ¶58.

Therefore, this court should deny the Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1985 claim (Count II) against the Defendant Police Officers, because Godette has stated a claim upon which relief may be granted.

### D.    Plaintiff Has Properly Stated a Claim Against the Defendant Police Officers Under M.G.L. c. 12, §§ 11H, 11I.

To state a claim under M.G.L. c. 12, §§ 11H, 11I, Plaintiff Godette must allege that his secured rights were violated by "threats, coercion or intimidation." *See Bally v. North Eastern University*, 403 Mass. 713, 717 (1989). In their memorandum, Defendants argue only that Godette's claim, pursuant to the Massachusetts Civil Rights Act (hereinafter "MCRA"), should be dismissed because the Verified Complaint fails to allege the element of "threats, coercion or intimidation." (Def. Memo. at pp. 11–12).

In *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989), the Court defined the phrase: "threat (acts or language by which another is placed in fear of injury or damage), intimidation (creation of fear to compel conduct), or coercion (the active domination of another's will)." In the Verified Complaint, Godette specifically alleges that his secured rights were violated by not only "threats, intimidation or coercion," but, instead, by all three.

Specifically, Godette alleged several instances of misconduct on the part of the police officers which deprived him of secured rights by threats, intimidation or coercion, including

without limitation, (a) Heffernan putting her hand on her gun, VC ¶33, (b) an officer violently pushing Godette against a wall,  VC ¶34, (c) the officers detaining Godette in a public area at his college, VC ¶35, (d) a reaching inside Godette's pants, without consent, and pulling his left pocket inside out, pulling Godette's pants down to his knees in the process in public, VC ¶37, (e) the officers pressuring Godette to "consent" to a search of his room, VC ¶41, (f), leading Godette in handcuffs to his room, VC ¶42, and (g) conducting an intense and intimidating interrogation of Godette.  VC ¶43.  Thus, this court should not dismiss Plaintiff Godette's claim, pursuant to M.G.L. c. 12, §§ 11H, 11I (Count V), against the Defendant Police Officers, because Plaintiff, having alleged numerous actions constituting threats, intimidation or coercion, has stated a claim upon which relief may be granted.

### E.    Plaintiff Has Properly Stated a Claim for Intentional Infliction of Emotional Distress Against the Defendant Police Officers.

In Count X, Godette asserts a claim for Intentional and/or Negligent Infliction of Emotional Distress against all of the Defendants.  Through this motion, the Defendants seek only to dismiss the intentional infliction of emotional distress claims against all defendants, and not the negligent infliction of emotional distress claims.  Godette has asserted each of the four elements of an intentional infliction of emotional distress claim. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315, 318-319 (1976).  Godette has claimed that the conduct of the Defendants was "extreme and outrageous, beyond all possible bounds of decency, utterly intolerable in a civilized community and no reasonable person should be expected to bear it." VC ¶116.  As a result, Godette has stated a claim for intentional infliction of emotional distress against Defendants Stanley, Heffernan, Cronin, Gallagher, Wallace, Pattulo and Heseltine upon which relief may be granted.

### F.    Plaintiff Has Properly Stated a Claim for False Imprisonment Against the Defendant Police Officers.

In Count VIII, Godette alleges a claim for False Imprisonment against all Defendants. Defendants argue that, since the "detention [of Godette] was lawful, … the tort of false imprisonment must fail." (Def. Memo., at p. 13). The determination of whether the detention and/or arrest of Godette was lawful is a factual determination which cannot be made at this early stage of the proceedings. As a result, this Court should deny Defendants' motion to dismiss Count VIII (False Imprisonment).

### G.    Plaintiff Has Properly Stated a Claim for Assault and Battery Against the Defendant Police Officers.

In Count IX, Godette alleges a claim for assault and battery against all Defendants. The Verified Complaint sets forth numerous instances of conduct on the part of the officers that, when taken in the light most favorable to Godette, constitute assault and battery. As mentioned above, whether the police officers were authorized to use certain levels of force is a factual determination to be made later in this case, but not at the motion to dismiss stage. As a result, this Court should deny Defendants' motion to dismiss Count IX (Assault and Battery).

### H.    Plaintiff Has Properly Stated Civil Rights Claims Against the Defendant Municipalities.

In Counts III and IV of the Complaint, Godette alleges that the Defendant Municipalities engaged in a pattern of wrongful conduct which infringed upon various constitutional rights of Godette and others in violation of §1983. VC ¶69. Among other things, Godette alleges that the Defendant Municipalities failed to conduct a proper investigation, and failed to conduct proper training and supervision of its officers. VC ¶74. In order to establish liability for an unconstitutional municipal custom or policy under 42 U.S.C. § 1983, a plaintiff must prove:

> (1) that the governmental entity's employees engaged in a continuing, widespread, persistent pattern of conduct in violation of the constitutional standard, (2) that the governmental entity's policymaking officials, after having notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of that misconduct, and (3) that the plaintiff was injured by continued misconduct

within the persistent pattern, thus showing that the custom was a moving force
behind the violation of the constitutional standard.

*Jonielunas v. City of Worcester*, 338 F.Supp.2d 173, 177   (D.Mass. 2004), citing *Armstrong v.
Lamy*, 938 F.Supp. 1018, 1035-36 (D.Mass.1996), citing *Gates v. Unified School Dist. No. 449
of Leavenworth, Kan.*, 996 F.2d 1035, 1041 (10th Cir.1993). A municipality may be liable under
§1983 when the failure to train, supervise or discipline its employees is the result of the
deliberate indifference of the policymaker to the constitutional rights of persons who come in
contact with the government.  *City of Canton*, 489 U.S. 378 (1989). Thus, the Verified
Complaint sufficiently alleges §1983 claims against the Defendant Municipalities.

A single incident of misconduct, without more, cannot provide the basis for a §1983
municipal claim.  *Bordanaro v. McLeod*, 871 F.2d 1151, 1161 n. 8 (1st Cir. 1989);  but see *Brown
v. Gray*, 227 F.3d 1278 (10th Cir. 2000) (municipal liability under §1983 arising from a single
incident); *see also Willhauck v. Halpin*, 953 F.2d 689, 714 n.25 (1st Cir. 1992) (expressly
disclaiming that municipal liability is precluded because only a single incident is alleged).  In the
case at bar, the Verified Complaint alleges more than just a single incident;  the Verified
Complaint alleges, among other things, that the municipalities engaged in a pattern of wrongful
conduct, that they showed gross negligence and deliberate indifference, and that the
municipalities knew or should have known about the pattern of wrongful conduct.  Thus, the
§1983 claims against the municipalities (Counts III and IV) must survive the motion to dismiss.

In Count VII, Godette alleges claims against the Defendant Municipalities pursuant to
M.G.L. c. 12 §§11H and 11I.  At the Supreme Judicial Court, the question of whether a
municipality is subject to liability as a "person" under MCRA remains unanswered.  *See Swanset
Development Corp. v. City of Taunon*, 423 Mass. 390, 391 (1996);  but see *Howcraft v. City of
Peabody*, 51 Mass.App.Ct. 592 (2001)(municipality not a "person" covered by MCRA).

Applying the same principles as used in considering the §1983 claims against municipalities, this Court should deny the Defendants' motion to dismiss Count VII (MCRA claim against Defendant Municipalities).

I.      **The Court Should Deny the Defendant Police Officers' Motion to Dismiss Based Upon, Because the Plaintiff Has Stated a Claim Upon Which Relief May Be Granted.**

To determine whether an official is entitled to qualified immunity, courts must follow a two-part test. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The first inquiry must be whether a constitutional right was violated on the facts alleged by the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Wilson*, 526 U.S. at 609. In the case at bar, Godette has alleged that his arrest deprived him of numerous federal constitutional rights, including, but not limited to, freedom from unreasonable seizure of his person under the Fourth Amendment, freedom from false accusations, due process and equal protection under the Fifth and Fourteenth Amendments, privileges and immunities under Article IV and the Fourteenth Amendment, freedom from racial discrimination, freedom from malicious prosecution and freedom from intimidation and humiliation. VC ¶58.

The second prong of the qualified immunity determination is whether the right violated was clearly established. *Saucier*, 533 U.S. at 201. In the case at bar, the relevant objective question is whether a reasonable officer could have believed there was probable cause to arrest Godette, in light of clearly established law and the information the arresting officers possessed. *Anderson v. Creighton*, 483 U.S. 635, 636 (1987).

> Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding … the salient question … is whether the state of the law … gave respondents fair warning that their alleged treatment of Hope was unconstitutional.

*Hope v. Pelzer*, 536 U.S. 730, 741 (2002). For the reasons set forth in Argument § B(1), *supra* at pp. 8–14, any reasonable officer would have understood that the challenged conduct violated Godette's clearly established constitutional right to be free from arrest without probable cause. *See Swain v. Spinney*, 117 F.3d 1, 9 (1st Cir. 1997). A reasonable officer would have also understood, under the same analysis, that the challenged conduct would have also violated Godette's clearly established right to be free from, among other things, unconsented to searches in violation of the Fourth Amendment, to be free from excessive force and from race-based discrimination. As such, the Defendant officers are not entitled to qualified immunity.

## Conclusion

Plaintiff Brett Godette respectfully requests that, with the exceptions set forth herein, this Court deny the Defendants' motion to dismiss. Plaintiff consents to the dismissal of Counts VIII, IX and X (only as to the intentional infliction of emotional distress claim) against Defendants Town of Andover and Town of North Andover without prejudice.

<div style="margin-left:40%">

The Plaintiff
Brett Godette
By his Attorneys,


/s/ Paul J. Klehm_____
James B. Krasnoo  BBO #279300
*james@krasnolaw.com*
Paul J. Klehm  BBO #561605
*pklehm@krasnoolaw.com*
Law Offices of James B. Krasnoo
Terrace Level
23 Main Street
Andover, MA 01810
(978) 475-9955

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail and/or via ECF on December 30, 2005.

/s/ Paul J. Klehm_____
Paul J. Klehm