UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CA NO. 05-11354JLT

BRETT S. GODETTE,
        Plaintiff,

v.

RICHARD STANLEY, DIANE HEFFERNAN,
DANIEL CRONIN, PAUL CALLAGHER,
WILLIAM WALLACE, DONALD PATTULLO,
CHARLES HESELTINE, and PATRICK KEEFE,
Individually and as Police Officers of Their
Respective Municipalities, LT. RIORDON,
TOWN OF NORTH ANDOVER, TOWN OF
ANDOVER, and MERRIMACK COLLEGE,
        Defendants

DEFENDANTS, RICHARD STANLEY, DIANE HEFFERNAN,
DANIEL CRONIN, PAUL GALLAGHER,
AND TOWN OF NORTH ANDOVER'S MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION

        The defendants,  Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, and

the Town of North Andover move to dismiss all counts and claims and enter judgment in their

favor.

II.    STATEMENT OF THE CASE

        The plaintiff brings this action against the police defendants Richard Stanley, Diane

Heffernan, Daniel Cronin and Paul Gallagher, pursuant to 42 USC Section 1983 and 1985, MGL

ch. 12, §11 for intentional infliction of emotional distress, false imprisonment and assault and

battery.  In addition, the plaintiff brings this action against the Town of North Andover pursuant

to 42 USC Section 1983 (all other counts against the Town were dismissed by Motion to

Dismiss.)  The Town of Andover and the individual Andover defendants, Pattullo, Heseltine,

Wallace and Keefe were all dismissed by agreement of dismissal.

## III.    STATEMENT OF THE FACTS

The plaintiff, Brett Godette was a student a Merrimack College and a member of the

men's basketball team.  (Plaintiff's complaint.)   On March 26, 2003, Mr. Godette wore a "doo-

rag" and a grey Merrimack basketball fleece jacket while on campus.   (Id.)

At approximately 11:30 a.m. on March 26, 2003, an individual robbed a bank in North

Andover, Massachusetts.   At approximately 2:00 p.m. on that date, Lt. Riordon of the

Merrimack College Police Services read a be on the lookout "BOLO" and a "CJIS message"

which was issued by the North Andover Police Department to all local police departments that

described the suspect and identified a license plate.  (See Exhibit A, police report of Lt. Riordan

and Exhibit B, CJIS and BOLO.)

Lt. Riordan had seen Brett Godette earlier that day and the description from the BOLO,

including clothing, had similarities to Brett Godette.  Id.  The suspect was described as wearing a

doo-rag, baggy clothing and a grey zip up sweatshirt and Lt. Riordan saw him wearing those

clothes that morning..  Also, he ran the license plate included in the CJIS report and it came up

with a match to another Merrimack College student.  Id.  As a result, Lt. Riordan reported this

information to the North Andover Police via telephone.  Shortly thereafter, Lt. Riordon met with

various police officers including, Heffernan, Stanley, Cronin and Gallagher, all of the North

Andover Police. (Id.)

Detectives Heffernan, Lt. Gallagher, Chief Stanley and Detective Cronin all met with Lt.

Riordan and he informed them of the license plate check that matched a Merrimack College

student

and of the fact that he saw Mr. Godette that morning wearing a white doo rag and a hat and similar clothing.  (See North Andover Police report.)

Consistent with Lt. Riordan, Mr. Godette admits that on the morning of the incident when he went to workout at approximately 7:00 a.m. he wore his doo-rag as he walked to the gym. (Plaintiff's Deposition Transcript, p. 109).  Mr. Godette also admits to wearing a grey zip up fleece with baggy clothing on the date of this incident.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 107 - 108).

At the meeting, Lt. Riordon displayed to the officers a Merrimack College identification card.  (See Exhibit C.) of Mr. Godette, which were compared to the surveillance photos from the armed robbery.   (See Exhibit A Police Report of Michael Riordan and Exhibit D surveillance photos.)  Lt. Riordon displayed Mr. Godette's identification photograph to the North Andover Police and similarities were notes. (See Exhibit A Police Report of Michael Riordan.) As a result, both the Merrimack Police and the North Andover Police began to search the campus looking for the plaintiff.  (Id.).

At approximately 3:10 p.m. on that date, Mr. Godette walked out of the Monican dormitory and was immediately surrounded by several police officers.  (See plaintiff's complaint paragraph 32.)   The officers were not in uniform and he does not remember what they looked like in appearance.  (See Exhibit E, plaintiff's deposition page 79-80.)  The officers did have police badges hanging on them but he does not remember what the badges said.  (See plaintiff's deposition page 79-80.)

Mr. Godette was handcuffed but he does not remember who handcuffed him.  (See Exhibit E, plaintiff's deposition page 85-86.)   A male reached in his pants pocket and said, "it's in his pocket."  (See Exhibit E, plaintiff's deposition page 80-82.)   He had a "big" set of keys in

his pocket and the individual put the keys back in his pocket.   (See Exhibit E,.laintiff's

deposition page 82-83.)   Mr. Godette was wearing "very loose" sweatpants at the time of the

incident and he could not pull them up when his pants were being searched and as a result they

fell to his knees.   (See Exhibit E, plaintiff's deposition page 83-84.)  Mr. Godette does not

know who was searching his pants and can not give a physical description of this individual but

knows this individual did not intentionally pull down his pants.  (See Exhibit E, plaintiff's

deposition page 83-85.)

Mr. Godette asserts that a female officer searched his gym bag in front of Monican Hall.

  (See Exhibit E, plaintiff's deposition page 85.)   For approximately twenty minutes the plaintiff

alleges that these officers detained Mr. Godette in and around the lobby area of the Monican

dormitory.   (See Exhibit E, plaintiff's deposition page 86.)

During this time period Mr. Godette was told that there was an armed robbery in North

Andover and was asked to explain where he was earlier that day. (See Exhibit E, plaintiff's

deposition page 86-89.)  He said he was in class at the time of the robbery.

Mr. Godette permitted the officers to visit and search his dormitory.  (Complaint, ¶ 41.)

He does not remember who transported him to his room, how many individuals transported him

to his room or what they looked like.  ( See Exhibit E, plaintiff's deposition page 91.)  While in

his room Mr. Godette saw 4-5 police officers. (See Exhibit E, plaintiff's deposition page 93.)

There was a female officer and a heavyset gentleman.   (See Exhibit E, plaintiff's deposition

page 93.)

While in his dorm room, they asked him where his white doo-rag was and he showed

them he had a draw full of doo-rags.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 94).

Mr. Godette then showed them where his white doo-rag was located.  (See Exhibit E, Plaintiff's

Deposition Transcript, p. 95).  It took the officers approximately 30 to 45 minute to search his room.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 95).  After the 35 minute period, he was left in his room with one officer present.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 96).  It was not the female officer and it was not the heavy-set male officer.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 97).  It was a detective in plain clothes but he does not remember which department this individual was from.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 97).

There were officers outside his door and his door was open but he could only see their elbows.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 98).  After the search of his room, all of the officers outside of his room left and he remained in his room with this one officer.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 101).  The female officer then returned to the room and she showed him the surveillance pictures from the armed robbery and she advised him that she had confirmed his alibi that he was in class at the time of the robbery with a professor at Merrimack College.  (See Exhibit E, Plaintiff's Deposition Transcript, pp. 101-103).  Mr. Godette took the surveillance pictures from her, swore at her  and threw the pictures at her.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 103).  He then gathered his stuff for his workout and went to the gym.  (See Exhibit E, Plaintiff's Deposition Transcript, p. 104).

Mr. Godette alleges that this incident was racially motivated because, "the doo-rag didn't rest easy with me".  (Plaintiff's Deposition Transcript, pp. 196-197).

## III.    ARGUMENT

### A.    The Plaintiff's Claim Pursuant to 42 USC Section 1983 Against Richard Stanley, Diane Heffernan, Daniel Cronin, and Paul Gallagher Must Fail.

With regard to the Town of North Andover and the individual police officers, Stanley, Cronin, Gallagher and Heffernan, the fundamental question is whether or not the

officers had probable cause to arrest/ detain the plaintiff.  If in fact the officers had probable

cause to detain the plaintiff all of

the civil rights claims must fail.  The plaintiff's detention by the North Andover was made with

probable cause.

Courts apply a totality of the circumstances standard to determine if probable cause

exists.  U.S. v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000).  Under this standard, "probable cause

exists if, at the moment of arrest, the facts and circumstances within the relevant actors'

knowledge and of which they had reasonably reliable information were adequate to warrant a

prudent person in believing" that the suspect has committed a crime.  Roche v. John Hancock

Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996).  Probable cause does not require "either the

same quantum of proof or the same degree of certitude as a conviction."  U.S. v. Lee, --- F.3d ---,

2003 WL 133007, at 5 (1st Cir. 2003).  The "facts and circumstances" known to the police

defendants at the time of the plaintiff's detention, viewed in the their totality, easily satisfy this

standard.

Specifically, the facts as alleged establish that Lt. Riordon of the Merrimack College

Police advised the North Andover police that he believed that Mr. Godette had similarities to the

suspect in the armed robbery that occurred in North Andover on that day.  Lt. Riordan based his

belief that the plaintiff was a suspect on amongst other things that, Mr. Godette was wearing

similar clothing as the individual described and he looked similar as he compared the photograph

of the suspect to Mr. Godette's Merrimack College identification photograph.  (See plaintiff's

complaint paragraph 29.)  The responding officers of North Andover reasonably relied on Lt.

Riordon's identification of the plaintiff as a suspect in the armed robbery and sought to question

Mr. Godette.

Further, the license plate of the motor vehicle located at or near the scene was registered to a Merrimack College student. Accordingly, the officers were compelled to interview Mr. Godette based on the facts presented to them.

When determining whether or not the officers had probable cause, it is for the trier of fact to ascertain the underlying facts. But it is the duty of the court to determine whether those facts so found constitute probable cause within the meaning of Fourth Amendment jurisprudence. Martin v. Applied Cellular Technology, Inc. 284 F.3d 1, 7 (1st Cir.2002). In this respect, whether those facts brought to the attention of the Court amounted to probable cause to believe that the plaintiff was involved in the armed robbery of the bank is a pure question of law for the court, and not the jury.

The officers were justified in detaining Mr. Godette. Based upon the totality of the circumstances the detaining officers had a particularized and objective basis for suspecting that Mr. Godette engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 417- 18 (1981). This translates to an inquiry whether the police "had reasonable suspicion, based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." Commonwealth v. Willis, 415 Mass. 814, 817, 616 N.E.2d 62, 64 (1993).

The practical focus is on whether the person stopped is, in some specific and articulable way, suspected of being involved in the criminal activity. Id. It is clear that the defendant police officers reasonably relied on surveillance photographs, the license plate and clothing description and reasonably  believed that Mr. Godette was a suspect and this justified the interrogation.

**Excessive Force**

Next, to the extent that the plaintiff is alleging excessive force, there is no evidence to the support the claim in the complaint.  The only possible allegation against the defendants raised by the plaintiff was that he was handcuffed and keys were removed from his sweatpants. A police officer may use force as is reasonably necessary to effect an arrest.  United States v. McQueeney, 674 F.2d 109, 113 (1st Cir. 1982).  The reasonableness of such use of force "must be viewed from the prospective of the officers at the scene, under the circumstances of the particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of other officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Dean v. Worcester, 924 F.2d 364, 368 (1st Cir. 1991). Here it is clear that the officers did not use any force when interrogating Mr. Godette.

 The officers believed they were confronting an armed robber on a college campus.  For the safety of themselves and the members of the Merrimack College community, Mr. Godette was handcuffed.  His sweatpants were searched as he had a "big set of keys" which could have been a weapon. (See Exhibit E, Plaintiff's Deposition Transcript, pp. 82 -83 and Exhibit F, North Andover Police Detective Heffernan's police report).

In order to prevail on an excessive force claim, a plaintiff must establish that the defendant's actions in handcuffing were objectively unreasonable in light of the circumstances and the facts known to the officer at the time.  Calvi v. Knox County, 470 F. 3d. 422 (2006). Moreover, any of the officers who were present and did not handcuff the plaintiff cannot be liable for excessive force when handcuffing the plaintiff. (Id.)  There is not a shred of evidence to suggest that Chief Stanley, Detective Cronin or Gallagaher participated in the handcuffing. Sgt Diane Heffernan handcuffed the plaintiff  while at Monican Hall.  (See Exhibit F, Police

Report of North Andover Police Inspector Diane Heffernan).  Accordingly, all of the other

individuals must be dismissed for any claim of excessive force for handcuffing based on the fact

that mere presence at a scene, without more, does not render an officer legally responsible under

§1983 for the actions of a fellow officer.  See Calvi v. Knox County, 470 F. 3d. 422 (2006) and

also Gaudreaul v. Municipality of Salem, 923 F. 2d. 203, 207 n. 3 (1st Cir. 1990).

The handcuffing by Sgt. Inspector Diane Heffernan in no way amounted to a civil rights

violation.  The mere handcuffing of a suspect, does not amount to excessive force.  To prevail on

a claim for excessive force, a plaintiff must establish that the police defendant's actions were not

objectively reasonable, viewed in light of the facts and circumstances confronting him and

without regard to his underlying intent or motivation.  Bastien v. Goddard, 279 F. 3d. 10 (1st Cir.

2002).  If an officer uses no more than a degree of physical coercion necessary for an arrest, no

more than the degree of physical coercion typically attendant to an arrest, the individual officer

cannot be held liable.  Pena-Borrero v. Estremeda, 365 F. 3d. 7 (2004).  It is not enough for the

plaintiff to merely state that no force was necessary to effect his arrest, therefore, any force was

unreasonable and excessive.  (Id.).  There is no evidence to suggest that more than the minimal

amount of force necessary to detain the plaintiff.  The plaintiff did not suffer any injuries to his

wrists.

**Racial Discrimination**

Next, if the plaintiff is asserting that his detention was race based this claim must fail. To

establish a violation of equal protection principles under the 14th Amendment, the plaintiff must

prove intentional discrimination, that the officers treated him differently than they would white

citizens because of his race. Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d

597 (1976) (finding evidence of discriminatory impact insufficient to make out a violation of the

Equal Protection Clause).   The plaintiff has provided no evidence of discriminatory animus against the officers involved.  There are no allegations of any racial remarks made by any of the officers to the plaintiff.   In fact there is no evidence that the officers discriminated against him in any way.

In <u>Cason Enters., Inc. v. Metropolitan Dade Cty.</u>, 20 F.Supp.2d 1331, 1340 (S.D.Fla.1998) the Court held that "evidence of discrimination by others cannot be used to impute liability" to a defendant in a §1983 Equal Protection claim; citing <u>Boykin v. Blooomsburg Univ. of Penn.</u>, 893 F.Supp. 378, 394 (M.D.Pa.1993); "Liability ... under §§ 1983 cannot be imposed vicariously".  The plaintiff has not made that showing. He has not suggested that white citizens who behaved as he, vis-a-vis, the defendant officers, would have been treated differently.  Accordingly, the plaintiff's claim of racial discrimination must fail.

**Improper Investigation**

Finally, the plaintiff alleges a claim under §1983 for an alleged improper investigation conducted by the defendant officers.   The plaintiff, here is expected to argue that had the defendants conducted a more thorough investigation, by interviewing more persons at the scene, probable cause would had been somehow negated.[1]   The First Circuit has reaffirmed the traditional view of the Supreme Court in <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), that the "constitution does not guarantee that only the guilty will be arrested." <u>Baker</u> at 145.   In fact, this is a clear cut case of where a proper investigation did in fact occur.  The officers detained the plaintiff and after they interviewed Mr. Godette's teacher and once it was confirmed that he was

---

[1]  The plaintiff's contention raises serious practical difficulties.  As recognized in <u>Tomczak v. Barnstable</u>, 901 F.Supp. 397 (D.Mass. 1995), "police work is difficult enough without imposing unreasonable demands of perfection on every judgment officers are expected to make in ambiguous circumstances."

in class at the time of the armed robbery he was immediately released.

**B. The Plaintiff's Claim Pursuant to 42 USC Section 1985 Against Richard Stanley, Diane Heffernan, Daniel Cronin and Paul Gallagher Must Fail**

Under 42 U.S.C. § 1985(3), the plaintiffs must show that the defendants (1) conspired (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws (3) causing to be done an act in furtherance of the object of the conspiracy (4) resulting either in injury to another person or his or her property or in depriving him or her of having or exercising any right or privilege of a United States citizen. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996), LaManque v. Massachusetts Dept. of Employment & Training, 3 F.Supp.2d 83, 90-91 (D.Mass.1998).

First, there is no evidence of a conspiracy, a meeting of the minds of the defendants to deprive the plaintiff of his rights.  To satisfy the second element, plaintiffs must establish, both that invidiously discriminatory *animus* lay behind the conspirators action, and that the conspiracy aimed at interfering with rights that are protected against private encroachment. Bray v. Alexandria Women's Health Clinic 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). In Bray, the Supreme Court made clear that plaintiffs face a heavy burden in that "it does not suffice for application of § 1985(3) that a protected right be incidentally affected."

A conspiracy is not for the purpose of denying equal protection simply because it has an effect upon a protected right. The right must be 'aimed at'.  Its impairment must be a conscious objective of the enterprise. Just as the 'invidiously discriminatory animus' requirement requires that the defendant has taken his action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. Also the intent to deprive of a right requirement demands that the defendant do more than merely be aware of a deprivation of right that he

causes, and more than merely accept it; he must act at least in part for the very purpose of producing it. Id.

First the defendants have not engaged in any discriminatory acts as argued above and the plaintiff has failed to plead any facts to suggest that the defendant police officers shared a purpose to

further a discriminatory policy.  Accordingly, the plaintiff's claim of 42 USC Section 1985 must be dismissed.

**C.  The Plaintiff's Claim Pursuant to G.L. c. 12 Section 11H and I Against Richard Stanley, Diane Heffernan, Daniel Cronin and Paul Gallagher Must Fail**

The Plaintiff alleges that the Defendant police officers deprived him of rights under the Constitution and laws of the United States and the Commonwealth of Massachusetts.

However, under M.G.L. C. 12, Section 11I, a Plaintiff is required to establish that his exercise or enjoyment of rights secured by the United States and the Commonwealth have been interfered with by "threats, coercion or intimidation".[2]  Courts have recognized that the "Legislature did not intend to create a vast constitutional tort and thus explicitly limited the state Civil Rights Act's remedy to a situation where derogation of secured rights occurs by threats, coercion or intimidation".  Bally v. North Eastern University, 403 Mass. 713, 717 (1989); Bell v. Mazza, 394 Ma. 176, 182-183 (1985).  These terms have been applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass or humiliate.

---

[2]  In Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398 (1989) the phrase, "threats, intimidation and coercion" is defined as follows: "threats" are acts or language by which another is placed in fear of injury or damage; "intimidation" is the creation of fear to compel conduct; and "coercion" is the active domination of another's will. Id. at 409.

Smith v. Longmeadow, 29 Ma. App. Ct. 599, 603 (1990) citing Bell, Supra, at 183-184; Pheasant

Ridge Assoc. Ltd. Partnership v. Burlington, 399 Mass. 771, 781-782 (1987);  Deas v. Dempsey,

403 Mass. 468, 470-471 (1988);  Bally, Supra, at 718-720.


In the present case, the Plaintiff has failed to allege sufficient facts that he was

threatened, coerced or intimidated by the defendants.  Accordingly, the plaintiff's claim under

the Massachusetts Civil Rights Act must fail.

### D.  The Plaintiff's Claim for Intentional Infliction of Emotional Distress Against Richard Stanley, Diane Heffernan, Daniel Cronin andPaul Gallagher Must Fail

The plaintiff has failed to set forth a prima facie case of intentional infliction of

emotional distress with regard to the defendant police officers.  In order to successfully state a

claim

for intentional infliction of emotional distress, when as here, no physical injuries are involved,

the plaintiff must establish the following four elements:

1. that the actor intended to inflict emotional distress or he knew or should have known that emotional distress was the likely result of his conduct;
2. that the conduct was "extreme and outrageous" was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community";
3. that the actions of the defendant as the cause of the plaintiff's distress; and
4. that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it".
   Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315, 318-319 (1976).

In any action alleging intentional infliction of emotional distress the Court has discretion

to dismiss the claim upon a review of the allegations at the motion to dismiss stage.  Redgrave v.

Boston Symphony Orchestra, 557 F.Supp. 230, 236 (1983).  The Court must determine whether

conduct can reasonably be viewed as extreme and outrageous before submitting the issue to the

jury for deliberation.  Id.  In the case at bar, the plaintiff has failed to plead any facts against the

defendants to support the assertion that the defendants knew that the likely result of their conduct would be the infliction of emotional distress; that their conduct was extreme and outrageous; that he was caused distress and it was serve.  Accordingly, this claim must be dismissed.

**E.  The Plaintiff's Claim for False Imprisonment Against Richard Stanley, Diane Heffernan, Daniel Cronin and Paul Gallagher Must Fail**

The tort of false imprisonment is established by the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.  <u>Santiago v. Fenton</u>, 891 F.2d at 383, citing <u>Max v. McGrath</u>, 255 Mass. 340, 342, 151 N.E. 137, 138 (1926).  The claim of false imprisonment, in this case, therefore hinges on the determination of whether the detention was unlawful.  (Please see above Section A addressing the constitutionality of the detention of the plaintiff.)  <u>See</u> <u>Max v. McGrath</u>, 255 Mass. 340, 342, 151 N.E. 137, 138 (1926).

Based on the fact that the detention was lawful, as stated above, the tort of false imprisonment must fail.

**F.  The Plaintiff's Claim for Assault and Battery Against Richard Stanley, Diane Heffernan, Daniel Cronin and Paul Gallagher Must Fail**

Plaintiff asserts a claim for assault and battery against the defendant police officers. Assault and battery is defined as the "intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another."  <u>Commonwealth v. McCan</u>, 277 Mass. 199, 203, 178 N.E. 633, 634 (1931).  An "officer authorized to make an arrest may use 'such force as is reasonably necessary to effect the (lawful) arrest.'"  <u>Julian v. Randazzo</u>, 380 Mass. 391, 396 n.1, 403 N.E.2d 931, 934 n.1 (1980).  The defendants in their capacity as police officers were entitled to use force to

protect themselves and to effectuate the detention of the plaintiff.  <u>Commonwealth v. Klein</u>, 372

Mass. 823 (1977).   This standard has been deemed "essentially the same" as the Fourth

Amendment standard by the First Circuit.  <u>Dean v. Worcester</u>, 924 F.2d 364, 369 (1st Cir. 1991).

There is no evidence that there was any touching beyond that which was required to

effectuate the detention of the plaintiff.  The plaintiff can only articulate one instance of physical

contact with any of the officers that was for handcuffing.  The defendant officers used the

minimal amount of force reasonably necessary to protect themselves and effectuate the interview

of the plaintiff.

For these reasons, the defendants respectfully submit that this Court dismiss the

plaintiff's claim of assault and battery against the defendants.

**G.  <u>The Plaintiff's Claim Pursuant to 42 USC Section 1983 and G.L. c 12 Section 11H and I Against the Town of North Andover Must Fail Section 1983</u>**

Municipal liability under section 1983 cannot be based on *respondeat superior*.  <u>Monell</u>

<u>v. New York City Dep't of Soc. Svces</u>., 436 U.S. 658, 98 S.Ct. 2018 (1978).  In order to hold a

municipality liable under Section 1983 a plaintiff must "identify a municipal 'policy' or

'custom' that caused his or her injury."  <u>Board of the County Comm'rs of Bryant County v.</u>

<u>Brown</u>, 117 S.Ct. 1382, 1388 (1997)  Municipal liability lies only when a municipal policy or

custom causes the alleged constitutional deprivation.  <u>Manarite v. City of Springfield</u>, 957 F.2d

953 (1st Cir. 1992).   A single incident of misconduct alleged in a complaint does not suffice to

show a municipal policy.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 387 (1989); <u>Oklahoma City v.</u>

<u>Tuttle</u>, 471 U.S. 808, 818 (1985)(plurality opinion); <u>See</u> <u>Also</u>, <u>Gallego v. Wilson</u>, 882 F.Supp.

1169 (D.Mass. 1995)(dismissed plaintiff's municipal misconduct claim because a single alleged

incident of individual misconduct cannot establish a municipal policy or custom).

The plaintiff, here, must prove a direct link between the policy statement or custom and

the constitutional violations.  Bowen v. City of Manchester, 966 F.2d 12, 18 (1ˢᵗ Cir. 1992).

"[I]solated instances of unconstitutional activity [by subordinates] ordinarily are insufficient to

establish a supervisor's policy or custom, or otherwise show deliberate indifference."

Maldanado-Denis v. Castillo-Rodriquez, 23 F.3d 576 (1ˢᵗ Cir. 1994).

The plaintiff in this case has absolutely no evidence that the Town of North Andover

embraced a policy or custom under which any official acted to deprive him of any constitutional

rights.  Accordingly, all claims against the Town under §1983 must be dismissed.

### H.  The Individual Officers Must be Qualifiedly Immune from Liability

A three-part test must be applied to determine whether an official is entitled to qualified

immunity.  Hatch v. Dep't of Children, Youth & Their Families, 274 F.3d 12, 20 (1st Cir.2001),

following the guidance provided by the Supreme Court, Wilson v. Layne, 526 U.S. 603, 609,

119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); County of Sacramento v. Lewis, 523 U.S. 833, 841 n.

5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct.

1789, 114 L.Ed.2d 277 (1991). The threshold inquiry is whether the plaintiff's allegations, if true,

establish a constitutional violation. Hope v. Pelzer, --- U.S. ----, 122 S.Ct. 2508, 2513, ---

L.Ed.2d ---- (2002); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272

(2001); Siegert, 500 U.S. at 232, 111 S.Ct. 1789.  The second question is whether the right was

clearly established at the time of the alleged violation.  That inquiry is necessary because officers

should be on notice that their conduct is unlawful before they are subject to suit. Hope, 122 S.Ct.

at 2516-18; Anderson v. Creighton, 483 U.S. 635, 638-40, 107 S.Ct. 3034, 97 L.Ed.2d 523

(1987).  The third is whether a reasonable officer, similarly situated, would understand that the

challenged conduct violated that established right. Swain v. Spinney, 117 F.3d 1, 9 (1st Cir.

1997). The question of whether a right is clearly established is an issue of law for the court to

decide.  Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). The

reasonableness inquiry is also a legal determination.  Swain, 117 F.3d at 10.

      With regard to the first prong, the plaintiff alleges that he was falsely arrested.   As

presented above, the defendants acted reasonably in believing they had probable cause to arrest

the plaintiff based on the above articulated facts and therefore, the plaintiff's allegations do not

amount to a civil rights violation.

      In responding to the second step in the qualified immunity inquiry, it is clear that

whatever constitutional right may have been implicated had certainly not been "clearly

established" so that an objective officer in the position of the defendants would have known that

their  actions with respect to the plaintiff were unlawful. (Id at 115-16.); see also Wilson, 119 S.

Ct. at 1699-1701.

      The question of the officers immunity for false arrest turns on whether, without regard to

their state of mind, there was probable cause or arguably probable cause to make the detain the

plaintiff.

      The evidence is clear that an objectively reasonable police officer could have believed

that Mr. Godette participated in the armed robbery at the bank and consequently, that there was

probable cause to arrest/detain Mr. Godette for questioning. The reasonableness standards that

underlie the probable cause and qualified immunity inquiries are not identical; qualified

immunity requires a "somewhat lesser showing." Cox v. Hainey, 391 F.3d 25, 31 (1st Cir.2004).

Thus, "if the presence of probable cause is arguable or subject to legitimate question, qualified

immunity will attach." Id.  Accordingly, even if the officers are short on reaching the probable

cause standard to arrest/detain Mr. Godette the officers are entitled to qualified immunity. See

Anderson, 483 U.S. at 641, 107 S.Ct. at 3039 (law enforcement officials should not be held

liable where they reasonably but mistakenly conclude that probable cause is present); Limone, 372 F.3d at 44 ("the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was 'apparent' when undertaken.").

       Accordingly, Mr. Godette's detention was not obviously unlawful at the time it was made.  Therefore, qualified immunity shields the officers from liability for false arrest. See Cox, 391 F.3d at 31.

       A reasonable police officer acting in good faith would have determined after speaking with Lt. Riordon, viewing the photographs and the victims's description of the suspect, that Mr. Godette was involved in the armed robbery.  Accordingly, with all of the evidence presented to the police officers, it would warrant a finding for a reasonable police officer to believe he had probable cause to arrest.   Accordingly the defendants must be qualifiedly immune.

**V**      **CONCLUSION**

       For the above stated reasons all counts and claims against the defendants in this matter must be dismissed as the plaintiff has failed to state a claim upon which relief may be granted.

       Defendants,  Stanley, Heffernan, Cronin Gallagher
       and Town of North Andover by their attorneys,

       /s/ Regina M. Ryan_____
       Douglas I. Louison BBO# 545191
       Regina M. Ryan BBO# 565246
       Merrick, Louison & Costello, LLP
       67 Batterymarch Street
       Boston, MA 02110
       (617) 439-0305

**CERTIFICATE OF SERVICE**

I, Regina M. Ryan, hereby certify that on the 1st day of March, 2007, I served the

foregoing electronically and by causing a copy to be mailed, postage prepaid, directed **to Paul Klehm, Esquire**, Law Offices of James B. Krasnoo, 23 Main Street, Terrace Level, Andover, MA 01810; **Robert B. Smith, Esquire**, Nelson, Kinder, Mosseau & Saturley, P.C., 45 Milk Street, 7th Floor, Boston, MA 02109.

/s/ Regina M. Ryan
Regina M. Ryan

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

**CA NO. 05-11354JLT**

**BRETT S. GODETTE,**
     **Plaintiff,**

**v.**

**RICHARD STANLEY, DIANE HEFFERNAN,**
**DANIEL CRONIN, PAUL CALLAGHER,**
**WILLIAM WALLACE, DONALD PATTULLO,**
**CHARLES HESELTINE, and PATRICK KEEFE,**
**Individually and as Police Officers of Their**
**Respective Municipalities, LT. RIORDON,**
**TOWN OF NORTH ANDOVER, TOWN OF**
**ANDOVER, and MERRIMACK COLLEGE,**
     **Defendants**

**NOTICE OF FILING WITH CLERK'S OFFICE**

Notice is hereby given that the documents, exhibits or attachments listed below have

been manually filed with the Court and are available in paper form only:

Defendants, Richard Stanely, Diane Heffernan, Daniel Cronin, Paul Gallagher, and Town

of North Andover's Memorandum of Law in Support of Their Motion for Summary Judgment

Exhibits A-F.

The original documents are maintained in the case file in the Clerk's Office.

Defendants,  Stanley, Heffernan, Cronin,
Gallagher and Town of North Andover by
their attorneys,

/s/ Regina M. Ryan
Douglas I. Louison BBO# 545191
Regina M. Ryan BBO# 565246
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305

## <u>CERTIFICATE OF SERVICE</u>

I, Regina M. Ryan, hereby certify that on the 1st day of March, 2007, I served the foregoing electronically and by causing a copy to be mailed, postage prepaid, directed **to Paul Klehm, Esquire**, Law Offices of James B. Krasnoo, 23 Main Street, Terrace Level, Andover, MA 01810; **Robert B. Smith, Esquire**, Nelson, Kinder, Mosseau & Saturley, P.C., 45 Milk Street, 7th Floor, Boston, MA 02109.

/s/ Regina M. Ryan
Regina M. Ryan