UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRETT S. GODETTE,<br>    Plaintiff,<br><br>v.<br><br>RICHARD STANLEY, *et. al.*,<br>    Defendants. | )<br>)<br>)<br>)   Civil Action No. 05-11354JLT<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF BRETT S. GODETTE'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANTS MERRIMACK COLLEGE AND MICHAEL RIORDAN FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, V, VI, VIII, IX AND X *ONLY*  [DOC. NO. 77]**

Plaintiff Brett S. Godette (hereinafter "Godette") hereby submits the within memorandum of law in support of his opposition the motion of Defendants Merrimack College and Michael Riordan for partial summary judgment on Counts II, V, VI, VIII, IX and X *only* [Doc. No. 77].[1]

## FACTS

Godette relies upon, and incorporates herein by reference, the facts set forth in Plaintiff's Memorandum of Law In Support of Plaintiff's Opposition To Defendants Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher and Town of North Andover's Motion For Summary Judgment (hereinafter, "North Andover Opposition Memorandum") [Doc. No. 80]. Godette further relies upon the following supplemental material facts.[2]

---

[1] Defendants Merrimack College and Riordan have not moved for summary judgment on the following Counts which remain pending against them:
1.     Count XI, Negligence claims against Riordan and Merrimack College;
2.     Count XII, M.G.L. c. 214, §1B claims against Riordan and Merrimack College;
3.     Count XIII, Breach of Contract claim against Merrimack College; and
4.     Count XIV, Breach of Covenant of Good Faith and Fair Dealing claim against Merrimack College.

[2] Godette notes that Merrimack College and Michael Riordan have not included any concise statement of material facts of record. Local Rule 56.1 provides, in pertinent part, "[f]ailure to include such a statement constitutes grounds for denial of the motion."

Former Chief Mayrose does not believe that, as of the date of Mr. Godette's detention, there were any policies or procedures in place at Merrimack College which required Riordan to contact Mayrose before contacting the North Andover Police Department. (Fact No. 1)[3]. Mayrose was disappointed that Riordan had contacted the North Andover police department before speaking with Mayrose. (Fact No. 1).

As of the date of Mr. Godette's arrest, Mayrose did not have the authority to access class schedules from his computer. (Fact No. 2). Mayrose admitted that he could call the registrar's office if he needed a student's schedule. (Fact No. 2). Riordan testified that he did have access to class schedules on the department computers through the department secretary Maureen Cavanaugh. (Fact No. 2). Mayrose did sense that there was a need for more people to be able to access the database of student class schedules, and "that is why I was trained on it, and other people in the department were given access to it." (Fact No. 2).

Former Chief Mayrose believes that "the professor confirmed that Mr. Godette was in that particular class." (Fact No. 3). Mayrose testified that he did not do anything to verify Godette's class schedule because it was a North Andover investigation and because he did not want to "micromanage" Riordan. (Fact No. 3).

Chief Mayrose wrote his memorandum dated April 11, 2003 in good faith, intending it to be accurate. (Fact No. 4). In that memorandum, Mayrose wrote, among other things,

> After the incident, I met with Chief Stanley and Lt. Gallagher of the North Andover Police Department. We all agreed that the student was subjected to a situation that could have been avoided with advance information about his 11:00 am class. Chief Stanley has offered to apologize to the student and he has also had conversation with President Santigati….
>
> In the spirit of learning, and not criticism, it appears that the focus and course of the investigation would have been changed if the student's class schedule had been checked before searching for him on campus….Wherever possible, let's take

---

[3] "Fact X" shall refer to Plaintiff's numbered further facts filed herewith.

> a little more time to consider all possibilities before calling in a local law enforcement agency. When time allows, the officers involved should consult with me or, in my absence, the next highest ranking officer.

(Fact No. 4)[4].

After the meeting between North Andover and Merrimack College officers, a "joint effort" between North Andover and Merrimack College police was made to determine Godette's whereabouts. (Fact 5).

Officer Kelly Anderson and Officer Rogers, of the Merrimack College police, and Defendant Diane Heffernan went to Godette's dormitory. (Fact 6). At Godette's dormitory, Anderson, Heffernan and Rogers went upstairs to Godette's room. (Fact 7). They knocked on Godette's door, but no one responded, and they called his room, but no one answered. (Fact 7). Anderson and Heffernan then went to wait in Anderson's cruiser, while Rogers waited inside the lobby of the dormitory. (Fact 8).

Riordan had gone with the remaining North Andover officers (Defendants Daniel Cronin, Richard Stanley and Paul Gallagher) to the gymnasium, but Godette was not there. (Fact 9). Riordan, Cronin, Stanley and Gallagher then proceeded directly to Godette's dormitory. (Fact 10).

Rogers radioed Anderson and Heffernan, who were sitting outside the dormitory in Anderson's marked cruiser, that Godette was coming through the lobby before his arrest. (Fact 11). Riordan next recalls Heffernan and Godette in the foyer of the dormitory. (Fact 12). Anderson, Riordan, Mayrose, Cronin, Heffernan, and, possibly, Rogers, were in the area at the

---

[4] At his deposition, when asked if any portion of the document was inaccurate, Mayrose testified, "I think my reference to checking a student's class schedule, if I had to rewrite this, would be to say, to verify that the student was in a particular place at a particular time, as opposed to simply just checking a schedule." (Fact No. 4). He did not believe any other portion of the memorandum to be inaccurate. (Fact No. 4).

time of Godette's arrest. (Fact 13). Riordan was situated ten to twelve feet from Heffernan and Godette before Heffernan brought Godette upstairs. (Fact 14).

After Godette's arrest, Heffernan and Cronin took Godette upstairs to his room, followed by Anderson, Gallagher, Stanley and Mayrose. (Fact 15). Riordan also went upstairs. (Fact 15).

## STANDARD OF REVIEW

The party moving for summary judgment must meet the initial burden of demonstrating the absence of a genuine issue of material fact, upon which a reasonable jury could find for the nonmovant. Fed. R. Civ. P. 56(c). All facts must be viewed in the light most favorable to the nonmovant, giving the nonmovant "the benefit of all reasonable inferences that can be drawn from these facts." *Lockhart v. Cedar Rapids Comm. Sch. Dist.*, 963 F. Supp. 805, 814 (N.D. Iowa 1997) (citation omitted). "A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989), would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds*, 896 F.2d 5, 7 (1st Cir. 1990).

## ARGUMENT

**A.  Summary Judgment Should Be Denied As To Godette's Claims Against Merrimack College and Riordan For Violation of M.G.L. c. 12, §§ 11H, 11I Where, Among Other Things, the Conduct of the Merrimack and North Andover Police Departments, in Failing to Check <u>on Godette's Whereabouts at the Time of the Robbery, Was Reckless.</u>**

To recover under M.G.L. c. 12, §§ 11H, 11I, Godette must show that his secured rights were violated by "threats, coercion or intimidation." *See Bally v. North Eastern University*, 403 Mass. 713, 717 (1989). Defendants Merrimack and Riordan argue in their memorandum, §III.B., at pp. 4-5, that the mere fact of Godette's innocence does not make out a constitutional violation. Defendants' argument falls short for all the reasons stated in Godette's North Andover Opposition Memorandum, in that Godette has shown that Godette suffered both federal and state

4

constitutional violations, including, without limitation, violations of his secured rights under both the Fourth Amendment to the United States Constitution and Article Fourteen of the Massachusetts Declaration of Rights, (1) when he was arrested without probable cause, (2) when his room was searched with neither a warrant nor consent, (3) when excessive force was used upon him, and (4) when he was discriminated against on the basis of his race.  ([Doc. No. 80], Argument §§A, B, at pp. 9-16).  Moreover, Godette has shown that these violations of his secured rights were violated by means of threats, intimidation or coercion.  ([Doc. No. 80], Argument § B, at pp. 15-16).

Assuming, *arguendo*, that the record fails to demonstrate a violation of Godette's Fourth Amendment rights, the record shows, at the very least, a violation of Godette's rights under Article 14 of the Massachusetts Declaration of Rights by all Defendants.  Article 14 provides more substantive protection than does the Fourth Amendment.  *Commonwealth v. Upton*, 394 Mass. 363, 373-375 (1985) (in determination of probable cause – rejecting *Gates*[5] in favor of *Aguilar-Spinelli*[6] – probable cause requires basis of knowledge *and* veracity of informant); *Commonwealth v. Stoute*, 422 Mass. 782, 784-789 (1996) (in determination of when person seized – rejecting *Hodari D*[7] – person is "seized" upon pursuit by police).  Massachusetts police may only arrest without a warrant one whom they reasonably believe to have committed a felony.  *Commonwealth v. Holmes*, 344 Mass. 524, 525 (1962); *Commonwealth v. Claiborne*, 423 Mass. 275, 281 (1996).

---

[5] *Illinois v. Gates*, 462 U.S. 213 (1983) (rejecting *Aguilar-Spinelli*, and holding that probable cause depends upon the totality of the circumstances).
[6] *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969) (collectively holding that probable cause based upon information from an informant requires that the informant demonstrates both a basis of knowledge and veracity).
[7] *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (holding that a person is seized not upon pursuit by an officer but only when an officer manages physically to detain an individual).

In *Claiborne*, the Supreme Judicial Court found that probable cause existed to arrest the defendant in the wake of four armed robberies in the Newton and Brookline area. *Claiborne*, 423 Mass. at 276. On October 27, 1993, a man told the Newton police that after leaving a supermarket he was robbed at gunpoint by a "'mulatto' male, approximately five feet, nine inches tall, medium build, wearing dark running clothes, and displaying a silver handgun." *Id.* The same day, a woman had left the same supermarket later to be robbed at gunpoint at her home. *Id.* She described her assailant as "a black male, approximately five feet, ten or eleven inches in height, and displaying a silver handgun." *Id.* She told police he drove a station wagon. *Id.* On November 4, 1993, a third person told police that she had left a restaurant near the supermarket, later to be robbed at gunpoint. *Id.* She described her assailant as "a light-skinned black male, approximately five feet, nine inches to six feet tall, wearing a dark running suit and wool cap, and displaying a silver handgun." *Id.* Finally, on November 11, 1993, a fourth person told police that she had been robbed at gunpoint, at a bank near the supermarket. *Id.* She described the robber "as a light-skinned black male, wearing a three-quarter length brown leather jacket, and displaying a silver handgun." *Id.*, at 276-277. The Court found that the police had probable cause to arrest Claiborne, where

> At the time of the stop, Detectives McNeilly and Crapo knew that: the defendant was a light-skinned black male with a mustache in his mid-twenties; he was driving a "boxy" maroon station wagon; he was alone; he was located at a place and time consistent with having left the scene of that night's reported robbery; and the direction he was heading was consistent with the route taken by the suspect in one of the previous robberies.

*Claiborne*, 423 Mass. at 281. In contrast, here, North Andover and Merrimack College police arrested Godette, an African-American, even though the suspect was described first as white, then, later, as light-skinned Hispanic. ([Doc. No. 79], Response No. 4, pp. 3-4). Godette, unlike in *Claiborne*, remained, at all times, unconnected to the automobile seen in the area of the bank

6

robbery. ([Doc. No. 79], Response No. 10, p. 9). There is no evidence that Godette was traveling in a direction consistent with having left the area of the bank – he was merely walking within his own residence hall (Fact No. 11). *Compare Commonwealth v. Williams*, 422 Mass. 111 (1996) (officers pursued two males, one covered in blood, running at "sprint pace" within 200-400 yards of recent shooting). As such, unlike in *Claiborne* and *Williams*, the North Andover and Merrimack College police officers lacked any probable cause that *Godette* had committed the felony bank robbery. Therefore, even if this Court were to find that Godette did not, as a matter of law, suffer a Fourth Amendment violation, the record demonstrates a genuine issue of material fact as to whether Godette suffered a violation of his rights under Article 14 of the Massachusetts Declaration of Rights, for purposes of his claim brought pursuant to M.G.L. c. 12, §§11H and 11I.

Merrimack College cites to only one case, *DeToledo v. County of Suffolk et al*, 379 F.Supp.2d 138 (D.Mass. 2005), in support of its argument. In that case, two women who did not know one another, DeToledo and Williams, were in the visiting area of a jail. *Id.* at 141. The officers determined that Williams had a warrant, but that the warrant had been recalled. *Id.* Officer Rao misread the paperwork and determined that the warrant was active. *DeToledo*, 379 F.Supp. at 141. He proceeded to detain DeToledo, thinking she was Williams. *Id.* The matter was resolved "a minute or two" later when the mistaken identity was revealed. *Id.* at 142. Williams was then arrested, even though the paperwork in Rao's possession stated that the warrant had been recalled and even though she protested, and she was forced to submit to a strip search. *Id*. Rao did not have his glasses available at the time, and so he could not read the warrant. Id. at 145. Williams was placed in a holding cell for several hours, then transferred to

7

another jail. *Id.* Eventually, the jailers noticed the error and released Williams. *DeToledo*, 379 F.Supp. at 142.

As to DeToledo, the person detained for only a minute or two, the Court held that she failed to demonstrate a §1983 claim, as the officer was, at most, negligent. *Id.* at 144. As the Court noted, the Williams situation presented a "closer issue." *Id.* The general rule is that "[a]n officer who reasonably believes that he has probable cause to make an arrest has no duty to investigate a suspect's claims of innocence." *DeToledo*, 379 F.Supp. at 144; *Baker v. U.S.*, 443 U.S. 137, 146, 99 S.Ct. 2689 (1979). The First Circuit, however, recognizes an exception to that rule where the officer acts recklessly. *DeToledo*, 379 F.Supp. at 145. In *Torres Ramirez v. Bermuda Garcia*, 898 F.2d 224, 227 (1st Cir. 1990), the First Circuit reversed a grant of summary judgment in a case in which a warrant was executed despite the availability of readily accessible court records to show that the warrant had been vacated. The First Circuit held that the trier of fact could find that the officer had acted recklessly by not verifying the warrant's validity. *Id; see also Pena-Borrero v. Estremeda,* 365 F.3d 7 (1st Cir. 2004)(officers ignored conclusive evidence that warrant withdrawn). In *DeToledo*, the Court permitted the claim involving Williams to go forward because the trier of fact could find that Rao was, in essence, reckless. *DeToledo*, 379 F.Supp.2d at 145.

The case at bar more closely resembles the Williams situation than it does the DeToledo situation. DeToledo was only detained for a minute or two, while Godette was held for a much longer time, and he was arrested in the presence of onlookers. Like Williams, Godette proclaimed his innocence, and he provided the officers with information regarding his whereabouts. The information regarding Godette's class schedule at the time of the robbery was readily available to both the Merrimack College police the North Andover police. With a simple

phone call, the Merrimack College police and/or the North Andover police could have confirmed Godette's whereabouts. In the same way that Officer Rao held information in his hands which would exculpate Williams, Merrimack and North Andover had information at their fingertips that would have exculpated Godette. Merrimack and North Andover were reckless in the manner in which they handled Godette's arrest, and even Mayrose's (Chief of the Merrimack College police) memorandum in the aftermath of the arrest confirms that the matter was mishandled. As a result, the DeToledo case cited by Defendants bolsters Godette's argument that summary judgment should be denied.

Therefore, Godette respectfully requests that this Court deny summary judgment in favor of Defendants Merrimack College and Riordan on Count V, Violation of M.G.L. c. 12, §§11H and 11I.

**B.  Summary Judgment Should Be Denied As To Godette's Claim Against Riordan For Conspiracy To Violate M.G.L. c. 12, §§ 11H, 11I.**

Defendants argue, citing cases interpreting 42 U.S.C. §1985, that Godette cannot demonstrate a conspiracy as a matter of law. ([Doc. No. 82], §III.A., at pp. 2-4). Although the North Andover Defendants seek summary judgment on Count VI (Conspiracy to Violate M.G.L. c. 12, §§11H and 11I), their memorandum of law [Doc. No. 63] sets forth no argument in support of summary judgment as to that count. Since Merrimack's memorandum of law does address Count VI, we will discuss it here.

Massachusetts state law recognizes two theories of civil conspiracy. *Kurker v. Hill*, 44 Mass. App. Ct. 184, 188 (1998). Under the first theory, Godette must show that Defendants, acting in unison, "had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994), quoting *Jurgens v. Abraham*, 616 F. Supp. 1381, 1386 (D.

Mass.1985); *Fleming v. Dane*, 304 Mass. 46 (1939).  Here, where Godette began to walk out of the Monican dormitory and was immediately surrounded by ten to fifteen police officers whom he now understands to be from the North Andover and Merrimack College police departments, clearly the Defendant police officers, including Riordan, had a peculiar power of coercion over Godette that they would not have had if they had been acting independently.  *See* [Doc. No. 79], at Response No. 14, p. 10; *see also* Fact Nos. 1-15, *supra*.

The second theory requires proof that two or more persons acted in concert, pursuant to a common design, to commit a tortious act.  *Copperbeech Partnership, Ltd. v. Seegel, Lipshutz And Wilchins, P.C.*, 17 Mass. L. Rptr. 701, 2004 WL 1431052, *3 (Mass. Super. 2004); *Aetna*, 43 F.3d at 1564.  In order for Godette to recover under this second civil conspiracy theory, Godette must demonstrate that "a combination of persons [acted] pursuant to an agreement to injure the plaintiff," *Gutierrez v. Massachusetts Bay Transp. Authority*, 437 Mass. 396, 415 (2002), quoting J.R. Nolan & L.J. Sartorio, *Tort Law* § 99, at 136 (2d ed.1989), here, by violating his civil rights in violation of M.G.L. c. 12, §§11H, 11I.

Under this second theory, "conspiracy" denotes vicarious liability in tort for "concerted action."  *Aetna*, 43 F.3d at 1564, citing W. Page Keeton, *Prosser and Keeton on Torts* 322 (5th ed. 1984) and *Restatement (Second) of Torts* §876 cmt. b (1977).  In order to recover, Godette must demonstrate (1) a common design or agreement, *although not necessarily express*, between two or more persons to do a wrongful act, and (2) proof of some tortious act in furtherance. *Aetna*, at 1564.  In order to meet this standard, Godette need only show (1) that Merrimack and/or Riordan knew that the conduct of another breached a duty to Godette, and (2) that Merrimack and/or Riordan gave "substantial assistance or encouragement to the other so to conduct himself."  *Copperbeech Partnership, Ltd.*, 2004 WL 1431052, *3.

Here, there is substantial evidence of an agreement between Riordan and the North Andover officers to arrest Godette without probable cause: Heffernan, Gallagher, Stanley, Cronin, Merrimack Chief William Mayrose, Officer Rogers and Riordan met and discussed arresting Godette, ([Doc. No. 79], Response No. 10, pp. 8-9), then North Andover and Merrimack College officer made a "joint effort" to locate Godette (Fact No. 5). Moreover, Riordan gave substantial assistance and encouragement to the North Andover officers, including, without limitation, Heffernan – it was Riordan who first contacted the North Andover police to alert them that he suspected Godette robbed the bank in North Andover. ([Doc. No. 79], Response No. 8, pp. 6-7). Nonetheless, no reasonable police officer could have believed that probable cause existed to arrest Godette. Finally, the record demonstrates numerous tortious acts in furtherance of the conspiracy, including, without limitation, (1) the arrest of Godette without probable cause, (2) the search of Godette's room with neither a warrant nor consent, (3) excessive force used upon Godette, and (4) Godette was discriminated against on the basis of his race. *See*, *e.g.*, Argument, §A, *supra*.

Finally, Defendants argue, citing cases interpreting 42 U.S.C. §1985, that Godette's civil conspiracy claim under state law cannot proceed to trial because Godette cannot demonstrate that Riordan was motivated by racial animus. ([Doc. No. 82], §III.A., at pp. 2-4).[8] Defendants' arguments regarding Riordan's lack of racial animus are inapplicable to his civil conspiracy claim to violate Godette's secured rights by means of threats, coercion or intimidation. *See, generally, Aetna*, 43 F.3d at 1563 (proof for civil conspiracy claim differs from criminal conspiracy or federal civil conspiracy claims – here, RICO).

Therefore, Godette respectfully requests that this Court deny summary judgment in favor of Defendant Riordan on Count VI, Conspiracy to Violate M.G.L. c. 12, §§11H and 11I.

---

[8] Godette has consented to the dismissal of his claim pursuant to 42 U.S.C. §1985.

    **C.**    **Summary Judgment Should Be Denied As To Godette's Claims Against Merrimack College and Riordan For False Imprisonment and Assault and Battery.**

For all the reasons stated in Godette's opposition to the North Andover Defendants' motion for summary judgment, Godette respectfully requests that this Court deny summary judgment in favor of Defendants Merrimack College and Riordan on Counts VIII and IX, False Imprisonment and Assault and Battery. Godette notes that while Defendants Merrimack College and Riordan rely upon the reasons set forth in the North Andover Defendants' motion for summary judgment as well as "additional legal precedent cited herein," Merrimack College and Riordan cite no additional legal precedent in favor of summary judgment on Counts VIII and IX. ([Doc. No. 82] §§III.C. and III.D, p. 5).

    **D.**    **Summary Judgment Should Be Denied As To Godette's Claims Against Merrimack College and Riordan For Intentional Infliction of Emotional Distress.**

Godette relies upon, and incorporates herein by reference, his opposition to the North Andover Defendants' motion for summary judgment as to Count X, insofar as it states a claim for intentional infliction of emotional distress. ([Doc. No. 80] Argument, §C, pp. 16-17). Defendants Merrimack College and Riordan argue, in essence that a wrongful arrest, cannot, as a matter of law, constitute extreme and outrageous conduct, and that, therefore, they are entitled to summary judgment as to Godette's intentional infliction of emotional distress claims. ([Doc. No. 82] §§III.E., pp. 5-7). Nonetheless, one who is arrested without probable cause may recover for intentional infliction of emotional distress. *Wagenmann v. Adams*, 829 F.2d 196, 214 (1st Cir. 1987). Here, had Riordan and/or any other Merrimack College officer simply checked Godette's class schedule, to which they had access, the whole incident would have been avoided.

Defendants rely upon *Sietins v. Joseph*, 238 F.Supp.2d 366, 376 (D.Mass. 2003) (summary judgment entered in favor of Defendants), but that case is distinguishable on its face.

In *Sietins*, the officers arrested Sietins on a warrant and the Court found probable cause. *Id.* In the case at bar, there was no warrant and no probable cause to arrest. Defendants also rely upon *Sheppard v. Aloisi*, 384 F.Supp.2d 478 (D.Mass. 2005). In that case, the Court found that the conduct could not be deemed "extreme and outrageous" where probable cause was "at least arguable." *Id.* at 495 (Facts suggested that Sheppard was involved in robbery, such as fact that he was only employee not injured during robbery and he provided inconsistent information).

Godette respectfully requests that this Court deny Defendants' motion for summary judgment as to Count X, insofar as it states a claim for intentional infliction of emotional distress.

E. **Summary Judgment Should Be Denied As To Godette's Claims Against Merrimack College and Riordan For Negligent Infliction of Emotional Distress.**

Defendants Riordan and Merrimack College argue that Godette may not recover against them for negligent infliction of emotional distress ("NIED") because Godette did not suffer physical injury. Godette notes that, while Defendants Merrimack College and Riordan purport to rely, in part, upon the reasons set forth in the North Andover Defendants' motion for summary judgment, the North Andover Defendants set forth ***no*** legal arguments in their memorandum in support of summary judgment on Count X, insofar as it states a claim for NIED.

While Defendants correctly state the rule that a plaintiff may not recover for NIED absent physical injury, they incorrectly state, categorically, that Godette suffered no physical injuries within the meaning of the NIED case law. While a successful NIED claim must "do more than allege 'mere upset, dismay, humiliation, grief and anger,'" *Rodriguez v. Cambridge Housing Authority*, 443 Mass. 697, 702 (2005) quoting *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 137 (1993), the type of objective evidence required to prove physical harm includes "symptoms that could be classified as more 'mental' than 'physical.'" *Rodriguez*, 443 Mass. at 702 quoting

13

*Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 412 (2002).  In *Rodriguez*, a woman who suffered a home invasion suffered symptoms, which included anxiety, depression, posttraumatic stress disorder, nightmares, insomnia, and dissociative episodes.  *Rodriguez*, at 704-705.  The Court found her symptoms sufficient objective evidence of physical harm, rather than "mere 'upset and dismay.'"  *Id.*; *compare Gutierrez*, 437 Mass. at 412-413 (tears on witness stand not type of objective evidence contemplated in the *Sullivan* case).

      Here, Godette spoke with a counselor at Merrimack College about the trauma and humiliation he suffered; he felt not only betrayed and embarrassed but also, like in *Rodriguez*, depressed.  ([Doc. No. 79], Response Nos. 48 and 49, pp. 23-24).  Moreover, Godette suffered direct physical harm; he suffered marks on his wrists for days from the handcuffs.  ([Doc. No. 79], Response No. 49, pp. 23).  He was pushed up against a wall and wrongly and harshly touched.  (*See* [Doc. No. 79], Response No. 18, p. 12).  He had his body physically felt by intrusive and unwanted touchings which caused his pants to come down.  (*See* [Doc. No. 79], Response No. 18, p. 12).  This is direct physical injury.  Finally, Merrimack College could reasonably have foreseen the emotional harm it caused to Godette – according to Chief Mayrose:

> The student was, understandably, unsettled and embarrassed by the experience of being handcuffed in front of fellow students, particularly due to the fact that he was mistakenly identified as the suspect. After this incident, rumors began circulating around campus that he had been arrested for armed robbery and this caused further frustration and embarrassment to the student and to the college community.

([Doc. No. 79], Response No. 49, pp. 24).  As such, a genuine issue of material fact remains as to whether Godette suffered physical harm within the meaning of the Massachusetts NIED case law.

Therefore, Godette respectfully requests that this Court deny summary judgment in favor of Defendants Merrimack College and Riordan on Count X, Negligent Infliction of Emotional Distress.

## CONCLUSION

Plaintiff Brett S. Godette respectfully requests that this Court DENY the motion of Defendants Merrimack College and Michael Riordan for partial summary judgment on Counts II, V, VI, VIII, IX and X, and permit all remaining claims against all parties to proceed to trial on June 11, 2007.

> Plaintiff
> Brett S. Godette
> By his Attorneys,
>
> */s/ Paul J. Klehm*
> James B. Krasnoo (BBO#279300)
> *james@krasnooklehm.com*
> Paul J. Klehm (BBO#561605)
> *pklehm@krasnooklehm.com*
> Benjamin L. Falkner (BBO#667951)
> *bfalkner@krasnooklehm.com*
> Krasnoo | Klehm LLP
> 23 Main Street, Suite 6
> Andover, MA 01810
> (978) 475-9955

Dated: May 3, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record via ECF on May 3, 2007.

> */s/ Paul J. Klehm*
> Paul J. Klehm