UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRETT S. GODETTE,<br>    Plaintiff,<br><br>v.<br><br>RICHARD STANLEY, *et al*,<br>    Defendants. | )<br>)<br>)<br>)   Civil Action No. 05-11354JLT<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF BRETT S. GODETTE'S L.R. 56.1 PLAINTIFF'S CONCISE STATEMENT OF FURTHER MATERIAL FACTS RELATING TO MOTION OF DEFENDANTS MERRIMACK COLLEGE AND MICHAEL RIORDAN FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II, V, VI, VIII, IX AND X *ONLY* [DOC. NO. 77]**

Plaintiff Brett S. Godette hereby sets forth, pursuant to L.R. 56.1, Plaintiff Brett S. Godette's concise statement of further material facts relating to motion of Defendants Merrimack College and Michael Riordan for partial summary judgment on Counts II, V, VI, VIII, IX And X *only*. Defendants Merrimack College and Michael Riordan have not included a L.R. 56.1 concise statement of material facts with their motion for partial summary judgment. Godette hereby adopts and incorporates herein by reference Plaintiff Brett S. Godette's Response To Defendants, Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher And Town Of North Andover's L.R. 56.1 Statement Of Undisputed Facts And Plaintiff's Concise Statement Of Further Material Facts [Doc. No. 79]:

**Plaintiff's Additional Fact No. 1**

Former Chief Mayrose does not believe that, as of the date of Mr. Godette's detention, there were any policies or procedures in place at Merrimack College which required Riordan to contact Mayrose before contacting the North Andover Police Department. (Deposition of William Mayrose ("Dep. Mayrose"), attached as **Exhibit A** to the Supplemental Affidavit of Paul J. Klehm, Esq. ("Supp. Aff. Klehm"), filed herewith, at pp. 52, ln. 23 to p. 53 ln. 4).

Mayrose was disappointed that Riordan had contacted the North Andover police department before speaking with Mayrose. (Dep. Mayrose, at p. 53, ln. 5-8).

**Plaintiff's Additional Fact No. 2**

As of the date of Mr. Godette's arrest, Mayrose did not have the authority to access class schedules from his computer. (Dep. Mayrose, at p. 71, ln. 4-6). Mayrose admitted that he could call the registrar's office if he needed a student's schedule. (Dep. Mayrose, at p. 72, ln. 20-23). Riordan testified that he did have access to class schedules on the department computers through the department secretary Maureen Cavanaugh. (Deposition of Michael Riordan ("Dep. Riordan"), attached as **Exhibit B** to Supp. Aff. Klehm, at p. 61, ln. 14 to p. 62, ln. 9). Mayrose did sense that there was a need for more people to be able to access the database of student class schedules, and "that is why I was trained on it, and other people in the department were given access to it." (Dep. Mayrose, at p. 74, ln. 19-24).

**Plaintiff's Additional Fact No. 3**

Former Chief Mayrose believes that "the professor confirmed that Mr. Godette was in that particular class." (Dep. Mayrose, at p. 84, ln. 5-10). Mayrose testified that he did not do anything to verify Godette's class schedule because it was a North Andover investigation and because did not want to "micromanage" Riordan. (Dep. Mayrose, at p. 103, ln. 19 to p. 104, ln. 4).

**Plaintiff's Additional Fact No. 4**

Chief Mayrose wrote his memorandum dated April 11, 2003 in good faith, intending it to be accurate. (Dep. Mayrose, at p. 90, ln. 21 to p. 91, ln. 3; *see* Exhibit O to first Affidavit of Paul J. Klehm). In that memorandum, Mayrose wrote, among other things,

> After the incident, I met with Chief Stanley and Lt. Gallagher of the North Andover Police Department. We all agreed that the student was subjected to a

situation that could have been avoided with advance information about his 11:00 am class. Chief Stanley has offered to apologize to the student and he has also had conversation with President Santigati….

In the spirit of learning, and not criticism, it appears that the focus and course of the investigation would have been changed if the student's class schedule had been checked before searching for him on campus….Wherever possible, let's take a little more time to consider all possibilities before calling in a local law enforcement agency. When time allows, the officers involved should consult with me or, in my absence, the next highest ranking officer.

*Id*[1].

**Plaintiff's Additional Fact No. 5**

After the meeting between North Andover and Merrimack College officers, a "joint effort" between North Andover and Merrimack College police was made to determine Godette's whereabouts. (Dep. Riordan, at p.111, ln.13 to 21).

**Plaintiff's Additional Fact No. 6**

After the meeting, Officer Kelly Anderson and Officer Rogers, of the Merrimack College police, and Defendant Diane Heffernan went to Godette's dormitory. (*See* Dep. Riordan, p. 111, ln. 22 to p. 112 ln. 6; Deposition of Diane Heffernan ("Dep. Heffernan"), attached as **Exhibit C** to Supp. Aff. Klehm, at p. 84, ln. 22-24; p. 86, ln. 18 to p. 87, ln. 2).

**Plaintiff's Additional Fact No. 7**

At Godette's dormitory, Anderson, Heffernan and Rogers went upstairs to Godette's room. (Dep. Heffernan, p. 86, ln. 18 to p. 87, ln. 2). They knocked on Godette's door, but no one responded, and they called his room, but no one answered. (Dep. Heffernan, p. 87, ln. 3-8).

---

[1] At his deposition, when asked if any portion of the document was inaccurate, Mayrose testified, "I think my reference to checking a student's class schedule, if I had to rewrite this, would be to say, to verify that the student was in a particular place at a particular time, as opposed to simply just checking a schedule." (Dep. Mayrose, at p. 96, ln. 6-12). He did not believe any other portion of the memorandum to be inaccurate. (*Id*. at p. 96, ln. 13-16; see p. 102, ln. 14-19).

**Plaintiff's Additional Fact No. 8**

Anderson and Heffernan then went to wait in Anderson's cruiser, while Rogers waited inside the lobby of the dormitory. (Dep. Heffernan, p. 87, ln. 12-18).

**Plaintiff's Additional Fact No. 9**

Riordan had traveled with the remaining North Andover officers (Defendants Daniel Cronin, Richard Stanley and Paul Gallagher) to the gymnasium in order to look for Godette, but Godette was not there. (Dep. Riordan, p. 112, ln. 7-9; p. 113, ln. 21-23; p.114 ln. 2-4).

**Plaintiff's Additional Fact No. 10**

Riordan, Cronin, Stanley and Gallagher then proceeded directly to Godette's dormitory. (Dep. Riordan, p. 114, ln. 7-9; p. 114 ln. 21 to p. 115 ln. 1).

**Plaintiff's Additional Fact No. 11**

Rogers radioed Anderson and Heffernan, who were sitting outside the dormitory in Anderson's marked cruiser, that Godette was coming through the lobby before his arrest. (Dep. Heffernan, p. 87, ln. 24 to p. 88 ln. 4; Dep. Riordan, p. 115, ln. 2-9).

**Plaintiff's Additional Fact No. 12**

Riordan next recalls Heffernan and Godette in the foyer of the dormitory. (Dep. Riordan, p.116, ln. 9-11).

**Plaintiff's Additional Fact No. 13**

Anderson, Riordan, Mayrose, Cronin, Heffernan, and, possibly, Rogers, were in the area at the time of Godette's arrest. (Dep. Riordan, p.117, ln. 2-6; Dep. Heffernan, 92, ln. 12-14).

**Plaintiff's Additional Fact No. 14**

Riordan was situated ten to twelve feet from Heffernan and Godette before Heffernan brought Godette upstairs. (Dep. Riordan, p. 120, ln. 16 to p. 121, ln. 3).

**Plaintiff's Additional Fact No. 15**

After Godette's arrest, Heffernan and Cronin took Godette upstairs to his room, followed by Anderson, Gallagher, Stanley and Mayrose. (Dep. Heffernan, p. 94, ln. 10-23). Riordan also went upstairs. (Dep. Riordan, p. 124, ln. 13-22).

                                                Plaintiff
                                                Brett S. Godette
                                                By his Attorneys,

                                                */s/ Paul J. Klehm*
                                                James B. Krasnoo (BBO#279300)
                                                *james@krasnooklehm.com*
                                                Paul J. Klehm (BBO#561605)
                                                *pklehm@krasnooklehm.com*
                                                Benjamin L. Falkner (BBO#667951)
                                                *bfalkner@krasnooklehm.com*
                                                Krasnoo | Klehm LLP
                                                23 Main Street, Suite 6
                                                Andover, MA 01810
                                                (978) 475-9955

Dated: May 3, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record via ECF on May 3, 2007.

                                                */s/ Paul J. Klehm*
                                                Paul J. Klehm