UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRETT S. GODETTE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 05-11354-JLT |
| RICHARD STANLEY, DIANE HEFFERNAN, DANIEL CRONIN, and PAUL GALLAGHER, Individually and as Police Officers of their Respective Municipalities, the TOWN OF NORTH ANDOVER, MICHAEL RIORDAN and MERRIMACK COLLEGE, | * | |
| Defendants. | * | |

MEMORANDUM

May 16, 2007

TAURO, J.

Plaintiff Brett Godette brings this civil action against Defendants,[1] alleging that they violated certain of his constitutional rights and committed torts against him in their investigation of a bank robbery in North Andover, Massachusetts. Presently at issue are Defendants' motions for summary judgment.

**Background**

On March 26, 2003, at approximately 11:30 a.m., an armed robbery occurred at the Sovereign Bank in North Andover, Massachusetts. Shortly thereafter, the North Andover Police

---

[1] Defendants are Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, the Town of North Andover, Michael Riordan and Merrimack College.

1

Department ("NAPD") issued a be-on-the-lookout message ("BOLO") to surrounding towns and communities for a Hispanic male, in his twenties, 5' 09", wearing a white hat with a do-rag underneath, and a gray shirt with dark sleeves and a 'RW' on the chest.[2] The BOLO also stated the police were looking for a car with Massachusetts Registration 9096Z8.[3]

Lt. Michael Riordan of the Merrimack College Police Services, having received the BOLO, contacted the NAPD via telephone and told them that he had seen Plaintiff earlier in the day, and that he was wearing the same clothes as the suspected robber.[4] Officer Rogers, another member of the Merrimack College Police Services, had also seen Plaintiff earlier in the day and agreed with Riordan that there were similarities in the description of the suspect from the BOLO and the Plaintiff.[5] According to the Police Report filed by NAPD Detective Heffernan, "[Lt. Riordan] informed us that the suspected robber matched the description of another student and both he and another Merrimack College detective observed this subject wearing the same clothing today."[6] Riordan also informed the NAPD that the license plate number from the BOLO matched a car registered to a Merrimack college student.[7]

---

[2] Aff. of Paul J. Klehm, Esq., Ex. D, CJIS Display.

[3] Id.

[4] Pl.'s Verified Compl. ¶29, p.7. In his March 26, 2003, report, Lt. Riordan recalls that Plaintiff was wearing a "dew-rag" [sic] and a "baggy grey sweatshirt." Statement of Material Facts L.R. 56.1 by Town of North Andover, Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher. Ex. A, March 26, 2003, Report of Michael Riordan.

[5] Aff. of Paul J. Klehm, Esq., Ex. C, Riordan Statement.

[6] Defs.' Statements of Undisputed Facts, Ex. F, Incident Report p.2.

[7] Pl. Brett S. Godette's Resp. to Defs.', Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher and Town of North Andover's L.R. 56.1 Statement of Undisputed Facts and Pl.'s Concise Statement of Further Material Facts (hereinafter Pl.'s Statement of Further Material

Detective Heffernan, Police Chief Stanley, Lt. Gallagher and Detective Cronin, of the NAPD then met with Riordan and Officer Rogers.[8]  At the meeting, Riordan told the officers that the car was registered to a Merrimack student who was a commuter at the school, but that the car was not connected to the Plaintiff.  Riordan then showed the NAPD members a photograph of the owner of the vehicle and a photograph of Plaintiff, whom Riordan believed to be the suspect.[9]  The officers then compared Plaintiff's Merrimack College identification card with surveillance photographs of the suspected bank robber.  Believing that Plaintiff's photograph and the suspect in the surveillance photographs "looked alike," the NAPD officers then split up and began searching for the Plaintiff.[10]

When the officers found Plaintiff on campus, they handcuffed and arrested him, in view of onlookers.  Plaintiff alleges that the officers used excessive force by handcuffing him and violently pushing him against a wall.[11]  The police officers then proceeded to search Plaintiff's dormitory room with Plaintiff's consent.  Plaintiff now alleges this consent was coerced.  A search of the Plaintiff and his dormitory room yielded no clues on the robbery.

As a result of his arrest and detention, Plaintiff asserts that he suffered severe emotional distress, physical and mental suffering, shame, humiliation and other damages.

---

Facts) p.6-7.

[8] Id. 7-8.

[9] Id.

[10] Pl.'s Statement of Further Material Facts p.8;  Defs.' Statements of Undisputed Facts, Ex. F, Incident Report.

[11] Pl.'s Verified Compl. ¶29.

**Discussion**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[12]  In reviewing a motion for summary judgment, the court construes the record in the light most favorable to the non-moving party and makes all reasonable inferences in that party's favor.[13]  But the court need not credit conclusory allegations, improbable inferences or unsupported speculation.[14]

    A.    COUNT I - § 1983 CLAIMS AGAINST STANLEY, GALLAGHER, CRONIN AND HEFFERNAN.

Plaintiff alleges that Defendant officers violated his civil rights by detaining and handcuffing him, using excessive force, searching his dormitory room and discriminating against him on the basis of his race.

After a review of the record, and oral arguments at a May 10, 2007, motion hearing, this court concludes that North Andover Police Officers Stanley, Heffernan, Cronin and Gallagher committed no constitutional violations in their arrest and detention of Plaintiff.

The core issue underlying this case is whether the police officers who arrested Plaintiff did so with probable cause.  In determining whether an arrest was supported by probable cause, this

---

[12] Fed. R. Civ. P. 56(c).

[13] Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006).

[14] Id. (citing Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)).

court considers the totality of the circumstances.[15]  Probable cause is a relatively low standard for police officers to meet.[16]  To do so the government must establish that at the time of the arrest, the facts and circumstances known to the arresting officers were such that a reasonable person would believe that the individual had committed or was committing a crime.[17]  For probable cause to be present, there must be a "reasonable likelihood" or "reasonable belief" that the suspect was engaging in criminal activity.[18]

Here, the Defendants have supplied sufficient evidence that probable cause was present. [19] Plaintiff was not the bank robber.  And Plaintiff is not Hispanic, but African-American.  Nonetheless, the responding NAPD officers reasonably relied on Riordan's identification of the Plaintiff as the suspect.  Given the totality of circumstances, the similarity in clothing between the suspect and the Plaintiff, the comparison of the photographs,[20] and the purported getaway car being registered to a Merrimack student, the police officers had probable cause to arrest the

---

[15] United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000).

[16] Sietins v. Joseph, 238 F. Supp. 2d 366, 375 (D. Mass. 2003) (quoting White v. Town of Marblehead, 989 F.Supp. 345, 349 (D. Mass.1997)).

[17] Id. (citing United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir.1994).

[18] Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003) ("[T]he mercurial phrase 'probable cause' means a reasonable likelihood.") (citing Illinois v. Gates, 462 U.S. 213, 235 (1983)); Reyes, 225 F.3d at 75 ("[probable cause] does not require the government to present evidence sufficient to convict the individual, but merely enough to warrant a reasonable belief that he was engaging in criminal activity.").

[19] Id.

[20] The court has reviewed the photographs and while much of the bank robber's face is obscured, the appearance of the robber in the photographs is not inconsistent with the appearance of the plaintiff.  There are sufficient limited similarities between the surveillance photographs and the photograph of the Plaintiff such that a comparison of them supports rather than undermines a finding of probable cause.

Plaintiff.[21]  And where probable cause to arrest exists, no constitutional deprivation occurs.[22]

Excessive Force

Plaintiff alleges that the Defendant officers used excessive force by pushing him against a wall and handcuffing him.  A police officer may use such force as is reasonably necessary to arrest a suspect.[23]  The amount of force the arresting officer may use depends on the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether the suspect is actively resisting arrest.[24]  And, as the Supreme Court has noted,

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.[25]

A court may impose liability for the use of excessive force even in the absence of a serious

---

[21] See LaFrenier v. Kinirey, No. 04-40114-FDS, 2007 WL 841395, at *13 (D. Mass. Mar. 20, 2007) ("If the police had sufficient information to constitute probable cause to believe, and did believe, that a person had committed a felony . . . they had the right to arrest him without a warrant.").

[22] Sietins v. Joseph, 238 F. Supp. 2d 366, 375 (D. Mass. 2003).

[23] United States. v. McQueeney, 674 F.2d 109, 113 (1st Cir. 1982); See also Graham v. Connor, 490 U.S. 386, 396 (1989) ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

[24]  Sietins, 238 F. Supp. 2d at 376 (quotations omitted).

[25] Graham, 490 U.S. at 397 (citations and quotations omitted).

injury.[26] But in order to prevail on a claim of excessive force, the plaintiff must "demonstrate that the police defendant's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting him and without regard to his underlying intent or motivation."[27]

Even with all reasonable inferences in his favor, Plaintiff can not make this showing. At the time of the arrest, the police were in pursuit of an armed suspect who had just robbed a bank. It was objectively reasonable for the arresting officers to push Plaintiff, then a suspect, against the wall and handcuff him to effectuate the arrest. There was no constitutional deprivation.[28]

Dormitory Room Search

Plaintiff further alleges that Defendant police officers violated his civil rights by "searching his dormitory room without his consent."[29] At oral arguments, Plaintiff's counsel conceded that Plaintiff told the arresting officers that they could search his room. Plaintiff asserts that this consent was not voluntary and was granted under duress.

"[A] warrantless search authorized by consent is constitutionally permissible."[30] But whether this consent to search was voluntarily given depends on an assessment of the totality of

---

[26] Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002).

[27] Id.

[28] See Calvi v. Knox County, 470 F.3d 422 (1st Cir. 2006) (upholding district court's grant of summary judgment of excessive force claim where police officer handcuffed plaintiff); Jackson v. City of Bremerton, 268 F.3d 646 (9th Cir. 2001) (finding that police did not use excessive force in arrest of citizen where officer allegedly pushed suspect to the ground and kneeled on her back after suspect informed police of her preexisting back and shoulder injuries).

[29] Pl.'s Verified Compl. ¶ 57.

[30] Crooker v. Van Higgins, 682 F.Supp. 1274, 1282 (D. Mass.1988); See also Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).

the circumstances.[31]  To be voluntary, consent must be the product of an essentially free and unconstrained choice.[32]

Upon review of the record, this court concludes that Plaintiff's oral consent was voluntary.  At her deposition, Detective Heffernan recalled that Plaintiff gave permission to search.  "So [Plaintiff] said 'Okay.  Fine.  Go ahead and do whatever you want.'  So we went up and searched his room."[33]  And at his deposition, when asked whether he gave consent for the police to search his dorm room, Plaintiff said the following, "An officer said, 'If you've got nothing to hide, you'll let us in your room.'"[34]  "I was really embarrassed, so, you know, to minimize my embarrassment, I said 'Fine, we can go to the dorm room.'"[35]

There is little doubt that Plaintiff was indeed embarrassed by his arrest.  But, this embarrassment did not subjugate his capacity to make a free and unconstrained choice.[36]  The consent to search was valid and no constitutional violation occurred.

---

[31] United States v. Barnett, 989 F.2d 546, 554-55 (1st Cir. 1993) (citing United States v. Mendenhall, 446 U.S. 544, 557 (1980)).

[32] United States v. Stierhoff, 477 F. Supp. 2d 423, 432 (D.R.I. 2007) (citing Shneckloth, 412 U.S. at 225).

[33] Aff. of Paul J. Klehm, Esq., Ex. F, Heffernan Dep. 115:24-116:1-2, Feb. 27, 2007.

[34] Aff. of Paul J. Klehm, Esq., Ex. B, Godette Dep. 107:7-8.

[35] Aff. of Paul J. Klehm, Esq., Ex. B, Godette Dep. 81:7-10.

[36] The court also notes in the alternative that the officers would receive qualified immunity for conducting the search as Plaintiff does not allege facts from which the court can reasonably infer that the arresting officers would have known that the consent to search Plaintiff's dormitory room was involuntary.  See Elnashar v. United States Dep't of Justice, No. 03-5110, 2004 WL 2237059, at *4 (D. Minn. Sept. 30, 2004).

Racial Discrimination

Plaintiff's claim of racial discrimination also fails as the arrest was made with probable cause and Plaintiff provides no evidence of discriminatory animus by the arresting officers.

Even with all reasonable inferences in his favor, Plaintiff has not alleged facts to support a § 1983 claim. Accordingly, summary judgment as to Count I of the Complaint is ALLOWED.

> B.  COUNT II - CONSPIRACY TO VIOLATE CIVIL RIGHTS LAWS PURSUANT TO 42 U.S.C. § 1985 AGAINST STANLEY, HEFFERNAN, GALLAGHER, CRONIN AND RIORDAN.

As discussed in open court, Plaintiff agrees not to oppose summary judgment on the § 1985 claim. Summary Judgment, therefore, is ALLOWED as to Count II of the Complaint.

> C.  COUNT III - VIOLATION OF CIVIL RIGHTS LAWS PURSUANT TO 42 U.S.C. § 1983 AGAINST THE TOWN OF NORTH ANDOVER.

Where no constitutional violation occurred, a municipality cannot be held liable under § 1983.[37] Having previously concluded that the police officers acted with probable cause, and without excessive force, this court rules that summary judgment is ALLOWED as to Count III.

> D.  COUNT V - STATE CIVIL RIGHTS ACT CLAIMS AGAINST STANLEY, GALLAGHER, CRONIN, HEFFERNAN AND MERRIMACK COLLEGE.

In Count V, Plaintiff alleges that the North Andover Police Officers violated the Massachusetts Civil Rights Act, Mass. Gen. Laws ch.12, §§ 11H and 11I ("MCRA"). The

---

[37] City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Evans v. Avery, 100 F.3d 1033, 1039 (1st Cir. 1996) ("[T]he fact that [the police officers] did not violate [plaintiff's] constitutional rights means that the City is not liable to her under section 1983."); Jonielunas v. City of Worcester Police Dep't, 338 F. Supp. 2d 173, 179 (D. Mass. 2004).

MCRA is coextensive with 42 U.S.C. § 1983, although it does not require a State action.[38]

Plaintiff's MCRA claim fails for the same reason that his § 1983 claim fails–because Plaintiff suffered no civil rights violation.[39] It was unfortunate that the police officers mistakenly thought Plaintiff was the bank robbery perpetrator. But, the officers had probable cause to arrest Plaintiff, and this arrest did not result in a violation of Plaintiff's civil rights.[40] As a result, summary judgment shall enter on Count V.

      E.      COUNT VI - CONSPIRACY TO VIOLATE STATE CIVIL RIGHTS ACT CLAIMS AGAINST STANLEY, GALLAGHER, CRONIN, HEFFERNAN AND RIORDAN.

Plaintiff alleges that Defendant police officers conspired to violate his State Civil Rights. Having found no MCRA violation, the court further finds no evidence in the record to indicate that the Defendant officers formed an agreement with the purpose of violating Plaintiff's MCRA rights. This count does not survive summary judgment.

      F.      COUNT VIII - FALSE IMPRISONMENT

Mass. Gen. L. ch 231, § 94A provides that "[i]f a person authorized to make an arrest shall have probable cause to believe that a misdemeanor for which he may make an arrest is being

---

[38] Sietins, 238 F. Supp. 2d at 377-78 (internal quotations omitted).

[39] See Scott v. Macy's East, Inc., No. 01-10323, 2002 WL 31439745, at *10 (D. Mass. Oct. 31, 2002 ) ("What thwarts Scott's MCRA claims against both the Macy's and Braintree Defendants, however, is the absence of any underlying civil rights violation.").

[40] See DeToledo v. County of Suffolk, 379 F. Supp. 2d 138, 144 (D. Mass. 2005) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released.").

committed in his presence, such probable cause shall be a defence [sic] in an action brought against him for false arrest or imprisonment." Although the language of this statute refers to misdemeanors, logic dictates that it extends to felonies as well. Because Defendants had probable cause to arrest Plaintiff, Plaintiff's detention was lawful, and the false imprisonment claim fails as a matter of law.

### G. COUNT IX - ASSAULT AND BATTERY CLAIM AGAINST STANLEY, GALLAGHER, CRONIN, HEFFERNAN AND MERRIMACK.

An officer authorized to conduct an arrest may use such force as is reasonably necessary to carry out the arrest.[41] "In the context of an arrest, 'the standard for determining whether force is reasonable for assault and battery claims is 'essentially the same' as the standard for determining if force is reasonable for Fourth Amendment excessive force claims.'"[42] Having already made the determination that the police officers did not use excessive force in their arrest of Plaintiff, this court now applies the same standard to the assault and battery claims. The end result is the same. Summary judgment as to Count IX is ALLOWED.[43]

---

[41] LaFrenier v. Kinirey, No. 04-40114-FDS, 2007 WL 841395, at *12 (D. Mass. Mar. 20, 2007) (quoting Julian v. Randazzo, 403 N.E.2d 931, 934 (1980)).

[42] Brisson v. City of New Bedford, No. 03-12249-DPW, 2005 WL 2862227, at *10 (D. Mass. Oct. 31, 2005) (quoting Sietins, 238 F. Supp. 2d at 380).

[43] Defendants Riordan and Merrimack College alternatively move for summary judgment on the grounds that they never physically touched Plaintiff and therefore cannot possibly have committed assault and battery. Because this court has allowed summary judgment on other grounds it need not address this argument.

H.   COUNT X - INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST ALL DEFENDANTS.

Next, Plaintiff asserts a claim of intentional infliction of emotional distress ("IIED") against all Defendants.  For an IIED claim to succeed, defendants' conduct must be "so abhorrent that a civilized community simply cannot tolerate it."[44]  Plaintiff's arrest was lawful and made with probable cause and without excessive force.  Even taking all of Plaintiff's allegations as true, Defendants' acts do not rise to the level of "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community" conduct required to support a finding of IIED.[45]

Even if the arrest was made without probable cause, Plaintiff's IIED claim would still fail because the facts as alleged are not sufficiently outrageous to support such a cause of action.  The case of Wagenmann v. Adams, upon which Plaintiff relies for the proposition that a person arrested without probable cause can recover for intentional infliction of emotional distress is easily distinguishable.  There, the police engaged in a conspiracy to falsely arrest an innocent man on the eve of his daughter's wedding and then made false statements to the court that resulted in the man being wrongly committed to a mental institution.[46]  Such facts are inapposite to those of this case.  Summary Judgment is ALLOWED as to Plaintiff's claim of intentional infliction of emotional distress.

---

[44] Wagenmann v. Adams, 829 F.2d 196, 214 (1st Cir. 1987).

[45] See Davignon v. Clemmey 322 F.3d 1, 8 n.2 (1st Cir. 2003) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976)).

[46] Adams, 829 F.2d 196; Wagenmann v. Pozzi, No. 79-1658-F, 1986 WL 715, at *1 (D. Mass. Jan. 7, 1986).

Plaintiff also advances a claim of negligent infliction of emotional distress ("NIED") against all Defendants. The elements of NIED under Massachusetts law are: "1) negligence; 2) emotional distress; 3) causation; 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances of the case."[47] The scope of physical harm required to sustain a negligent infliction of emotional distress claim has "expanded [to a] range of symptoms that may provide the type of objective evidence to prove physical harm [including] symptoms that could be classified as more 'mental' than 'physical.'"[48] Despite the expanded scope of the physical harm requirement, a "successful negligent infliction of emotional distress claim . . . must do more than allege 'mere upset, dismay, humiliation, grief and anger.'"[49] In order to survive summary judgment, a plaintiff must corroborate his claims of mental distress with sufficient objective evidence of harm.[50]

Here, Plaintiff asserts that Defendants' negligence resulted in his "severe emotional distress," and "physical and mental suffering."[51] Specifically, Plaintiff alleges that he "felt betrayed, embarrassed and depressed," and that he spoke with a counselor at Merrimack College about the trauma and humiliation he suffered.[52] In support of his NIED claim, Plaintiff further asserts that he:

---

[47] Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982).

[48] Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 566 (Mass. 2002).

[49] Sullivan v. Boston Gas Co., 605 N.E.2d 805, 809 (Mass. 1993).

[50] Gutierrez, 772 N.E.2d at 566.

[51] Pl.'s Concise Statement of Further Material Facts ¶¶ 48-49, p.23-24.

[52] Id.

> suffered direct physical harm; he suffered marks on his wrists for days from the handcuffs. He was pushed up against a wall and wrongly and harshly touched.  He had his body physically felt by intrusive and unwanted touchings which caused his pants to come down. This is direct physical injury.[53]

Plaintiff's allegations of physical injury from the underlying incident go to his assault and battery claim (see Count IX), but they do not support his NIED claim.  NIED requires the defendant's negligence to cause "sufficient objective evidence of physical manifestation of mental distress."[54] Here, Plaintiff alleges physical injury stemming from the underlying incident itself, but has not produced sufficient evidence of physical manifestations of his emotional distress.

In Sullivan v. Boston Gas Co., the Supreme Judicial Court of Massachusetts concluded that the diarrhea, headaches, sleeplessness and depression that a plaintiff suffered for a year after a traumatic incident was physical harm resulting from emotional distress, and along with an affidavit from a doctor diagnosing the plaintiff as having symptoms consistent with post-traumatic stress syndrome, was sufficient to support a NIED claim.[55]  And in Rodriguez v. Cambridge Housing Authority, the Supreme Judicial Court of Massachusetts found that a plaintiff had sufficiently alleged a claim of NIED, where following a traumatic event, a doctor diagnosed plaintiff as having an increase in posttraumatic stress disorder, nightmares, insomnia, and dissociative episodes.[56]

---

[53] Pl.'s Mem of Law in Opp. to Mot. of Defs. Merrimack College and Michael Riordan for Partial Summ. J. on Counts II, V, VI, VIII, IX, and X.

[54]  Sullivan, 605 N.E.2d at 810.

[55] Id. at 809-10.

[56] Rodriguez v. Cambridge Hous. Auth., 823 N.E.2d 1249, 1255 (Mass. 2005).  The court also noted that without evidence of plaintiff's medical treatment, such as the testimony of the

But in Papasodero v. Thayer & Assoc., a court allowed summary judgment on a NIED claim where plaintiffs alleged that they suffered "great, extreme and severe distress of mind," but failed to cite a particular date or time that they suffered these symptoms, or to corroborate their allegations with any medical testimony.[57]

And in Pasquale v. Reading Mun. Light Dep't, a court also dismissed a NIED claim for "want of sufficient evidence of objective physical manifestation" where plaintiffs failed to cite dates on which they suffered from their alleged feelings of anxiety, nor did they offer any medical testimony to corroborate their allegations.[58]

This case is more like Papasodero and Pasquale than Sullivan. Plaintiff fails to identify the dates, times, and duration of his mental distress. Plaintiff asserts that he spoke with a counselor about the incident, but does not detail whether this was a single visit or a course of treatment. Most importantly, Plaintiff fails to offer any medical testimony to support his claim. Plaintiff has submitted no affidavits from physicians or counselors who attest to the severity of his mental distress. Plaintiff asserts that the incident made him feel depressed, but he does not provide any evidence as to the extent of these feelings, nor any evidence that he was actually diagnosed with

---

doctor, there would have been "insufficient objective evidence of the physical manifestations of [plaintiff's] emotional distress." Id. at n. 8.

[57] Papasodero v. Thayer & Assoc., 14 Mass. L. Rptr. 684 (Mass. Super. Ct. 2002). The court also noted that although a medical expert's testimony is not necessary to establish claims for emotional distress, Plaintiff must still provide sufficient evidence to support his claim of harm. But cf. Sullivan, 605 N.E.2d at 810 ("[P]laintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial. Expert medical testimony may be needed to make this showing.").

[58] Pasquale v. Reading Mun. Light Dep't, 18 Mass. L. Rptr. 370 (Mass. Super. Ct. 2004).

depression. Even with all reasonable inferences in his favor, Plaintiff's allegations that he felt depressed and that he spoke with a Merrimack College counselor are insufficient objective evidence of harm. Summary judgment as to Plaintiff's claim of negligent infliction of emotional distress is ALLOWED.

In the alternative, summary judgment as to the NIED claim against officers Stanley, Heffernan, Cronin, and Gallagher is ALLOWED because the officers acted with probable cause, and were therefore not negligent in their arrest of Plaintiff.

**Conclusion**

For these reasons, Defendants, Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher, and the Town of North Andover's Motion for Summary Judgment [#62], and Defendants Merrimack College and Michael Riordan's Cross-Motion for Summary Judgment [#77] are ALLOWED.

As no counts remain against Defendants Stanley, Heffernan, Cronin, Gallagher, or the Town of North Andover, they are dismissed from this case. Defendants Merrimack College and Michael Riordan have not moved for summary judgment on Count XI (negligence), Count XII (M.G.L. c. 214 §1B), Count XIII (breach of contract) or Count XIV (breach of covenant of good faith and fair dealing) and this court is unwilling to address these claims sua sponte. These pending claims will be discussed at a further conference and this court may accept further briefing on these counts.

AN ORDER WILL ISSUE.

    /s/ Joseph L. Tauro
United States District Judge