UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRETT S. GODETTE,<br>  Plaintiff,<br><br>v.<br><br>RICHARD STANLEY, *et. al.*,<br>  Defendants. | )<br>)<br>)<br>)  Civil Action No. 05-11354JLT<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF BRETT S. GODETTE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER THIS COURT'S ORDER AND MEMORANDUM DATED MAY 16, 2007 [DOC. NOS. 98, 99] ALLOWING SUMMARY JUDGMENT IN FAVOR OF THE NORTH ANDOVER DEFENDANTS ON ALL COUNTS AND IN FAVOR OF THE MERRIMACK COLLEGE DEFENDANTS ON COUNTS V, VI, VIII, IX AND X**

  Plaintiff Brett S. Godette (hereinafter "Godette") hereby submits the within memorandum of law in support of his motion for this Court to reconsider its Order and Memorandum dated May 16, 2007 [Doc. Nos. 98, 99] allowing summary judgment in favor of the North Andover Defendants[1] on all counts and in favor of the Merrimack College Defendants[2] on Counts V, VI, VIII, IX and X (the "Five Counts"). Godette respectfully requests that this Court reconsider of the granting of summary judgment as to the Five Counts, all of which arise under Massachusetts law, and deny the North Andover Defendants' and the Merrimack College Defendants' respective motions for summary judgment on the Five Counts.

  **A.  This Court Should Reconsider Its Grant Of Summary Judgment On The Five Counts In Light Of The More Stringent Standard For Probable Cause Under State Law.**

  In his opposition to summary judgment, Godette argued that, even if this Court found probable cause to arrest him under the Fourth Amendment, there was no probable cause to arrest him under state law. [Doc. No. 90, pp. 5-7]. Indeed, Article 14 of the Massachusetts Declaration

---

[1] Richard Stanley, Diane Heffernan, Daniel Cronin, Paul Gallagher and the Town of North Andover.
[2] Merrimack College and Michael Riordan.

of Rights, and state statutory and common law, provide more substantive protection than does the Fourth Amendment. *Commonwealth v. Upton*, 394 Mass. 363, 373-375 (1985); *Commonwealth v. Stoute*, 422 Mass. 782, 784-789 (1996).

Nonetheless, in its memorandum, this Court found that "[t]he MCRA is coextensive with 42 U.S.C. § 1983, although it does not require a State action." [Doc. No. 98, pp. 9-10]. The Court did not analyze whether Godette suffered a violation of his secured rights under the Massachusetts constitution or state law. While the general rule is that the MCRA is coextensive with §1983, the MCRA, unlike §1983, provides a remedy for violations of state constitutional violations. *See* G.L. c. 12, §§11H, 11I, protecting:

> "... the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the **constitution or laws of the commonwealth** ..."

G.L. c. 12, §11H (emphasis added). In Massachusetts, probable cause requires both a basis of knowledge and veracity. *See Commonwealth v. Upton*, 394 Mass. 363, 373-375 (1985) (in determination of probable cause – rejecting *Gates*[3] in favor of *Aguilar-Spinelli*[4] – probable cause requires basis of knowledge *and* veracity of informant).

This Court, applying the *Gates* test, found that, given the "*totality of the circumstances*," the North Andover police could rely upon Riordan's identification of Godette as the robber. [Doc. No. 98, pp.5-6] (emphasis added). Under *Aguilar-Spinelli*, the North Andover police were not free to credit Riordan's identification of the robber.

In order to satisfy the basis of knowledge prong of *Aguilar-Spinelli*, the information provided to the police must be detailed, either as to the criminal activity observed or as to the

---

[3] *Illinois v. Gates*, 462 U.S. 213 (1983) (rejecting *Aguilar-Spinelli*, and holding that probable cause depends upon the totality of the circumstances).
[4] *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969) (collectively holding that probable cause based upon information from an informant requires that the informant demonstrates both a basis of knowledge and veracity).

2

process by which the content was obtained, such that it can rise above "the level of a casual rumor or a mere reflection of the reputation of the supposed actor." *Commonwealth v. Kaufman*, 381 Mass. 301, 302-303 (1980). In *Kaufman*, an informant told police that Kaufman "was dealing in the Amherst area with large quantities of marihuana and cocaine." *Id.*, at 302. A second person told police that Kaufman was moving marihuana and cocaine between the Amherst area and Vermont and that Kaufman used the name "Stephen Plumb." *Id.* Police independently corroborated that Kaufman used the name Plumb and maintained more than one residence. *Id.*, at 304. Police also independently learned (1) that Kaufman associated with known drug traffickers, (2) that Kaufman kept "large amounts of cash and drugs" at his address, and (3) that on the day officers executed the search warrant, an officer observed a man "carrying into the target premises several plastic bags allegedly 'consistent' in size and shape with bags commonly used to transport large amounts of marihuana." *Id.*, at 304. The Court held that the tips did not satisfy *Aguilar-Spinelli*, where the informants' tips were barren of any detailed evidence of criminality. *Id.*, at 303. The corroborative investigation was itself insufficient. *Id.*, at 304.

Even assuming, without conceding, Riordan's veracity, Riordan demonstrated to the North Andover police no basis of knowledge for his "identification" of Godette as the bank robber, where Riordan did not observe Godette engaged in *any* criminal activity. Riordan neither possessed nor communicated to the North Andover police any information connecting Godette to the bank that had been robbed. Further, Riordan neither possessed nor communicated any information connecting Godette to the car that Heffernan observed near the bank. Moreover, there were contradictions between Godette's appearance, as observed by Riordan, and the CJIS

3

description (the computer printout sent by the police, *see* **Exhibit D** to Affidavit of Paul J. Klehm, Esq. [Doc. No. 81]) from which Riordan "identified" Godette:

> The CJIS received by Riordan indicated that the sweatshirt had dark sleeves and "RW" on the chest. In contrast, Godette wore a blue "doo-rag" (although he had taken it off before his 11:00 a.m. class) and a gray Merrimack Basketball fleece jacket. Godette's fleece had the writing "Merrimack College" and a basketball on it. The CJIS did not include photographs.

(*See* [Doc. No. 79], Response No. 5, at pp. 5-6 (citations omitted)). Riordan was not even sure at what time of day he had seen Godette. *Id.* Nonetheless, at the only time Riordan did observe Godette (before Godette's arrest) on March 26, 2003, Godette was engaged in lawful and entirely innocent behavior – leaving a class at Merrimack College, far away from the vicinity of the robbed bank. Finally, the first-hand witness to the crime, the bank teller, identified the suspect as a *white* man,[5] yet Riordan "identified" Godette, an African-American, to the North Andover police as *the suspect* based upon the vague description of an Hispanic male contained in the CJIS. As in *Kaufman*, Riordan's identification of Godette lacked the detail connecting Godette to any criminal activity which would "raise [Riordan's identification] above the level of a casual rumor or a mere reflection of the reputation of [Godette]." *See Kaufman*, 381 Mass. at 303. Moreover, no corroboration was performed by Merrimack College or the North Andover police that turned up any facts linking Godette to the robbery. *See Kaufman*, *supra*.

In *Commonwealth v. Stoute*, 422 Mass. 782, 783 (1996), police, on patrol in a cruiser, observed two young men on bicycles passing a group of young people, mostly females, standing near a sandwich shop in an area with a "very high" rate of crime. One of the young women shouted to the police officers that one of the men on the bicycles had a gun. *Id.*, at 783-784. Police followed the bicycles, and, after searching one bicycle rider and determining that he did

---

[5] While police later concluded, based upon the photographs, that the robber was a "light-skinned Hispanic," there is no evidence that any witness to the bank robbery ever described the robber as anything other than white. No witness to the robbery ever identified the robber as an African-American.

4

not possess a weapon, followed the other rider who rode away at an increased speed. *Id.*, at 784. One officer recognized the second rider as someone who had always been cooperative with police. *Id.* When that officer asked the second rider to stop, the rider jumped off the bicycle and ran away. *Id.* While running from police, the second rider dropped a white bag, containing what police believed to be cocaine. *Id.* Applying Massachusetts law, the Court held that reasonable suspicion existed to stop the second rider based (1) the officers' personal knowledge that they were in a high crime area, where many crimes were committed with handguns, *id.*, at 790, (2) the information was provided by bystanders to the alleged crime, *id.*, at 790-791, (3) the lack of a weapon in the possession of the first rider, coupled with an opportunity for the first rider to hand the gun off to the second rider, *id.*, at 791, and (4) the second rider's flight upon hearing a request to stop. *Id.*

  Here, unlike in *Stoute*, there would be no reason for the North Andover police to infer that Godette had engaged in criminal activity from Riordan's description of Godette. Riordan did not observe Godette engaged in any unlawful activity nor did he observe Godette in the vicinity of the robbed bank. There is no evidence that Merrimack College is located in a high-crime area. Moreover, the first-hand witness to the crime, the bank teller, identified the suspect as a *white* man, yet Riordan identified an African-American, thus further marginalizing the validity of Riordan's identification. Finally, unlike in *Stoute*, there is no evidence that Godette failed to obey, or attempted to flee, from police when Heffernan ordered him to stop. Thus, the officers lacked even reasonable suspicion to detain Godette under Massachusetts law. Since the North Andover police lacked reasonable suspicion, the North Andover police could not rely upon Riordan's baseless "identification" of Godette as the robbery suspect to support probable cause to arrest him. In the absence of a reliable identification based upon Riordan's ascertainable

knowledge, under *Commonwealth v. Stoute*, 422 Mass. 782 (1996), *Commonwealth v. Claiborne*, 423 Mass. 275 (1996), *Commonwealth v. Williams*, 422 Mass. 111 (1996) and *Commonwealth v. Kaufman*, 381 Mass. 301 (1980), the Defendants fall far short of probable cause under Massachusetts law. (*See* discussion [Doc. No. 90, pp.5-7]).

During oral argument, the Court pointed to a potential arguable similarity between Godette and the pictures of the bank robber – Godette is a young man, and the pictures, in the Court's view, depict a young man. Assuming, *arguendo*, that this similarity gave rise to probable cause to arrest Godette, then probable cause existed to arrest almost any, and nearly every, male student on the Merrimack College campus. Likewise, the fact that Heffernan saw a car registered to a Merrimack College student near the bank failed to narrow the field of suspects beyond nearly every male Merrimack College student. Even under the more generous test of *Illinois v. Gates*, in order for the police to detain a suspect, the totality of the circumstances must give rise to *particularized suspicion* that the *particular person* arrested is or was engaged in wrongdoing. *See Gates*, 462 U.S. at 231; *United States v. Cortez*, 449 U.S. 411, 418 (1981). Here, the Defendants, at most, demonstrated that it was *possible* that a Merrimack College student was involved in the bank robbery. Only Riordan's baseless identification of a suspect of a different race from the bank robbery suspect pointed toward Godette as that particular suspect. As such, there was never even arguable probable cause to arrest Godette under Massachusetts law.

Where, under Massachusetts law, there was no probable cause to arrest Godette, the Court must deny the North Andover Defendants' and the Merrimack College Defendants' respective motions for summary judgment as to Count V (Civil Rights Violations Pursuant To M.G.L. c.12, §§11H and 11I) and Count VI (Common Law Conspiracy to Violate Civil Rights

Law Pursuant To M.G.L. c.12, §§11H and 11I).  Accordingly, the Court must also deny summary judgment as to Count VIII (False Imprisonment) and Count IX (Assault and Battery), as the Court dismissed those counts based upon a finding of probable cause.  Finally, to the extent that the Court entered summary judgment in favor of Defendants on the intentional infliction of emotional distress and negligent infliction of emotional distress claims (Count X) based upon a finding of probable cause, Godette respectfully requests that this Court reconsider its decision and deny Defendants' motion for summary judgment.

> **B.** **This Court Should Reconsider Its Grant Of Summary Judgment On Count X (Negligent Infliction Of Emotional Distress), Where Godette Did Attend Counseling, But The Merrimack College Records No Longer Exist, Through No Fault Of Godette.**

In the memorandum which awarded summary judgment in favor of all defendants on Count X, insofar as it states a claim for negligent infliction of emotional distress ("NIED"), the Court found, in essence, that Godette did not produce sufficient evidence of physical injury because, among other things, (1) Godette did not specify the extent of his visits to Merrimack College counseling services,[6] (2) Godette did not specify the dates and times of his visits, and (3) Godette failed to offer medical testimony on his own behalf.  [Doc. No. 98, at pp. 15-16].

Nonetheless, as Godette's counsel argued during oral argument, the Merrimack College counseling records no longer exist, through no fault of Godette.  The excerpt of Godette's deposition submitted in opposition to summary judgment refers to the non-existence of the records.  (*See* Affidavit of Paul J. Klehm, Esq. [Doc. No. 81], **Exhibit B**, p. 125).  In a letter dated August 17, 2006, Merrimack College noted that Merrimack College counselors maintain their own records and that the counselor who saw Godette informed Merrimack College that she

---

[6] Godette testified that he saw the counselor on one occasion.  (*See* Affidavit of Paul J. Klehm, Esq. [Doc. No. 81], **Exhibit B**, p. 125).

7

did not maintain such records upon leaving Merrimack College.  (*See* Affidavit of Paul J. Klehm, Esq., filed herewith, **Exhibit A**).

"[A] party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results."  *Keene v. Brigham and Women's Hosp., Inc.*, 439 Mass. 223, 234 (2003); s*ee also Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998) (trier of fact may infer from party's obliteration of a document related to a litigated issue the unfavorable nature of the lost or destroyed document).  Here, Merrimack College was negligent in failing to preserve the counseling records.  Moreover, where the counseling records are missing through no fault of Godette, this Court is permitted to draw the inference, and should draw the inference, that the Merrimack College records of Godette's visit to a Merrimack College counselor in the wake of his arrest would justify and provide support for his claim for negligent infliction of emotional distress.  Merrimack College should not be permitted to benefit from the absence of its own records or from failure to take steps to preserve the counseling records pertaining to Godette.  In order to remedy the unfair prejudice of the missing records, this Court should reinstate Count X, insofar as it states a claim for NIED, against Merrimack College.

**Conclusion**

For all the foregoing reasons, Godette respectfully requests that this Court reconsider its decision to grant summary judgment in favor of the North Andover Defendants and the Merrimack College Defendants on Counts V, VI, VIII, IX and X, and that this Court deny Defendants' motions for summary judgment as to those Counts.

Plaintiff
Brett S. Godette
By his Attorneys,

*/s/ Paul J. Klehm*
James B. Krasnoo (BBO#279300)
*james@krasnooklehm.com*
Paul J. Klehm (BBO#561605)
*pklehm@krasnooklehm.com*
Benjamin L. Falkner (BBO#667951)
*bfalkner@krasnooklehm.com*
Krasnoo | Klehm LLP
23 Main Street, Suite 6
Andover, MA 01810
(978) 475-9955

Dated: May 23, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney(s) of record via ECF on May 23, 2007.

*/s/ Paul J. Klehm*
Paul J. Klehm