UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRETT S. GODETTE )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>RICHARD STANLEY, DIANE HEFFERNAN, )<br>DANIEL CRONIN, and PAUL GALLAGHER, )<br>Individually and as Police Officers of )<br>their Respective Municipalities, the TOWN OF )<br>NORTH ANDOVER, MICHAEL )<br>RIORDAN and MERRIMACK COLLEGE )<br>  Defendants. )<br> ) | C.A. No. 05-11354 JLT |

## MOTION IN LIMINE OF MERRIMACK COLLEGE AND MICHAEL RIORDAN TO EXCLUDE FROM EVIDENCE WILLIAM MAYROSE'S APRIL 2003 MEMORANDUM AND ANY TESTIMONY CONCERING ITS CONTENTS

Defendants, Merrimack College and Michael Riordan ("Riordan") (collectively the "Merrimack College Defendants") submit this motion in limine to exclude from evidence a memorandum authored by William Mayrose more than two (2) weeks after Plaintiff's March 26, 2003 detention and which constitutes the Merrimack College campus safety department's remedial measures. In support of this motion, the Merrimack College Defendants state as follows:

### Factual Background

1. On March 26, 2003, several members of the North Andover Police Department ("NAPD") detained and questioned Plaintiff at this Merrimack College dormitory after Riordan provided the NAPD with information relevant to their investigation of an armed robbery which occurred that same day. Specifically, Riordan informed the NAPD by telephone that the car identified in a NAPD-issued be-on-the look-out ("BOLO") was registered to a Merrimack

College student and that he had seen Plaintiff earlier in the day wearing clothing similar to the suspect's.

2.      On April 11, 2003, William Mayrose, the then-chief of Merrimack College's campus safety department, drafted a memorandum concerning campus safety's post-incident analysis of the detention and questioning of Plaintiff (hereinafter the "Mayrose Memo"). The Mayrose Memo stated, in pertinent part:

> After the incident, I met with Chief Stanley and Lt. Gallagher of the North Andover Police Department. We all agreed that the student was subjected to a situation that could have been avoided with advance information about his 11:00 a.m. class. Chief Stanley has offered to apologize to the student and he has also had a conversation with President Santagati…it is still appropriate for us to review our role in the incident to see what can be learned. In the spirit of learning, and not criticism, it appears that the focus and course of the investigation would have been changed if the student's class schedule had been checked before searching for him on campus. Let's use this experience as a learning opportunity. Wherever possible, let's take a little more time to consider all possibilities before calling in a local law enforcement agency. When time allows, the officers involved should consult with me, or in my absence, the next highest ranking officer.

A true and accurate copy of the Mayrose Memo is attached hereto as Exhibit A and was previously filed on March 22, 2007 as Exhibit O to the Affidavit of Paul J. Klehm, Esq.

3.      Plaintiff initially asserted that the Merrimack College Defendants, as well as several members of the North Andover Police Department ("NAPD") and the Town of North Andover, violated his civil rights and committed false imprisonment, assault and battery, and intentional and negligent infliction of emotional distress when members of the NAPD questioned Plaintiff at his dormitory after Riordan provided the NAPD with information relevant to the NAPD's investigation of the armed bank robbery on March 26, 2003.

4.      On May 16, 2007, this Court granted summary judgment in favor of all of the

Defendants against whom these claims were asserted. In so ruling, the Court found that the "Plaintiff's detention was lawful" and that none of the Defendants violated Plaintiff's civil rights under federal or state law. See May 16, 2007 Order and Memorandum.

5.   The only claims which remain pending in this cause of action are negligence, breach of privacy pursuant to M.G.L. ch. 214 § 1B, breach of contract and breach of the implied covenant of good faith and fair dealing against Merrimack College and/or Riordan.

6.   Trial is set for June 11, 2007.

**Argument**

I.   **The Court should Exclude from Evidence the Mayrose Memo because it Constitutes Subsequent Remedial Measures Offered Only to Establish the Alleged Negligence of the Merrimack College Defendants.**

7.   Federal Rule of Evidence 407 provides:

> "When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct" in connection with the event.

N.H.R.EVI. 407.

8.   Rule 407's exclusion of subsequent remedial measures applies to post-incident policy changes and remedial steps taken by defendants, as well as internal documents memorializing these post-incident actions. Cameron v. Otto Bock Orthopedic Industry, Inc., 43 F.3d 14 (1st Cir. 1994)(letters by defendant-corporation sent to its customer's after plaintiff's injury and explaining proper installation of the product by which plaintiff was allegedly injured were safety measures undertaken after the accident inadmissible pursuant to Rule 407); In re Air Crash Disaster, 86 F.3d 498 (6th Cir. 1996)(internal memorandum written 2 months after air plane crash and identifying new policy that the defendant-corporation recommend certain safety

checks prior to takeoff was a subsequent remedial measure inadmissible pursuant to Rule 407); First Security Bank v. Union Pacific Railroad, 152 F.3d 877 (8th Cir. 1998)(internal memorandum drafted by defendant-corporation's superintendent of transportation after the accident which instructed employees to enforce a policy that discouraged the placement of railroad cars within a certain distance from the tracks was a subsequent remedial measure inadmissible pursuant to Rule 407 in a wrongful death case in which plaintiff alleged that the decedent collided with the train because the presence of railroad cars near the tracks obstructed her view); In re Consolidated Coal Co., 123 F.3d 126 (3d Cir. 1997)(safety memorandum prepared five days after the accident and recommending precautions to employees was a subsequent remedial measures inadmissible under Rule 407).

9.    This Court has recognized that evidence of post-incident policy changes, internal investigations, disciplinary proceedings, and admissions of errors in judgment, violations of policy or intentions to take disciplinary action, taken by police after an incident in which the police are alleged to have acted improperly constitute subsequent remedial measures inadmissible pursuant to Federal Rule of Evidence 407. See Gilanian v. City of Boston, et al., 431 F.Supp.2d 172, 177 (D.Mass. 2006)(citing with approval Specht v. Jensen, et al., 863 F.2d 700, 701 (10th Cir. 1988)(press release of police department concerning alleged illegal search of plaintiff's home and which stated that the officers involved in the search executed poor judgment, identified the mistakes of the officers, and relayed that the city would take appropriate disciplinary actions against the officers involved was properly excluded as setting forth subsequent remedial measures within the ambit of Rule 407) and Maddox v. City of Los Angeles, et al., 792 F.2d 1408, 1417 (9th Cir. 1986)(evidence of city's internal investigation of the death of a suspect and post-incident disciplinary proceedings of defendant-police officer in

which he admitted that he violated the city's policies were properly excluded as subsequent remedial measures pursuant to Rule 407)); see also Leura et al. v. Snyder, et al., 599 F.Supp. 1459 (D.C.Colo. 1984)(testimony of changes made in police department policies offered by the plaintiff was a subsequent remedial measure inadmissible pursuant to Rule 407).

10. Underlying the federal courts exclusion of evidence of police department's post-incident investigations, disciplinary proceedings, and policy changes is the same public policy furthered by excluding remedial measures taken by defendants after a slip and fall: if plaintiffs were permitted to use such evidence, remedial measures which benefit the public might be forgone by fear of the prejudicial effect of the evidence in a lawsuit. Leura, 599 F.Supp. at 1463. Potentially greater than in the case of a simple slip and fall are the repercussions of police departments foregoing post-incident internal investigations, policy changes, and/or disciplinary actions if evidence of such remedial action is admissible.

11. Consistent with federal precedent, the Mayrose Memo and the contents thereof are properly excluded as subsequent remedial measures pursuant to Rule 407.

12. Mayrose drafted the memorandum weeks after the incident. Similar to the testimony excluded in Maddox, the Mayrose Memo memorializes Merrimack College's and the NAPD's post-incident actions and the results of Merrimack College's internal investigation of the incident. Similar to the Specht press release, the Mayrose Memo documents Merrimack College's conclusions about the campus safety department's role in the questioning and detention of Plaintiff and identifies ways in which Merrimack College security officers could have avoided the incident. The Mayrose Memo also identified certain post-incident actions and remedial steps planned by Merrimack College (and the NAPD) to resolve any mistakes made during the incident. Finally, like the testimony excluded in Leura, the Mayrose Memo

5

communicated policy and procedural changes to be followed by Merrimack College safety officers after Plaintiff's detention and instituted in an effort to prevent future detentions of Merrimack College students mistakenly identified as criminal suspects.

13. Because the Mayrose Memo discusses only remedial actions taken after the incident, it has no probative value in the case. Rather, the admission of the Mayrose Memo would have only a prejudicial effect on the Merrimack College Defendants if the jury illogically concludes that Merrimack College's post-incident remedial actions and conclusions establish liability. The admission of the Mayrose Memo and/or testimony about its content therefore creates a danger that the public policy of encouraging defendants such as Merrimack College to take such subsequent remedial measures will be thwarted if Plaintiff is permitted to admit the Mayrose Memo. See Leura, 599 F.Supp. at 1463; see also FED.R.EVI. 403.

14. This Court therefore should exclude from evidence the Mayrose Memo and any testimony concerning the contents thereof pursuant to Federal Rule of Evidence 407.

## II. The Court should Exclude from Evidence the Mayrose Memo because it Constitutes Inadmissible Hearsay.

15. The Mayrose Memo and the contents thereof are out of court statements offered by the plaintiff to prove the truth of the matters asserted therein and therefore constitute inadmissible hearsay. FED.R.EVI. 801(a)-(c); FED.R.EVI. 805.

16. The Mayrose Memo does not fit any of the exceptions to hearsay, including the business records exception of Federal Rule of Evidence 803(6).

17. Where a report or memorandum contains information obtained by or statements from an independent source that is not part of the business activity of the author, it is inadmissible hearsay. Cameron, 43 F.3d at 16 (citing FED.R.EVI. 803(6)).

18.    The information contained in the Mayrose Memo was provided to the Merrimack College campus safety department from sources independent of that department and/or Merrimack College.  Specifically, the Mayrose Memo contains information obtained from NAPD officers who derived their information from their own independent sources, the reliability of which Merrimack College could not verify.  While the officers employed by the NAPD conduct a business activity similar to Merrimack College's campus safety department, the NAPD and the Merrimack College campus safety department serve quite different functions and engage in independent activities.  The usual reliability present in business records which permits their admissibility therefore is less likely to exist in the Mayrose Memo.

19.    The Mayrose Memo therefore constitutes and contains inadmissible hearsay and the Court should exclude from admission at trial the Mayrose Memorandum and the contents thereof.

WHEREFORE, the Defendants, Merrimack College and Michael Riordan, respectfully request that this honorable Court:

A.   Grant this Motion in Limine of Merrimack College and Michael Riordan to Exclude from Evidence William Mayrose's April 2003 Memorandum and Any Testimony Concerning its Contents;

B.   Exclude from evidence the Mayrose Memo and any testimony concerning subsequent remedial measures taken by Merrimack College, including those discussed in the Mayrose Memo; and

C.   Grant such other and further relief as may be just and proper.

Respectfully submitted,

MERRIMACK COLLEGE and
MICHAEL RIORDAN

By its Attorneys,

|  |  |
|---|---|
|  | NELSON, KINDER, MOSSEAU & SATURLEY, P.C. |
| Dated: May 29, 2007 | By: /s/ Robert B. Smith<br>Robert B. Smith, BBO#546580<br>Allison C. Ayer, BBO#660665<br>Nelson, Kinder, Mosseau & Saturley, P.C.<br>45 Milk Street, 7th Floor<br>Boston, MA 02109<br>Tel.: (617) 778-7500<br>Fax: (617) 778-7501 |

**CERTIFICATE OF SERVICE**

      I, Robert B. Smith, do hereby certify that on this date I electronically filed the foregoing "Motion in Limine of Merrimack College and Michael Riordan to Exclude from Evidence William Mayrose's April 2003 Memorandum and Any Testimony Concerning its Contents" with the Clerk of the District Court using the CM/ECF system, which would then notify the following CM/ECF participants in this case:

James B. Krasnoo, Esq.
Paul Klehm, Esq.
Krasnoo Klehm, LLP
23 Main Street
Second Floor
Andover, MA  01810-3730

Regina Gilgun Ryan, Esq.
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA  02110-3206

Dated:  May 29, 2007                                  /s/ Robert B. Smith_____

# Exhibit A

MERRIMACK COLLEGE CAMPUS POLICE

TO: All Department Personnel
FROM: Bill Mayrose
DATE: April 11, 2003
RE: NAPD Armed Robbery Investigation

As you are likely aware, our department recently assisted the North Andover Police Department with their investigation of the armed robbery of a local bank. The investigation led them to our campus and a focus on one of our resident students.

Believing that the student was the armed robbery suspect, a NAPD detective placed the student in handcuffs in the Monican Centre lobby and, after a few minutes of conversation, accompanied him to his room where he was uncuffed and questioned for a period of time. It was during this questioning that the student explained that he was in class when the 11:35am armed robbery occurred.

The student was, understandably, unsettled and embarrassed by the experience of being handcuffed in front of fellow students, particularly due to the fact that he was mistakenly identified as the suspect. After this incident, rumors began circulating around campus that he had been arrested for armed robbery and this caused further frustration and embarrassment to the student and to the college community.

After the incident, I met with Chief Stanley and Lt. Gallagher of the North Andover Police Department. We all agreed that the student was subjected to a situation that could have been avoided with advance information about his 11:00am class. Chief Stanley has offered to apologize to the student and he has also had conversation with President Santagati.

I recognize that things happened very quickly that day and, once NAPD was on campus, they dictated the course and speed of action. With this in mind, it is still appropriate for us to review our role in the incident to see what can be learned. In the spirit of learning, and not criticism, it appears that the focus and course of the investigation would have been changed if the student's class schedule had been checked before searching for him on campus.

Let's use this experience as a learning opportunity. Wherever possible, let's take a little more time to consider all possibilities before calling in a local law enforcement agency. When time allows, the officers involved should consult with me or, in my absence, the next highest ranking officer.