UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRETT S. GODETTE, | ) | |
|     Plaintiff, | ) | |
|  | ) | Civil Action No. 05-11354JLT |
| v. | ) | |
|  | ) | |
| RICHARD STANLEY, *et. al.*, | ) | |
|     Defendants. | ) | |

**PLAINTIFF BRETT S. GODETTE'S MOTION *IN LIMINE* FOR ADVERSE INFERENCE IN FAVOR OF GODETTE AS A RESULT OF MERRIMACK'S LOSS OF GODETTE'S COUNSELING RECORDS**

Plaintiff Brett S. Godette hereby moves this Honorable Court *in limine* for this Court to instruct the jury that it may take an adverse inference against Merrimack College and Michael Riordan (hereinafter, collectively, "Merrimack") concerning Godette's claims for emotional distress as a result of Merrimack's loss of Godette's counseling records pertaining to a counseling session he attended at Merrimack College in the wake of his wrongful arrest. Godette relies upon the reasons set forth below:

    1.    In this case, Godette asserts negligence, right of privacy, breach of contract and breach of covenant of good faith and fair dealing claims against Merrimack College and Michael Riordan arising out of the wrongful arrest of Godette on the Merrimack campus on March 26, 2003.

    2.    Following his arrest, Godette sought counseling at Merrimack.

    3.    Sharon Broussard, the counselor who saw Godette, did not retain her notes or records when she left her position at Merrimack.  (See letter dated August 17, 2006, **Exhibit A**). The Merrimack College website continues to list a Sharon Broussard as the Assistant Director of Counseling and Health Services at the Hamel Health Center.  (See **Exhibit B**).

4.  During the time of Broussard's tenure at Merrimack, the counseling records were within the possession, custody or control of Merrimack. Neither Merrimack nor Broussard have retained such records.

5.  Through the within motion, Godette seeks to have this Court instruct the jury at trial that it may take an adverse inference against Merrimack because of the missing counseling records.

> When a document relevant to an issue in a case is destroyed, the trier of fact sometimes may infer that the party who obliterated it did so out of a realization that the contents were unfavorable. *See Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217 (1st Cir.1982); see also 2 *Wigmore on Evidence* § 285, at 192 (James H. Chadbourn rev. ed. 1979). Before such an inference may be drawn, there must be a sufficient foundational showing that the party who destroyed the document had notice both of the potential claim and of the document's potential relevance. See *Nation-Wide*, 692 F.2d at 218. Even then, the adverse inference is permissive, not mandatory. If, for example, the factfinder believes that the documents were destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference. *See, e.g., Jackson v. Harvard Univ.*, 900 F.2d 464, 469 (1st Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925-26 (1st Cir.1988).

*Blinzler v. Marriott Intern., Inc.*, 81 F.3d 1148, 1158-59 (1st Cir. 1996)(jury permitted to hear evidence regarding destroyed report).

6.  Given the circumstances surrounding Godette's arrest, it would be reasonable for Merrimack to conclude that Godette had a claim against Merrimack arising out of the arrest, and that he would pursue such a claim. Godette's prior counsel gave notice of the claim to Merrimack College in a letter dated August 29, 2003, a mere five months after the wrongful arrest. (See **Exhibit C**). Godette does not contend that Merrimack intentionally destroyed the counseling records in an attempt to deprive Godette of the records. Yet, even if the documents are destroyed accidentally or for an innocent reason, the jury may take an adverse inference against Merrimack.

7. As the letter of Merrimack's counsel suggests, "[a]pparently, Merrimack College permits individual counselors to utilize their own methods of keeping and maintaining records of their sessions. The counselors may or may not centrally maintain the notes and/or records with records of other medical treatment received at the Hamel Health Center." (See **Exhibit A**). Godette's counseling records were not included in his medical records from Hamel Health Center. Through no fault of his own, Godette is now prejudiced by the fact that he cannot produce such evidence to the jury at trial and by the fact that Merrimack had an inadequate recordkeeping procedure in place at or around the time of Godette's arrest. The records would be entirely relevant to Godette's emotional distress claim.

8. As a result, Godette respectfully requests that this Court instruct the jury that it may take an adverse inference against Merrimack College and Michael Riordan concerning Godette's claims for emotional distress as a result of Merrimack's loss of Godette's counseling records pertaining to a counseling session he attended at Merrimack College in the wake of his wrongful arrest.

**WHEREFORE**, for the above reasons, Godette respectfully requests that this Court GRANT the within motion and instruct the jury that it may take an adverse inference against Merrimack College and Michael Riordan concerning Godette's claims for emotional distress as a result of Merrimack's loss of Godette's counseling records pertaining to a counseling session he

attended at Merrimack College in the wake of his wrongful arrest.

        Plaintiff
        Brett S. Godette
        By his Attorneys,


        */s/ Paul J. Klehm*
        James B. Krasnoo (BBO#279300)
        *james@krasnooklehm.com*
        Paul J. Klehm (BBO#561605)
        *pklehm@krasnooklehm.com*
        Benjamin L. Falkner (BBO#667951)
        *bfalkner@krasnooklehm.com*
        Krasnoo | Klehm LLP
        23 Main Street, Suite 6
        Andover, MA 01810
        (978) 475-9955

Dated:  <u>May 29, 2007</u>

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

On May 29, 2007 at approximately 12:47 p.m., I left a telephone message for Attorney Robert Smith, counsel to Merrimack, regarding the within motion. Our office also referred to the motion in the draft of the joint pre-trial memorandum forwarded to Attorney Smith on May 25, 2007. On May 29, 2007 at approximately 1:50 p.m., I informed Attorney Ayer by telephone that I would be filing the within motion.


        /s/ Paul J. Klehm

## CERTIFICATE OF SERVICE

I, Paul J. Klehm, Esq., hereby certify that I have served a copy of the within document upon all counsel of record not served via ECF and upon all parties not represented by counsel by first class mail, postage pre-paid, on May 29, 2007.


        */s/ Paul J. Klehm*
        Paul J. Klehm

| NELSON KINDER MOSSEAU & SATURLEY, PC | Richard C. Nelson | John C. Kissinger, Jr. | Gerald F. Lucey* | Leonard D. Zamansky |
|---|---|---|---|---|
| | E. Tupper Kinder | Michael T. McInerny* | Frank W. Beckstein, III | Jeffrey R. Yousey |
| | Peter W. Mosseau | Paul T. Milligan* | Jeffrey A. Meyers | Adam J. Chandler |
| | William C. Saturley | Jonathan A. Lax | Jeanne M. McCormick* | Allison C. Ayer |
| | Nicholas K. Holmes | Kenneth E. Rubinstein | Richard C. Bell, Jr. | David P. Michel |
| | Mark D. Attorri | Christopher T. Vrountas | John E. Lucas | Heidi A. Schiller,* |
| | Bradley D. Holt | Christopher D. Hawkins | Robert B. Smith* | Of Counsel |

ATTORNEYS AT LAW

*Admitted in MA only

August 17, 2006


RECEIVED
AUG 1 8 2006
BY:------------------

Paul Klehm, Esq.
Krasnoo Klehm, LLP
23 Main Street
Terrace Level
Andover, MA 01810

Re: Brett Godette v. Merrimack College et al.
U.S. District Court, Massachusetts, Civil Action No. 05-11354 JLT

Dear Mr. Klehm:

This is a follow up to the production to you on August 10, 2006 of medical records maintained at the Hamel Health Center at Merrimack College concerning Brett Godette.

While the medical records produced indicated that Mr. Godette did not receive any treatment at the Hamel Health center after March 26, 2003, whether for counseling or otherwise, you informed me that Mr. Godette claimed to have sought counseling at Merrimack College. In due diligence, I spoke with a client contact at Merrimack College to inquire about the existence and/or location of additional counseling records.

Apparently, Merrimack College permits individual counselors to utilize their own methods of keeping and maintaining records of their sessions. The counselors may or may not centrally maintain the notes and/or records with records of other medical treatment received at the Hamel Health Center.

Sharon Broussard, the person who performed counseling services for Brett Godette is no longer employed as a counselor at Merrimack College. To the extent she took notes and/or otherwise kept records of treatment she provided to Mr. Godette (and others), she did not maintain them with other medical records of the Hamel Health Center. Furthermore, because of privacy concerns, she did not retain any notes and/or other records of counseling sessions she conducted at Merrimack College after she left her position as a counselor at Merrimack College.

Paul Klehm, Esq.
August 17, 2006
Page 2

    Pursuant to this information, the set of medical records from the Hamel Health Center which I previously provided are complete. I will of course supplement the production to the extent I receive any additional medical records concerning Brett Godette, for counseling or otherwise.

    If you have any questions, I can be reached at (603) 606-5026.

> Very truly yours,
>
> *Allison C. Ayer*
> Allison C. Ayer

ACA/jh

cc:    Robert B. Smith, Esq.

NELSON
KINDER
MOSSEAU &
SATURLEY, PC
ATTORNEYS AT LAW

New Hampshire Office  99 Middle Street, Manchester, New Hampshire 03101  [603] 647-1800  Fax [603] 647-1900
Massachusetts Office  45 Milk Street, 7th Floor, Boston, Massachusetts 02109  [617] 778-7500  Fax [617] 778-7501

# Merrimack College

## Counseling and Health Services
Counseling, Medical and Health Education Services



### Mission Statement

The Hamel Health Center provides medical, psychological, and health education services.

The mission of the Hamel Health Center is to provide wholistic services, aptly using theory and practice emphasizing the mind-body connection, and providing intervention along the entire continuum of health to illness. Intervening at the earliest juncture while problems are still minimal and part of the normal, developmental process is the optimum strategy. A collaborative, educative approach is fostered with the patient/client in order to heighten and strengthen the internal resources of the patient/client which are ultimately the cause of healing and maturation. The department also works collaboratively with all other departments in the division and throughout the college in order to facilitate and harmonize services for the students.

### Mailing Address

Hamel Health Center
Merrimack College
315 Turnpike Street
North Andover, MA 01845

Phone - 978-837-5441
Fax - 978-837-5209



### Hamel Health Center - Staff Directory

Gerald Dugal
Director of Counseling and Health Services
Gerald.Dugal@Merrimack.Edu

Sharon Broussard
Assistant Director of Counseling and Health Services
Sharon.Broussard@Merrimack.Edu

James Matthews
Coordinator of Health Education
James.Matthews@Merrimack.Edu

Nancy Barry
Supervisor of Nursing Services
Nancy.Barry@Merrmack.Edu

Janice Adams
Nurse

Janice.Adams@Merrimack.Edu

Stephanie Callahan
Nurse
Stephanie.Callahan@Merrimack.Edu

Deborah Marcotte
Administative Assistant
Deborah.Marcotte@Merrimack.Edu

# THOMAS W. BODKIN, JR.
## ATTORNEY AT LAW

78 PLEASANT STREET, SUITE 200
WORCESTER, MASSACHUSETTS 01609

TELEPHONE (508) 363-3422                                                                           FACSMILE (508) 519-9155

August 29, 2003

Mr. Richard J. Santagati, President
Merrimack College
315 Turnpike Street
North Andover, MA 01845

Re: Brett Godette, Incident of March 26, 2003

Dear President Santagati:

Please be advised that I have been retained to represent Brett Godette relative to an incident that occurred on Wednesday, March 26, 2003 on the Merrimack College campus. The following information is submitted to you without prejudice and for the purposes of settlement only. It consists of pertinent information available at the present date.

Mr. Godette, attended a Merrimack College Basketball team workout at the Volpe Athletic Complex from approximately 6:05 A.M. until 7:30 A.M. After showering and dressing, Mr. Godette met Gina Bertelli in the cafeteria in the Sakowitch Student Center at 8:30 A.M. for a pre-arranged study session. Ms. Bertelli left the cafeteria at approximately 10.00 A.M. to take an Accounting examination. Mr. Godette elected to forego his Accounting class and stay in the cafeteria to continue with his studies. He was assisted by Lightfoot Taylor, another student. During Mr. Godette's time spent in the cafeteria several students came and went after having spoken to Mr. Godette. At approximately 10:50 A.M. Mr. Godette left the cafeteria to attend an examination in his Business Calculus class with Professor Dana Kalinowski. Mr. Godette completed his examination at about 11:55 and proceeded to his Strategic Marketing class, which started at 12:00 P.M.

After his Strategic Marketing class ended at 12:50 P.M., Mr. Godette returned to the cafeteria for lunch. Having met and talked to college basketball teammate Bobby Murgo and his roommate "Brian", Mr. Godette remained in the cafeteria until 1:30 P.M. at which time he planned to return to the Volpe Athletic Complex for another workout. On his way to the athletic complex, Mr. Godette stopped at the Resident Life Office and spoke with the secretary regarding rescheduling an appointment. After re-arranging the

appointment, Mr. Godette returned to his room as opposed to going directly to the athletic complex. Mr. Godette then met his friend in Room 264 in Monican dormitory where he stayed for approximately forty (40) minutes. Upon leaving Monican at about 2:55 P.M., Mr. Godette proceeded to his own room to gather personal items to take to his workout at Volpe Complex. When Mr. Godette left his room at approximately 3:10 P.M. he was confronted by several police officials who pushed him up against a wall inside the clearance area that separates Monican dormitory and the outside.

At this point, stunned, Mr. Godette, had several police officers barking orders that included "put your hands up" and "don't move." A female officer present at the scene had her hand on her gun and informed Mr. Godette that he was under arrest. Mr. Godette was handcuffed by the female officer while a male officer proceeded to ask him several questions regarding an incident that Mr. Godette had no knowledge of. The female officer proceeded to attempt to pull Mr. Godette's book bag off his back, but it was entangled in his cuffed hands. As Mr. Godette was pulled by the female officer attempting to remove the book bag from his body, he was forcefully pushed back against the wall by a male officer.

As the female officer searched Mr. Godette's book bag, a male officer frisked him. While searching Mr. Godette's pants pockets, the officer pulled Mr. Godette's pants down around his knees and asked Mr. Godette "Do you have any weapons on you now?" and "Come on, what's in the pocket? We know you did it, we got your picture on T.V." One of the officers advised Mr. Godette that they knew he robbed a bank in Lawrence earlier that day to which Mr. Godette vehimately responded "no, I didn't." Mr. Godette then informed the officers that he wanted a lawyer. In response, Mr. Godette was advised that the officers wanted to search his room. Mr. Godette advised the officers that they could not search his room. While Mr. Godette continued to tell the officers they could not search his room, a large crowd of people began to gather around, many of whom could hear the exchange taking place between Mr. Godette and the police officers.

Mr. Godette, still handcuffed, proceeded to his dormitory with the FBI officers, Andover police officers, and Public Safety officials from the college campus. While being escorted by this entourage, several dormitory tenants opened their doors to witness the humiliating experience that Mr. Godette was being subjected to. According to the female officer who had previously applied the handcuffs to Mr. Godette's wrists, a person from the college's Public Safety had made a statement to her regarding Mr. Godette wearing a white "doo-rag" earlier that day, and that is what the officers were searching for in Mr. Godette's dormitory room. Mr. Godette informed the female officer that he had not worn his white "doo-rag" that day, but instead had worn a blue one. Prior to entering his dormitory room, Mr. Godette requested to call his coach. The officers indicated that Mr. Godette could call his coach when they got inside his room. Once inside, Mr. Godette was instructed to sit in a chair while the room was searched. While the search was being conducted, Mr. Godette was asked again about the white "doo-rag" that the individual from Public Safety said Mr. Godette had been seen in when he was observed leaving a class at 10:00 A.M. Mr. Godette reiterated that he had not worn the

white "doo-rag" that day. Mr. Godette was then asked about a white hat. He informed the officer that he did not own a white hat.

While the officers continued to search Mr. Godette's room and question him regarding different articles of clothing, a male officer showed Mr. Godette a college identification badge of a person named "Steve" whose identity was unknown to Mr. Godette. Mr. Godette informed the officer that he did not know the person pictured on the identification badge. Eventually Mr. Godette spotted his white "doo-rag" on top of his dresser and informed the female officer of its location. Mr. Godette again requested to call his coach and was informed that he could not. After approximately one hour, the female officer uncuffed Mr. Godette and informed him that they were releasing him due to lack of evidence connecting Mr. Godette to the crime.

Mr. Godette was subjected to embarrassment, and ridicule from other students for several days after this incident. His whereabouts on the day in question could have been easily confirmed and should have been prior to his being subjected to the negligent action of the campus police, which resulted in Mr. Godette's false imprisonment, among other common law and statutory claims that arise from this incident. The campus police wrongly singled out Mr. Godette based on his race as the suspect the police were looking without so much as the most cursory investigation. An investigation that would have clearly established that it would have been physically impossible for Mr. Godette to be the person the police were looking for.

Clearly, what Mr. Godette experienced was horrific. Clearly, Mr. Godette was damaged by this incident. Clearly, Merrimack College needs to right this wrong. Mr. Godette demands an apology and $25,000.00 in exchange for a release of all claims against the college.

This demand is open for acceptance for (30) thirty days from the date of this letter, after which time it is Mr. Godette intent to bring a civil action against the Merrimack College.



Sincerely yours,

Thomas W. Bodkin, Jr.

VIA CERTIFIED MAIL 7002 2030 0007 6980 5023