UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRETT S. GODETTE,<br>      Plaintiff,<br><br>v.<br><br>RICHARD STANLEY, *et. al.*,<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-11354JLT |

**PLAINTIFF BRETT S. GODETTE'S MOTION *IN LIMINE* TO PRECLUDE ANY
EVIDENCE CONCERNING AN ALLEGED THEFT OF TEXTBOOKS, OR ANY
OTHER ALLEGED BAD ACTS, BY GODETTE**

Plaintiff Brett S. Godette hereby moves this Honorable Court *in limine* to preclude any documentary and/or testimonial evidence concerning the alleged theft of textbooks, or any other alleged wrongful conduct, by Godette as such evidence is (1) irrelevant to the issues raised in the case at bar, (2) constitutes improper character evidence, and, (3) at the very least, is unduly prejudicial to Godette. Moreover, any written documents pertaining to the alleged theft constitute hearsay. Godette relies upon the following reasons:

1.      Godette proceeds to trial in the within action pursuing negligence, breach of privacy, breach of contract and breach of good faith and fair dealing claims.

2.      On their exhibit list, Merrimack College and Riordan identify the following document: Merrimack College Police Department Incident Report Number 2002-09-248-IR concerning theft of textbooks. (A copy of the Merrimack College Police Department Incident Report Number 2002-09-248-IR is attached hereto as **Exhibit A**). In essence, that document relates to an alleged theft of some textbooks by Godette. Godette was never charged criminally for the alleged stolen textbooks.

3.   In essence, Merrimack seeks to have the jury extrapolate that, since Godette was allegedly involved in the theft of textbooks, Riordan was justified in believing that Godette had robbed a bank with a gun – a far more serious crime – and, therefore, that Merrimack is not liable to Godette. By that thinking, Riordan would have been justified in identifying Godette as a suspect for virtually every crime which took place during Godette's time at Merrimack. Even if Godette did steal textbooks, which he did not, it would not have made Riordan any more justified in choosing Godette as a suspect in the bank robbery. The purpose for seeking to introduce such evidence at trial is simply to make Godette look like a bad person, but it has no relevance to the issues raised. Thus, evidence pertaining to the alleged theft of textbooks is entirely irrelevant to any material fact in dispute in this case and is therefore inadmissible pursuant to Fed. R. Evid. 401 and 402.

4.   Such evidence would also constitute impermissible character evidence pursuant to Fed. R. Evid. 404 and 608. Generally evidence of prior conduct is not admissible. *Lataille v. Ponte*, 754 F.2d 33, 36 (1st Cir. 1985). There are two exceptions:

> [E]vidence of misconduct or criminal convictions may be admitted under Rules 608 and 609 if the conduct in question is probative of truthfulness, and evidence of prior acts may be admitted under Rule 404(b) to show motive, opportunity, intent, knowledge, identity, etc. Evidence offered under Rule 404(b) must also be specifically determined to be more probative than it is prejudicial. Fed.R.Evid. 404(b) advisory committee note. This determination is committed to the discretion of the district court. *United States v. Fosher*, 568 F.2d 207, 212-13 (1st Cir.1978).

*Lataille*, 754 F.2d at 36[1] (prejudicial error to admit past disciplinary record of inmate in civil rights case). One must recall here that the question in this case is not whether Godette robbed a bank; it is agreed by the parties that Godette did not rob any bank. The

---

[1] In a footnote, the *Lataille* Court also noted a narrow exception under Fed.R.Evid. 405(b) permitting specific instances of conduct where, in essence, character is an essential element of a claim. *Id.* That exception does not apply here.

question is whether Merrimack breached various duties to Godette and/or violated the terms of a contract with him. Fed.R.Evid. 404(b) would not provide a mechanism through which Merrimack could seek to introduce evidence of the alleged theft of the textbooks. That rule speaks in terms of the admissibility of evidence to demonstrate motive, opportunity or intent. This case is not about Godette's motive, opportunity or intent to rob a bank, and so 404(b) does not apply. Fed.R.Evid. 609 does not apply because there is no conviction. Moreover, Fed.R.Evid. 608 does not permit the use of extrinsic evidence to show specific instances of conduct. As a result, the incident report pertaining to the alleged theft of some textbooks by Godette is irrelevant to the issues raised in the case at bar.

5.  Even if the testimonial and/or documentary evidence were admissible at trial, which it is not, the introduction of such evidence, which relates to an alleged incident completely unrelated to the issues presented here, would be unduly prejudicial to Godette pursuant to Fed.R.Evid 403. The evidence would unfairly suggest to the jury that, since Godette had allegedly stolen some textbooks in the past, (1) Godette is a criminal and (2) Merrimack acted reasonably in identifying Godette as a bank robber (even if Merrimack were mistaken). Fed.R.Evid. 403 permits the exclusion of such evidence where, as here, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. This evidence unfairly takes the jury away from the central issues of this case.

6.  Additionally, Merrimack failed to produce the documents it now seeks to admit until March 19, 2007, long after automatic disclosures were due and after the depositions of Mr. Riordan and former Chief Mayrose. As a result, Godette is unfairly prejudiced by the late production.

7.     Godette also objects to the admission of this evidence at trial because the written statements contained therein constitute inadmissible hearsay pursuant to Fed. R. Evid. 801 and 802.

8.     In his deposition, Riordan referred, in a vague manner, to an alleged incident concerning a vehicle owned by Godette, and Godette himself, in Lawrence, Massachusetts, before Godette's arrest.  (See pages 52 through 54 of deposition of Michael Riordan, attached hereto as **Exhibit B**).   Riordan did not prepare a report of the incident, and he made no determination of any wrongdoing on the part of Godette.  (See pp. 53, 54 of **Exhibit B**).  That information is completely irrelevant to the issues raised in the case at bar, and it is unduly prejudicial to Godette.   Moreover, there is nothing in Riordan's testimony that would qualify

the alleged incident as a prior bad act on the part of Godette. The evidence is not admissible under Fed.R.Evid. 608.

**WHEREFORE**, Plaintiff Brett S. Godette hereby requests that this Honorable Court GRANT the within motion and preclude any documentary or testimonial evidence concerning the alleged theft of textbooks by Godette, or any other allegations of wrongful conduct on the part of Godette.

                Plaintiff
                Brett S. Godette
                By his Attorneys,

                */s/ Paul J. Klehm*
                James B. Krasnoo (BBO#279300)
                *james@krasnooklehm.com*
                Paul J. Klehm (BBO#561605)
                *pklehm@krasnooklehm.com*
                Benjamin L. Falkner (BBO#667951)
                *bfalkner@krasnooklehm.com*
                Krasnoo | Klehm LLP
                23 Main Street, Suite 6
                Andover, MA 01810
                (978) 475-9955

Dated: May 29, 2007

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(A)(2)

On May 23, 2007, I spoke by telephone with Attorneys Robert Smith and Allison Ayer, counsel to the Merrimack College Defendants, regarding the filing of the within motion. On May 29, 2007 at approximately 1:55 p.m., I informed Attorney Ayer by telephone that the within motion would encompass not only the report relating to the alleged textbook incident, but also evidence relating to other bad acts and testimonial evidence relating to the alleged textbook incident.

                */s/ Paul J. Klehm*
                Paul J. Klehm

## CERTIFICATE OF SERVICE

    I, Paul J. Klehm, Esq., hereby certify that I have served a copy of the within document upon all counsel of record not served via ECF and upon all parties not represented by counsel by first class mail, postage pre-paid, on May 29, 2007.

                          */s/ Paul J. Klehm*
                          Paul J. Klehm

# MERRIMACK COLLEGE POLICE DEPARTMENT
## MA005389E
### INCIDENT REPORT
### 01/05/2005

Exhibit "A"

NUMBER: 2002-09-248-IR  REPORT DATE: 09/11/2002  ORI: MA005389E
START DATE: 09/10/2002 15:53  END DATE: 09/11/2002 14:01
LOCATION: MONICAN (322) ; THEFT OF TEXTBOOKS; REPORT TO FOLLOW  ZONE: MONICAN CENTER

### INCIDENT TYPES

| CODE | TYPE | ATTEMPTED |
|---|---|---|
| 313 | LARCENY OVER 250 PROP | C |

### PERSONS INVOLVED

INVOLVEMENT: SUSPECT
NAME: GODETTE, BRETT                                                  RACE: B   SEX: M
DOB: 03/19/1982    AGE: 20    SSN: 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    HEIGHT: N/A    WEIGHT: N/A
HAIR: N/A    EYES: N/A    SCARS, MARKS: N/A
COMPLEXION: N/A    BUILD: N/A    SID: N/A    FBI: N/A
LICENSE NUMBER: N/A    STATE: N/A
ADDRESS: N/A
CITY: N/A    STATE: N/A    ZIP CODE: N/A
HOME PHONE: N/A    WORK PHONE: N/A    EXTENSION: N/A
OCCUPATION: N/A    EMPLOYER: N/A
EMPLOYER ADDRESS: N/A    EMPLOYER PHONE: N/A

INVOLVEMENT: VICTIM
NAME: DECOLOGERO, GINA                                                RACE: W   SEX: F
DOB: 12/16/1983    AGE: 18    SSN: 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    HEIGHT: N/A    WEIGHT: N/A
HAIR: N/A    EYES: N/A    SCARS, MARKS: N/A
COMPLEXION: N/A    BUILD: N/A    SID: N/A    FBI: N/A
LICENSE NUMBER: N/A    STATE: N/A
ADDRESS:
CITY:    STATE:    ZIP CODE:
HOME PHONE:    WORK PHONE: N/A    EXTENSION: N/A
OCCUPATION: N/A    EMPLOYER: N/A
EMPLOYER ADDRESS: N/A    EMPLOYER PHONE: N/A

### PROPERTY INVOLVED

LOSS TYPE: STOLEN
PROPERTY TYPE: BOOKS
DESCRIPTION: FOUR COLLEGE TEXTBOOKS
LOSS VALUE: $393    RECOVERY VALUE: $328    RECOVERY DATE: 09/10/2002
SERIAL: N/A    MAKE: N/A    LICENSE: N/A    STATE: N/A
BOOKS LOSS: $393.15    RECOVERY: $328.00
STOLEN LOSS: $393.15    RECOVERY: $328.00
REPORT TOTALS LOSS: $393.15    RECOVERY: $328.00

### NARRATIVE

ON THIS DATE MERRIMACK RESIDENT STUDENT, GINA DECOLOGERO, MONICAN 322, REPORTED TO ME LT. RIORDAN THE THEFT OF FOUR TEXTBOOKS FROM HER ROOM. OFFICER ROGERS RESPONDED TO MONICAN AND I WENT TO THE CAMPUS BOOKSTORE. I MET WITH TOM CROFT, THE ASST. MGR. OF THE BOOKSTORE TO ALERT

STATUS: ACTIVE    STATUS DATE: 09/11/2002
OFFICER: ROGERS, HAROLD, PATROLMAN    31    SUPERVISOR: RIORDAN, MICHAEL, DETECTIVE LIEUTENANT    08

MERRIMACK COLLEGE POLICE DEPARTMENT
MA005389E
INCIDENT REPORT
01/05/2005

HIM TO THE SITUATION. WHILE WAITING FOR OFFICER ROGERS TO COME TO THE BOOKSTORE I HAD TOM PULL ALL "BOOK BUY-BACK" SLIPS FOR THE DAY. ONE IN PARTICULAR, CUSTOMER RECEIPT NUMBER 0941137, IN THE AMOUNT OF $328.90 CAUGHT MY ATTENTION. I BROUGHT THIS TO TOM'S ATTENTION. THE NAME ON THE RECEIPT WAS BRETT GODETTE; A MERRIMACK STUDENT FAMILIAR TO TOM. . OFFICER ROGERS ARRIVED WITH THE CLASS #s REPRESENTING THE BOOKS MS. DECOLOGERO WAS REPORTING AS STOLEN. TOM CROSS-REFERENCED THE LIST TO HIS TEXTBOOK FILE AND INFORMED US THAT THE BOOKS LISTED ON THE AFOREMENTIONED RECEIPT WERE IN FACT THE SAME. IN ADDITION OFFICER ROGERS LEARNED THAT THE BOOKS HAD BEEN TAKEN AROUND 9:30 THE PRIOR EVENING. THE ROOM WAS LEFT OPEN AND UNATTENDED FOR APPROXIMATELY 15 MINUTES BETWEEN 9:30 AND 10:00 PM.

TOM SAID IN ADDITION TO MR. GODETTE HE WAS FAMILIAR WITH HIS GIRL FRIEND WHO OFTEN ACCOMPANIED HIM TO HE BOOKSTORE. TOM ONLY KNEW HER AS JEN MAG____? (COMPLETE LAST NAME NOT KNOWN). OFFICER ROGERS HAD GOTTEN INFORMATION FROM ANOTHER RESIDENT OF MONICAN OF SEEING AN INDIVIDUAL IN THE HALLWAY, AROUND THE TIME THAT THE BOOKS WERE BELIEVED TO HAVE BEEN STOLEN, WHO DATED A GIRL DOWN THE HALL. WITH THIS INFORMATION I WAS ABLE TO DETERMINE THAT A JENNIFER MAGNANIMI, DID IN FACT LIVE IN MONICAN 320. I CONTACTED MS. MAGNANIME THROUGH ONE OF HER PROFESSORS AND SHE CAME TO THE P.S.O. IMMEDIATELY AFTER CLASS.

MS. MAGNANIMI ADMITTED TO BEING THE GIRLFRIEND OF BRAD GODETTE AND IN ADDITION HAD PURCHASED TEXTBOOKS FOR HIM AT THE BOOKSTORE. I INFORMED HER IN PART FOR MY REQUESTING HER TO STOP BY MY OFFICE. SHE INFORMED ME THAT HER AND BRETT HAD BEEN IN HER ROOM SOMETIME AROUND 9:30-9:45PM ON 9-09-02. BRETT LEFT TO TAKE A SHOWER AND SHE LATER JOINED HIM IN HIS ROOM. SHE KNEW BRETT HAD RETURNED BOOKS IN THE LAST FEW DAYS AS IN HER WORDS " DIDN'T NEED THEM OR ALREADY HAD THEM" SHE WASN'T EXACTLY SURE WHICH OTHER THAN ONE WAS AN ACCOUNTING BOOK. SHE ALSO SUPPLIED A RECEIPT FOR BOOKSTORE PURCHASES REPRESENTING ITEMS BOUGHT FOR BOTH HER AND BRETT. SHE SAID ANOTHER RECEIPT, WHEREABOUTS UNKNOWN, REFLECTED BOOKS, PURCHASED BY HER FOR BRETT, TOTALING APPROXIMATELY $315.00. PRIOR TO MEETING WITH ME MS. MAGNANIMI HAD RECEIVED $130.00 FROM MR. GODETTE (SHE BELIEVED TO REPRESENT A BOOK RETURN).

I THEN PROCEEDED TO THE VOLPE COMPLEX IN AN EFFORT TO LOCATE MR. GODETTE. I MET HIM AT THE ENTRANCE TO THE COMPLEX AND HE AGREED TO COME BACK TO MY OFFICE TO TALK. I INFORMED HIM OF THE REASON AND HE AGREED TO TALK TO ME. AS WE TALKED ABOUT TURNING IN BOOKS HE STATED HE DID IN FACT RETURN 3 BOOKS TO THE BOOKSTORE TODAY AND THAT HE HAD FOUND THEM THE NIGHT BEFORE IN ONE OF THE COMMON AREA FOYERS AT MONICAN. AT THAT TIME I TOLD MR. GODETTE TO SAY NOTHING FURTHER AND I REQUESTED LT. BENSON TO JOIN US. UPON LT. BENSON'S ARRIVAL I INFORMED MR. GODETTE THAT HE WAS SUSPECTED OF RECEIVING STOLEN PROPERTY AND HE WAS READ HIS RIGHTS. HE AGREED TO CONTINUE TO TALK TO ME. LT. BENSON LEFT THE ROOM AT THAT TIME. HE REITERATED THAT HE HAD FOUND THEM AT APPROXIMATELY 10:00PM ON THE PRIOR EVEING AND WENT TO HIS ROOM WITH THEM. HE SAID THAT MS. MAGNANIMI SAW THE BOOKS AND HE TOLD HER HE FOUND THEM. HE INQUIRED OF HER HOW SHE HAD RETURNED A BOOK RECENTLY AND IF HE COULD RETURN THEM WITHOUT A RECEIPT AND SHE REPLIED YES. MR. GODETTE AT THIS POINT ASKED IF HE SHOULD CONTINUE TO TALK TO ME AND I INFORMED HIM THAT IT WAS HIS DECISION. HE OPTED TO DISCONTINUE THE CONVERSATION AND AT THAT TIME I REQUESTED LT. BENSON TO RETURN AND HE DID. I INFORMED HIM OF MR. GODETTE'S DECISION AND WHERE WE HAD TERMINATED THE CONVERSATION. I INFORMED MR. GODETTE THAT HE SHOULD TALK TO HIS B.B. COACH AND TO CONSIDER RESTITUTION. HE WAS ALSO INFORMED THAT HE WOULD BE HEARING FROM ME AND THE POSSIBILITY OF CRIMINAL CHARGES BEING FILED WAS A POSSIBILITY.

A SHORT WHILE LATER MR. GODETTE RETURNED TO THE PUBLIC SAFETY OFFICE AND TURNED OVER TO ME $328.00 (LESS .90 CENTS OF THE PROCEEDS OF THE AFOREMENTIONED TRANSACTION). I INFORMED THAT HE STILL COULD FACE CRIMINAL CHARGES BUT AT BEST WOULD AT LEAST FACE AN ON CAMPUS JUDICIAL HEARING. THIS INVESTIGATION IS ONGOIN AS THERE IS STILL ONE BOOK MISSING. THIS MATTER IS BEING FORWARDED TO MR. DEVEAU FOR PROCESSING.

STATUS: ACTIVE

OFFICER: ROGERS, HAROLD, PATROLMAN            31

STATUS DATE: 09/11/2002

SUPERVISOR: RIORDAN, MICHAEL, DETECTIVE LIEUTENANT            08

```
                                    VOLUME:           I
                                    PAGES:        1-177
         ORIGINAL                   EXHIBITS:     1-14
```

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. 05-1354JLT

BRETT S. GODETTE,                          )
    Plaintiff,                             )
                                           )
vs.                                        )
                                           )
RICHARD STANLEY, DIANE HEFFERNAN,          )
DANIEL CRONIN, PAUL GALLAGHER, WILLIAM     )
WALLACE, DONALD PATTULLO, CHARLES          )
HESELTINE AND PATRICK KEEFE,               )
INDIVIDUALLY AND AS POLICE OFFICERS OF     )
THEIR RESPECTIVE MUNICIPALITIES,           )
LIEUTENANT RIORDON, TOWN OF NORTH          )
ANDOVER, TOWN OF ANDOVER, AND              )
MERRIMACK COLLEGE,                         )
    Defendants.                            )

    DEPOSITION OF MICHAEL RIORDAN, a witness called on behalf of the Plaintiff, pursuant to the provisions of the Massachusetts Rules of Civil Procedure, before Jill Shepherd, Registered Professional Reporter and Notary Public, in and for the Commonwealth of Massachusetts, at the law offices of Krasnoo & Klehm, 23 Main Street, Andover, Massachusetts, on Thursday, February 22, 2007, commencing at 10:00 a.m.

```
 1   Q.   Direct or indirect.
 2   A.   Indirect.
 3   Q.   Direct or indirect?
 4   A.   Indirect.
 5   Q.   Oh, I see what you mean.
 6             What do you mean by "indirect"?
 7   A.   He was involved in an incident over in
 8        Lawrence.
 9   Q.   What incident is that?
10   A.   I'm not too sure of all the particulars.  It
11        was a dealing with a Lawrence police officer.
12   Q.   Which Lawrence police officer?
13   A.   I don't know his name.
14   Q.   Okay.  Did you prepare an incident report
15        about this incident?
16   A.   No.
17   Q.   Why not?
18   A.   It didn't necessitate an incident report.  I
19        was asked to inquire about it.
20   Q.   Tell me, who did you inquire of?
21   A.   Who did I inquire of?
22   Q.   Yes.  Who did you talk to?
23   A.   I talked to somebody over in Lawrence
24        District Court.
```

| | | |
|---|---|---|
| 1 | Q. | Who did you speak to? |
| 2 | A. | I don't recall. |
| 3 | Q. | What did you speak to that person about? |
| 4 | A. | Just asked if they were familiar with an |
| 5 | | incident. |
| 6 | Q. | What were you told? |
| 7 | A. | They knew of it. |
| 8 | Q. | What was the incident? |
| 9 | A. | Something to do with his vehicle, and that's |
| 10 | | the best of my recollection.  It had |
| 11 | | something to do with his motor vehicle and |
| 12 | | him. |
| 13 | Q. | How did this incident come to your attention? |
| 14 | A. | I was asked about it by somebody on campus. |
| 15 | Q. | Who? |
| 16 | A. | The athletic director. |
| 17 | Q. | What was that person's name? |
| 18 | A. | Robert DiGregorio. |
| 19 | Q. | What was it that he said to you? |
| 20 | A. | He asked me if I could find out what happened |
| 21 | | over there. |
| 22 | Q. | What did you tell Mr. DiGregorio? |
| 23 | A. | Whatever information I got over in the |
| 24 | | Lawrence District Court, and all I know is it |

```
 1       involved his motor vehicle.
 2  Q.   Did you make any determination of any
 3       wrongdoing on the part of Mr. Godette?
 4  A.   No.
 5  Q.   Did you write a memo or a summary of events
 6       about this incident?
 7  A.   No.
 8  Q.   Why not?
 9  A.   Didn't necessitate one.  It was just an
10       inquiry by a member on the campus.
11  Q.   What year did that take place?
12  A.   Prior to the incident we are here about
13       today.
14  Q.   Okay.  Did you speak to Mr. Godette about
15       that incident at all?
16  A.   No.
17  Q.   Any other interactions, direct or indirect,
18       with Mr. Godette, other than what we've
19       discussed?
20  A.   No.
21  Q.   Now, you told me earlier, and I apologize,
22       what shift you were working on March 26,
23       2003?
24  A.   8:00 to 4:00.
```